## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ETHYPHARM S.A. FRANCE,    ) <br>    ) <br>       Plaintiff,    ) <br>    ) <br>       v.    ) <br>    ) <br> ABBOTT LABORATORIES,    ) <br>    ) <br>       Defendant.    ) <br>    ) <br>    ) | Civil Action No. <br><br> <u>JURY TRIAL DEMANDED</u> |

## COMPLAINT

Plaintiff, Ethypharm S.A. France ("Ethypharm"), for its complaint against defendant Abbott Laboratories ("Abbott"), alleges as follows:

### I.  OVERVIEW

1.  Through this lawsuit, Ethypharm seeks to recover compensatory, treble and punitive damages as well as injunctive relief based upon Abbott's willful violations of the antitrust laws of the United States and common law standards governing competition.

2.  Defendant Abbott manufactures, markets and sells a brand name fenofibrate product called TriCor in the United States. Abbott licenses the exclusive rights to manufacture and sell TriCor in the U.S. from a company called Laboratoires Fournier ("Fournier").

3.  Sales of TriCor in the U.S. over the past four years have amounted to approximately four billion (US$4,000,000,000) dollars. In 2007 alone, sales of TriCor exceeded 1.2 billion (US$1,200,000,000) dollars. With these sales, TriCor dominates the U.S. market for products containing the active ingredient fenofibrate.

4.     The Plaintiff in this case, Ethypharm, is a French company with a long history of developing and manufacturing numerous products, including products containing fenofibrate. For approximately two decades, Ethypharm has been the principal competitor of Abbott's licensor (Fournier) in the licensing and sale of fenofibrate products on the world stage. Given its experience with fenofibrate products, Ethypharm sought to enter the U.S. market with its own fenofibrate product in order to compete with TriCor.

5.     Ethypharm does not directly sell and distribute its fenofibrate product in the United States. Instead, Ethypharm sought a business partner who would enter into an agreement to: license the underlying patent and intellectual property rights; obtain U.S. regulatory approval for the product; launch and market the product in the U.S.; and pay a royalty to Ethypharm. In 2001, Ethypharm entered into an exclusive license agreement with Reliant Pharmaceuticals, Inc. ("Reliant"), a United States pharmaceutical company that specializes in the development, commercialization and marketing of prescription therapeutic products.

6.     By the end of 2004, Ethypharm had developed, and Reliant was prepared to launch, a branded drug to compete with TriCor. The FDA-approved drug, called Antara, is superior to TriCor in that Antara uses a smaller amount of the active ingredient fenofibrate (130 mg vs. 145 mg) to obtain the same health benefits.

7.     Launched in early 2005, Antara had sales of well over US$40 million in its first eighteen months and was poised to take an increasing percentage of TriCor's market.

8.     Abbott viewed the entry of Ethypharm's fenofibrate product into the United States market as a competitive threat. Abbott responded to this threat by taking illegal action in order to undermine and restrain the natural market forces which threatened to cut into Abbott's highly lucrative monopoly over the market for products containing fenofibrate.

2

9.      In order to restrain trade and to maintain its monopoly, Abbott entered into illegal, anticompetitive agreement(s) with Ethypharm's exclusive licensee (Reliant).   Under these anticompetitive agreement(s), Abbott prohibited Reliant from selling the rights to Antara in the United States to a specific list of a few dozen pharmaceutical companies that had the capacity to more effectively compete with TriCor.   Among other things, this anticompetitive agreement assessed a 7% royalty on Antara sales and restricted Reliant's ability to extend the Antara product line by launching any new fenofibrate formulation in the United States, either alone or in combination with other products.

10.      In mid-2006, at a point in time that was critically important for Antara's growth in the marketplace, Reliant sold the exclusive rights in the United States to market and sell Antara and any new fenofibrate products, formulations, combination products or other innovations (the "Antara Rights").   Prohibited by the illegal agreement(s) with Abbott, Reliant was unable to consider the sale of the Antara Rights to companies that could have more effectively promoted Antara's growth and developed new fenofibrate products.

11.      With its options restricted, Reliant sold the Antara Rights to Oscient Pharmaceutical Company ("Oscient").   Oscient, a company with limited resources and a relatively small sales force, did not have, and does not have, the capacity to promote and develop Antara in the marketplace to compete with TriCor effectively.   Among other things, Oscient does not have the ability to engage in appropriate and well-financed marketing efforts or to extend the Antara line through the development and sale of new fenofibrate formulations or new products that combine fenofibrate with other medications ("combination products").

12.      Currently, Abbott maintains confidential and illegal agreement(s) with Oscient that were transferred with the sale of the Antara Rights from Reliant.   Among other things, these

anticompetitive agreements continue to prohibit Oscient from selling the Antara Rights to a company that can more effectively compete with TriCor, continue to require Oscient to pay a 7% royalty to Abbott on all sales of Antara, and continue to restrict Oscient's ability to market new fenofibrate products and combination products containing fenofibrate developed by Ethypharm.

13.    As a proximate result of Abbott's anticompetitive conduct, Ethypharm has suffered damages.  Ethypharm's damages include, but are not limited to, millions of dollars in lost profits from the higher royalties that Ethypharm would have received if Abbott had not:  (a) prohibited Ethypharm's licensee from selling the Antara Rights to a company that could more effectively compete with TriCor; (b) required Ethypharm's licensee to pay a 7% royalty on all sales of Antara; and (c) restricted Ethypharm's licensee from marketing combination products or new products containing different formulations of fenofibrate.

14.    Others injured by Abbott's anticompetitive conduct include individual U.S. consumers.  Among other things, Abbott has harmed consumers by:  (a) stifling innovation through the suppression and/or delay in the development and marketing of combination products and other fenofibrate products; (b) willfully hindering competition with TriCor; (c) willfully restraining the reasonably expected sales of a superior product; and (d) maintaining higher prices.

15.    In addition to damages caused by its anticompetitive agreement(s) with Ethypharm's licensee, which violate federal antitrust laws and the common law, Abbott attempted to, and did, pursue sham litigation alleging that Antara infringed upon the TriCor patents where its counterclaim of infringement was objectively baseless and where the patents relating to the TriCor product were procured by inequitable conduct.

16.     Abbott's affirmative steps in (a) interfering with Ethypharm's license agreement; (b) entering and maintaining illegal anticompetitive agreement(s) with Ethypharm's licensees; and (c) pursuing sham litigation demonstrate that its purpose was to stymie branded competition and preserve Abbott's monopoly power, thereby harming Ethypharm and consumers.   As described more fully below, Abbott violated the antitrust laws of the United States through its efforts to maintain and extend its monopoly power over this market by taking unlawful and illegal steps to impede legitimate, viable competition from Ethypharm's branded product, Antara, and by unlawfully conspiring to restrain trade.   In addition, Abbott tortiously interfered with Ethypharm's license with Reliant, tortiously interfered with Ethypharm's legitimate business expectancies, and otherwise violated common law norms regarding business and competitive behavior.

## II.   **THE PARTIES**

17.     Plaintiff Ethypharm is, and at all relevant times was, organized under the laws of the Republic of France, with its principal office in France.   Ethypharm is a drug delivery company primarily engaged directly, through its subsidiaries, and through agreements with other pharmaceutical companies, in the business of developing proprietary drug delivery systems and formulating, clinically testing, registering, manufacturing, marketing and licensing pharmaceutical products based on its drug delivery systems in Europe and around the world.

18.     Defendant Abbott is a company incorporated under the laws of the State of Illinois, having its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064.   Abbott develops, manufactures and markets pharmaceuticals and related products in the United States.

## III.   **JURISDICTION AND VENUE**

19.    This action arises under the antitrust laws of the United States and the actions complained of herein have an effect on interstate commerce. Accordingly, this Court has subject matter jurisdiction over this case under 15 U.S.C. §§ 15 and 26, 28 U.S.C. § 1337, 28 U.S.C. § 1331, and principles of pendent jurisdiction under 28 U.S.C. § 1367(a).

20.    This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), because the matter in controversy exceeds $75,000 and the suit is between a citizen of a State and a citizen of a foreign state.

21.    This Court has personal jurisdiction over Abbott pursuant to 15 U.S.C. § 22. Personal jurisdiction over Abbott comports with the United States Constitution and Delaware's long-arm statute, 10 Del. C. § 3104. Abbott has also subjected itself to the jurisdiction of this Court by commencing several related lawsuits in Delaware, including *Abbott Lab. v. Teva Pharm. USA, Inc.*, No. 02-1512 (MPT) and *Abbott Lab. v. Impax Lab.*, No. 03-120 (KAJ), alleging infringement of patents covering Abbott's TriCor product. Moreover, as part of its actions and anticompetitive scheme to prevent, eliminate or unlawfully limit competition against TriCor in the U.S. market by Antara, Abbott filed a sham action in this judicial district in the form of a counterclaim alleging that Antara infringed upon certain of Abbott's patents.

22.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims asserted occurred in this judicial district, including but not limited to, the filing of the sham counterclaim by Abbott in *Reliant Pharm. v. Abbott Lab.*, No. 04-350 (D. Del. filed June 1, 2004) and the harm suffered by consumers of fenofibrate products in Delaware as a result of Abbott's unlawful and anticompetitive actions.

23.     This action is related to the following other cases filed in this District Court under the meaning of Local Rule 3.1 in that it involves the same patents: *Abbott Lab. v. Teva Pharm. USA, Inc.*, No. 02-1512 (MPT) and *Abbott Lab. v. Impax Lab.*, No. 03-120 (KAJ).

## IV.     ABBOTT AND THE TRICOR PRODUCT

24.     Defendant Abbott manufactures, markets and sells a brand name heart medication called TriCor in the United States.

25.     TriCor is a heart medication that contains an active ingredient called fenofibrate. Among other purposes, fenofibrate is used to reduce high levels of low-density lipoprotein cholesterol ("LDL-C"), sometimes referred to as "bad cholesterol," and triglycerides by promoting the dissolution and elimination of fat particles in the blood. Fenofibrate also increases levels of high density lipoprotein cholesterol ("HDL-C"), sometimes referred to as "good cholesterol," and reduces LDL-C in patients with primary hypercholesterolemia (high bad cholesterol) or mixed dyslipidemia (high bad cholesterol and high triglycerides). Fenofibrate is also effective at reducing triglycerides in patients with hypertriglyceridemia (high triglycerides).

26.     Abbott has sold TriCor in various formulations in the United States since at least 1999.

27.     In Court filings, Abbott describes TriCor as one of its most successful products sold in this country.

28.     Sales of TriCor in the U.S. over the past four years have amounted to approximately four billion (US$4,000,000,000) dollars.

29.     In 2007 alone, sales of TriCor exceeded 1.2 billion (US$1,200,000,000) dollars.

30.     TriCor dominates the market for products containing fenofibrate. As of approximately July 2005, Abbott's sales of TriCor accounted for over 95% of all sales of

fenofibrate products in the United States since September 2001. Currently, Abbott's sales of TriCor continue to account for approximately 95% of all sales of fenofibrate products in the United States.

31.     Abbott makes and sells TriCor in the United States pursuant to a license agreement it has entered into with a French company called Fournier.

32.     Abbott lists at least five patents in the Orange Book with respect to TriCor. These patents (collectively the "TriCor Patents") are United States Patent Nos. 4,895,726 (the "'726 patent"), 6,074,670 (the "'670 patent"), 6,277,405 (the "'405 patent"), 6,589,552 (the "'552 patent") and 6,652,881 (the "'881 patent").

33.     At all times relevant to the Complaint, the activities of Abbott with respect to TriCor were within the flow of, and have substantially affected, interstate commerce. At all times relevant to the Complaint, TriCor, which was manufactured and sold by Abbott, was shipped across state lines and sold to customers located outside its state of manufacture, including Delaware.

## V.      ETHYPHARM AND THE ANTARA PRODUCT

34.     Fenofibrate, the active pharmaceutical ingredient in TriCor, is in the public domain and is not protected by claims of any valid and existing patents.

35.     The effectiveness of fenofibrate based drugs depends in large part on the drug's bioavailability, which is the degree to which fenofibrate becomes available in the blood stream. Because fenofibrate does not dissolve easily, it is difficult to improve its bioavailability. For this reason, different pharmaceutical companies have sought to improve dissolution rates of fenofibrate by employing different methods and formulations so that heart patients can take

lower, more effective dosages of this medication.  Lower dosages allow patients to obtain the same health benefits with a lower risk of side effects.

36.     Ethypharm is a privately held pharmaceutical company founded in 1977.  Since the mid-1980s, Ethypharm has spent considerable time, money and effort improving the bioavailability of heart medications containing fenofibrate.

37.     Ethypharm achieved positive results in this area by "micronizing" fenofibrate through a grinding process that reduces particle size and increases surface area and by using the micronized fenofibrate to enhance bioavailability.  Ethypharm successfully patented this fenofibrate medication and the method for its preparation in France, Europe, and the United States.

38.     Since the mid-1980s, Ethypharm has been the principal competitor of Abbott's licensor (Fournier) in the licensing and sale of products containing fenofibrate on the world stage.   Given this history, its knowledge regarding fenofibrate products, and its patents, Ethypharm sought to enter the U.S. market with its own branded product containing fenofibrate in order to compete with TriCor.

A.     **Ethypharm's License Agreement with Reliant**

39.     During the period relevant to this lawsuit, Ethypharm did not have the capacity to market, sell, or distribute pharmaceutical products in the United States.  Instead, because of the substantial time and resources required to introduce a product to the market, Ethypharm's business model was to enter into license agreements with companies in the United States that would then supply the marketing, regulatory, and other necessary expertise to market, sell, and distribute Ethypharm products in the United States.  Absent the mechanism of the license agreement, Ethypharm would be foreclosed from the United States market, and U.S. consumers

would be deprived of the choice of using Antara or other products containing fenofibrate developed by Ethypharm.

40.    In 2001, Ethypharm entered into an exclusive license agreement (the "License Agreement") with Reliant to market, sell and distribute Ethypharm's fenofibrate products in the United States.

41.    Reliant is a United States pharmaceutical company that specializes in the development, commercialization and marketing of prescription therapeutic products. Reliant exclusively markets branded pharmaceutical products to U.S.- based primary care and targeted specialty physicians.

42.    Under the terms of the License Agreement, Ethypharm was responsible for developing and producing a fenofibrate drug suitable for marketing in the United States, and Reliant was responsible for obtaining regulatory approval for the drug, preparing appropriate packaging material, and then launching the drug through the efforts of a large, motivated, and experienced sales force.

43.    Under the License Agreement, Ethypharm receives compensation for its intellectual property rights to Antara principally through three avenues: royalties on the sales of Antara; profit on Ethypharm's manufacture of Antara; and certain milestone payments.

44.    In the context of the License Agreement with Ethypharm, Reliant had the ability and the economic incentive to increase profits by working with Ethypharm to develop and introduce other fenofibrate formulations and combination products developed by Ethypharm. "Combination products" are medications that combine the therapeutic benefits of fenofibrate with other drugs. The extension of the Antara line through the launch of other fenofibrate products, including combination products, would provide benefits to U.S. consumers, would

cause Abbott's TriCor brand to lose a greater market share to Ethypharm, and would result in greater profits for Ethypharm.

45.     When Ethypharm entered its License Agreement with Reliant in 2001, Reliant was a small company willing to take on the risks associated with marketing a new drug in the United States. In the event the Food and Drug Administration ("FDA") approved Antara and Reliant demonstrated an ability to generate Antara sales, Reliant would be able to further increase the sales of this product and extend the Antara line with new products containing fenofibrate.

46.     Alternatively, the License Agreement with Ethypharm permitted Reliant to sell the Antara Rights to other pharmaceutical companies. Thus, if Reliant had a corporate or strategic reason to exit the market for products containing fenofibrate or if there were other companies with a comparative advantage in further developing or marketing the drug after the initial FDA approval, Reliant could seek to sell or sublicense the Antara Rights to another pharmaceutical company.

47.     The License Agreement did not restrict or limit the pool of pharmaceutical companies to whom Reliant could sell or sublicense the Antara Rights. Without such restrictions, and in a situation where Reliant elected to exit the market for products containing fenofibrate after obtaining FDA approval and demonstrating Antara's viability in the marketplace, Reliant would naturally seek to sell or sublicense the Antara Rights to a pharmaceutical company with a comparative advantage over Reliant, or with a large sales force and/or capacity effectively to promote Antara, extend the Antara line, and further increase sales. The sale of the Antara Rights to a competitor of Abbott with such resources would increase competition with TriCor, benefiting consumers and causing Abbott's TriCor brand to lose a

greater market share to Antara, and would result in greater profits for Ethypharm and a higher sales price for Reliant.

48.     Ethypharm's ability successfully to convert its knowledge and its intellectual property regarding useful fenofibrate formulations into actual products sold in the U.S. marketplace depended in large part upon Reliant's faithful execution of its duties and obligations under the License Agreement and Reliant's freedom under the License Agreement to do so.

49.     In addition to the explicit obligations under the License Agreement, Reliant owed Ethypharm duties of good faith and fair dealing in respect of promoting and marketing Antara. Among other things, Reliant could not unreasonably restrict or foreclose the possibility of pursuing combination products or other fenofibrate formulations and could not unreasonably restrict or foreclose the possibility of selling the Antara Rights to a pharmaceutical company with the resources necessary to promote and market Antara effectively.

**B.     The Successful Launch of Antara**

50.     On November 30, 2004, the Food and Drug Administration ("FDA") approved Reliant's New Drug Application for Ethypharm's fenofibrate product.  The trade name for this product was, and is, Antara.

51.     Antara is not a generic product.  Antara is a branded product that is marketed in its own right directly to physicians.

52.     Antara is a superior product to TriCor in that Antara uses a smaller amount of the active ingredient fenofibrate (130 mg vs. 145 mg) to obtain the same health benefits.

53.     In February 2005, following its national sales meeting, Reliant launched Antara. During this period, Reliant's top management, along with its entire or nearly entire sales staff, was largely focused on ensuring the successful introduction of Antara to the U.S. marketplace.

54.     From 2005 to mid-2006, Antara was a successful product for both Reliant and Ethypharm.

55.     In the twelve month period ending December 31, 2005, the net product sales for Antara totaled $23.5 million.

56.     For the six month period ending on June 30, 2006, net sales for Antara totaled $18.9 million.

57.     Thus, in its first eighteen months, Antara's net product sales were well in excess of US$40 million. Ethypharm had devoted significant resources towards the development of a useful fenofibrate formulation to be marketed in the United States and the successful launch and marketing of Antara by its licensee was the culmination of those efforts.

58.     The resources necessary to launch Antara and to maintain competition against the TriCor brand in the United States are significant.  For example, Reliant, in regulatory filings, stated that it incurred a total of $17.3 million in sales and marketing expenses for Antara during the first quarter of 2005.

59.     Reliant employed a sales force of approximately seven hundred sales professionals in the launch and subsequent marketing of Antara.

60.     In addition to marketing the current formulation of Antara, Reliant was actively using its corporate expertise to evaluate clinical development strategies and possible acquisitions for product line extensions for Antara.

61.     Also, in addition to marketing the current formulation of Antara, Reliant was utilizing its in-house expertise to expand the label for Antara to include an additional indication for the prescription of Antara.

62.    As of mid-2006, Ethypharm had a well-founded, non-speculative, reasonable business expectancy that Reliant, through its significant corporate resources and expertise, would be able to increase the sales of Antara, develop and market new fenofibrate formulations, develop and market combination products containing fenofibrate, and otherwise successfully develop and promote the Antara product in the U.S. marketplace.    In the alternative, Reliant could sell the rights to Antara to a pharmaceutical company that could effectively compete to take market share from TriCor through a variety of marketing efforts and the successful development and promotion of Antara product line extensions, including combination products.

## VI.    ABBOTT'S ANTICOMPETITIVE AND WRONGFUL INTERFERENCE WITH ETHYPHARM'S LICENSE AGREEMENT

63.    Numerous legal claims have been brought against Abbott alleging antitrust violations relating to Abbott's unlawful manipulation of the regulatory process created by the Hatch-Waxman Act to delay and thwart meaningful entry of the generics into the fenofibrate market.    These alleged antitrust violations are detailed in various complaints and counterclaims filed in this District Court and elsewhere.    *See, e.g.*, the Amended Counterclaims filed by Teva USA and Teva Pharmaceutical Industries, Ltd. (collectively "Teva") in the case of *Abbott Lab. v. Teva Pharm. U.S.A., Inc.*, No. 02-1512 (D. Del. filed Oct. 4, 2002) (the "Generics Lawsuits").

64.    The entry of generic fenofibrate products into the marketplace poses one type of competitive threat to Abbott's monopoly over the market for products containing fenofibrate. Among other things, the entry of lower cost generics would significantly reduce Abbott's sales of TriCor, which are currently in excess of US$1 billion per year.    In response to this competitive threat, Abbott has repeatedly reduced the milligram dosage of its TriCor product in order to forestall the entry of generics and maintain its monopoly over the market for products containing fenofibrate.    Abbott takes the position that this conduct constitutes lawful "life cycle

management" of the TriCor product, while the plaintiffs in the Generics Lawsuits view this conduct as unlawful manipulation of the Hatch-Waxman regulatory structure and a violation of the antitrust laws.

65.     This Complaint focuses on Abbott's misconduct in illegally impeding Ethypharm, Abbott's main branded competitor, in its efforts to compete against TriCor by the introduction of Antara, the introduction of new fenofibrate formulations, and the introduction of combination products containing fenofibrate.

66.     Among the competitive threats that Abbott faces as a result of Ethypharm's decision to enter into the U.S. market with fenofibrate products are: (a) direct competition from another branded drug that is superior in that it uses a lower dosage of fenofibrate; (b) the potential extension of the Antara line to include other fenofibrate formulations including even lower dosages which would result in loss of additional market share and thereby maintain its monopoly; and (c) the potential extension of the Antara line to include combination products containing fenofibrate formulations, a significant innovation that would further reduce Abbott's market share and its ability to maintain its monopoly over products containing fenofibrate.

67.     As explained more fully herein, Abbott responded to each of these distinct competitive threats by taking illegal action. First, Abbott entered into an agreement with Reliant that barred Reliant from selling the Antara Rights to a select list of competitors capable of more effectively expanding Antara sales and imposed a 7% royalty on sales of Antara. Second, Abbott entered into an agreement prohibiting Ethypharm's exclusive U.S. licensee from marketing any new formulations. Third, Abbott entered into an agreement prohibiting Ethypharm's exclusive licensee in the U.S. from marketing combination products.

68.     Even if Abbott had a limited valid monopoly affecting Antara as a result of the TriCor patents – which it did not – the restrictions Abbott imposed upon Ethypharm's exclusive licensee in the U.S. were an extension of this limited monopoly beyond the scope of the TriCor patents and constitute a violation of the antitrust laws.

69.     In particular, other fenofibrate formulations and new combination products are separate and distinct from the Antara product.  They cannot be said to infringe on the TriCor patents.  Moreover, Abbott's restrictions were not limited in time and the TriCor patents are limited in time.  In these and other ways, the restrictions Abbott imposed upon Ethypharm's exclusive licensee in the U.S. are an unwarranted extension of any conceivable limited monopoly Abbott possessed as a result of the TriCor patents and constitute a violation of the antitrust laws.

70.     To stymie competition from Ethypharm, Abbott attacked Ethypharm by directly, purposefully, and wrongfully interfering with Ethypharm's License Agreement with Reliant.

71.     By interfering with Ethypharm's License Agreement with Reliant, Abbott could cripple Ethypharm's ability effectively to compete with Abbott in the United States since, during the relevant time period, Ethypharm did not have the capability directly to market, distribute and sell Antara in the United States.

72.     Under circumstances where the FDA had approved Antara and Reliant had demonstrated the ability to generate sales in the United States in competition with TriCor, the Antara Rights presented an attractive business opportunity for purchase by other companies with large resources to further increase sales.  Thus, in order unlawfully to impede Ethypharm's ability to compete in the relevant U.S. market, Abbott entered into an anticompetitive agreement with Reliant that prohibited Reliant from transferring the Antara Rights to pharmaceutical

16

companies that had the resources, capacity, and expertise more effectively to increase sales of Antara and to market other fenofibrate formulations and innovative combination products.

73.    Abbott's agreement with Reliant restricting Reliant's ability to transfer the Antara Rights was equivalent, in substance, to an output restraining agreement.  This restriction on Reliant's ability to transfer the Antara Rights is a key element in Abbott's continuing effort to stifle competition and retain its monopoly over the market for products containing fenofibrate. In addition, Abbott's restriction on Reliant's ability to sell the Antara Rights to select companies that have the ability to develop and market other new and innovative formulations of fenofibrate and combination products containing fenofibrate restricts competition at the innovation stage. The restrictions, in effect, artificially and illegally limit the already finite number of competitors that have the ability to bring new innovative fenofibrate products to the market.

74.    Abbott also entered into an anticompetitive agreement with Reliant under which Reliant (and any entity that would in the future purchase the Antara rights) would pay a 7% royalty to Abbott on all sales of Antara and other fenofibrate products.  By scheming to collect a royalty from Ethypharm's licensee, Abbott weakened the profitability of Antara, thereby raising the cost of promoting, selling and distributing Antara and other fenofibrate products.  Abbott's collection of a royalty based on the sales of its competitor allows Abbott to benefit from any success its competitor may have and also creates other restrictions on unfettered competition, leading to fewer innovations and higher prices for consumers.

75.    Abbott's restrictive agreement(s) with Reliant also blocked Ethypharm's ability to work with its licensee to extend the Antara product by means of pursuing any new fenofibrate formulations, any combination products, or by adding to the indications for which physicians can prescribe Antara.   These additional restrictions further stifle innovation for consumers and

further impair Ethypharm's ability to compete in the market and bring innovative fenofibrate products to consumers.

76.    By entering into these secret and confidential agreements with Ethypharm's exclusive licensee, Abbott was able to maintain the semblance, but not the reality, of competition in the market for products containing fenofibrate.

77.    By entering into these secret and confidential agreements, Abbott eliminated the potential that (1) the Antara Rights would be transferred to certain well financed competitors with the ability to make significant inroads on the market share of Abbott's flagship drug TriCor; (2) the Antara line would be extended, to the detriment of TriCor's market share, to include lower dosage formulations; and (3) the Antara line would be extended, to the detriment of TriCor's market share, to include combination products containing fenofibrate and other useful drugs. In summary, by entering into these agreements, Abbott restrained competition, and stifled and delayed innovation, thereby harming consumers and Ethypharm.

78.    On information and belief, Abbott entered into its restrictive agreement(s) with Reliant in or around April 2006.

79.    Ethypharm first learned of the existence of the anticompetitive agreement(s) in or around the summer of 2006. At that time, a top official of Reliant told a top official of Ethypharm that Reliant was contemplating the sale of the Antara Rights to another pharmaceutical company. The Reliant official disclosed that Reliant had already entered an agreement with Abbott that prevented Reliant from selling the Antara Rights in the United States to a specific list of a few dozen pharmaceutical companies. On information and belief, these were companies that had the capacity to compete with TriCor more effectively.

80.    Ethypharm was not informed of Abbott's restrictive, anticompetitive agreement(s) with Reliant in advance of Reliant's entry into the agreement(s). Ethypharm did not consent to the restrictive, anticompetitive agreement(s) between Reliant and Abbott.

81.    In mid-2006, at a point in time that was critically important for Antara's growth in the marketplace, and to Ethypharm's timely ability to develop innovative fenofibrate products, Reliant looked to sell the Antara Rights.

82.    At this time, Antara was approved by the FDA and had a proven sales record. The Antara Rights were attractive to companies with greater resources who could further increase the sales of Antara and extend the Antara line. More than one pharmaceutical company fitting this profile initially expressed interest in exploring the purchase of the Antara Rights.

83.    Prohibited by its illegal agreement(s) with Abbott, Reliant was unable to consider the sale of the Antara Rights to companies that could more effectively have marketed Antara through, among other things, the employment of a large sales force and the pursuit of combination products or other fenofibrate formulations.

84.    Ultimately, Reliant sold the Antara Rights to Oscient. Oscient has a dramatically smaller sales force as compared to Reliant, and does not have the resources that Reliant or numerous other pharmaceutical companies have to promote Antara or timely to develop and market additional fenofibrate formulations and new combination products.

85.    But for Abbott's restrictive, anticompetitive agreement(s) with Reliant, Reliant would have been able to sell the Antara Rights to a pharmaceutical company with substantially greater ability and resources than Oscient to promote Antara and market new fenofibrate products including combination products.

86.     Ethypharm has also become aware that Abbott retains confidential restrictive and anticompetitive agreement(s) with Oscient that were transferred with the sale from Reliant. Among other things, these anticompetitive agreements restrict Oscient from pursuing extensions of Antara, including restricting Oscient's ability to develop new fenofibrate formulations and combination products that would combine fenofibrate with other medications.   Ethypharm learned of this anticompetitive agreement after it was entered and did not consent to it.

87.     In particular, Oscient representatives confirmed the existence of anticompetitive agreement(s) with Abbott at a meeting on September 27, 2007.  At this meeting, Oscient and Ethypharm representatives discussed new project opportunities.  During the discussion of a new combination product that would combine fenofibrate with another active ingredient to provide additional benefits for consumers, Oscient representatives confirmed the existence of a confidential agreement with Abbott, which was transferred from Reliant, and which restricts Oscient from launching any fenofibrate formulation in the U.S. either alone or in combination with any other product.

88.     Abbott also continues to assess a 7% royalty on Oscient's sales of Antara, thereby increasing the costs Oscient incurs in marketing and selling Antara.  In addition, Oscient has assumed all restrictions on the ability to transfer the Antara Rights.  As a result, Oscient, like Reliant before it, is not able to sell the Antara Rights to pharmaceutical companies that have the resources, sales staff, and expertise to compete more effectively with TriCor and to market other innovative fenofibrate products.

89.     But for the improper and unlawful conduct of Abbott, Antara would have captured a much more significant share of the market, and efforts to extend the Antara product

line would be proceeding at a faster pace, resulting in benefits to consumers and greater profits for Ethypharm.

90.    Abbott's conduct is intentionally designed to impede, and has impeded, the effective marketing of Antara, and the development of new fenofibrate and combination products.  As a result of Abbott's unlawful scheme and interference with Ethypharm's License Agreement, Abbott has been and continues to be able to illegally maintain and prolong its monopoly position in the market for products containing fenofibrate at the expense of Ethypharm and consumers.

91.    Abbott's conduct is anticompetitive and unreasonably restrains competition. Abbott interfered with Ethypharm's License Agreement, thereby assuring that a branded product that is competitive with TriCor (and indeed is superior to TriCor) will not be marketed by a pharmaceutical company with the resources and expertise effectively to compete with TriCor. Abbott has also illegally restricted Ethypharm's ability to bring new innovative fenofibrate products and combination products containing fenofibrate to the U.S. market.  Abbott had no legitimate, reasonable or lawful basis to engage in this anticompetitive and tortious conduct.

## VII.    ABBOTT'S PURSUIT OF SHAM LITIGATION AGAINST ETHYPHARM'S LICENSEE

92.    Abbott's anticompetitive conduct also includes the wrongful filing and maintenance of a patent infringement counterclaim against Reliant, Ethypharm's licensee. Abbott filed and/or maintained a sham counterclaim against Ethypharm's licensee despite its knowledge that the patents at issue (the '405 and '881 patents) are invalid, unenforceable due to inequitable conduct, and not infringed.

93.    As part of the regulatory process leading up to the FDA approval of Antara, Reliant provided notice of a regulatory filing and certification to Abbott in February 2004.

21

Abbott responded in writing with a thinly-veiled threat to bring suit. This threat prompted Reliant to file an action in this Court on June 1, 2004 seeking a declaration of non-infringement and also seeking a declaration that the Fournier patents under which Abbott was manufacturing its fenofibrate product, TriCor, were unenforceable due to inequitable conduct. *See Reliant Pharm. v. Abbott Lab.*, No. 04-350 (D. Del. filed June 1, 2004) (the "Abbott/Reliant Litigation").

94. Ethypharm was not a party to the Abbott/Reliant Litigation.

95. In the context of the Abbott/Reliant Litigation, Reliant asserted that Antara did not infringe any patents held by Abbott and/or its licensor (Fournier) relating to the TriCor products. Significantly, Reliant also alleged that the patents filed by Abbott's licensor and relied upon by Abbott to protect its TriCor product were unenforceable due to inequitable conduct by the inventors before the United States Patent and Trademark Office ("USPTO").

96. On November 30, 2004, while the Abbott/Reliant Litigation was pending, the FDA issued a notice to Reliant approving the sale of Antara.

97. Reliant immediately proceeded to take steps to launch Antara, in spite of the fact that the Delaware Court had not ruled on the patent infringement issue.

98. The more usual course, under the regulatory regime created by the Hatch-Waxman Act, would have been for a pharmaceutical company in Reliant's position to file what is known as a Paragraph IV certification for the patents that Abbott had identified in the Orange Book as protecting Abbott's fenofibrate product.

99. Filing the Paragraph IV certification would result in a period of time for the court to resolve any infringement claim prior to the marketing of the drug. By obtaining a court ruling prior to marketing, a new entrant would escape exposure to potentially large infringement damages.

100.   Reliant elected to circumvent this common procedure and to proceed directly to market with Antara because any claim that Antara infringed any of the TriCor patents would be objectively baseless and, in any event, the TriCor patents were unenforceable due to inequitable conduct.

101.   In the context of the Abbott/Reliant Litigation, Reliant provided specific details concerning inequitable conduct by the inventors before the USPTO. In particular, Reliant alleged that the specifications for the patents at issue misrepresent the dissolution profile for a prior art product known as Lipanthyl 200M.

102.   Reliant made the following specific allegations regarding the inequitable conduct pertaining to the '670, '405, '552 and '881 patents in the Abbott/Reliant Litigation in its Complaint filed on June 1, 2004:

    (a)   The '670 patent, the '405 patent, the '552 patent and the '881 patent are unenforceable due to inequitable conduct by the inventors before the United States Patent and Trademark Office. The specifications for each of those patents misrepresent the dissolution profile for a prior art product known as Lipanthyl 200M. Specifically, Figures 1 and 2 in each of these patents compares the dissolution profiles for the alleged invention to that of the prior art Lipanthyl 200M. The inventors, with the intent to deceive the PTO, misrepresented the dissolution profile for Lipanthyl 200M and furthermore misrepresented that the dissolution profile for the alleged invention was "distinctly better" than that for Lipanthyl 200M.

    (b)   In addition, during the prosecution of at least the '670 patent, the '405 patent, and the '881 patent, the inventors, with intent to deceive the PTO, overcame the Patent Examiner's rejections of certain claims by misrepresenting the dissolution profile for Lipanthyl 200M in the following documents:

        i.   Response and Amendment under 37 C.F.R. § 1.111, dated December 4, 1998, during prosecution of the application that became the '670 patent;

        ii.      Response and Amendment under 37 C.F.R. § 1.111, dated May 20, 1999, during prosecution of the application that became the '670 patent;

        iii.    Reply under 37 C.F.R. § 1.111, dated November 17, 1999, during prosecution of the application that became the '670 patent;

        iv.    Request for Reconsideration under 37 C.F.R. § 1.111, dated June 25, 2003, during prosecution of the application that became the '881 patent; and

        v.     Response and Amendment under 37 C.F.R. § 1.111, dated January 26, 2001, during prosecution of the application that became the '405 patent.

(c)     The '552 PATENT is intimately related to the '670 patent, the '405 patent, and the '881 patent because it is a continuation of the other three patents and furthermore has the same subject matter, the same inventors, the same specification, and relies on the same misrepresented prior art. The inventors' broad pattern of inequitable conduct before the United States Patent and Trademark Office in their prosecution of the '670 patent, the '405 patent, and the '881 patent has tainted the '552 patent so as to render it unenforceable.

(d)     The '670 patent, the '405 patent, the '881 patent, and the '552 patent are intimately related to each other because the latter three are continuations of the '670 patent and furthermore each patent has the same subject matter, the same inventors, the same specification, and relies on the same misrepresented prior art. The inventors' inequitable conduct before the United States Patent and Trademark Office in their prosecution of each of the '670 patent, the '405 patent, the '881 patent and the '552 patent has tainted the other three so as to render them unenforceable.

103.    During this timeframe, Reliant was not the only litigant alleging that Abbott and its licensor had committed inequitable conduct before the USPTO. For example, on January 4, 2005, Abbott was put on notice, by means of an Amended Answer in the case of *Abbott Lab. v. Impax Lab., Inc.*, No. 03-120 (D. Del. filed Jan. 23, 2003) (the "Impax Litigation") of specific, particular, and detailed facts establishing that the '881 patent was unenforceable due to inequitable conduct.

104.   The publicly filed versions of many sections of the pleadings in the Impax

Litigation that specifically relate to the inequitable conduct allegations are redacted and are not

available at this time for review by Ethypharm or the general public.   However, the specific

allegations relating to inequitable conduct are publicly disclosed, in part, in Impax's

Memorandum in support of its Motion to Amend its Answer which states:

> In attempts to distinguish the prior art, declarations of Philippe Reginault
> were filed during the prosecution of two of the U.S. applications in the
> chain leading up to the patents in suit.  Mr. Reginault is a named inventor
> of Curtet, which covers certain fenofibrate capsules.   His declarations
> recite that he reviewed the applications and knew that the claims were
> rejected over Curtet.  His declarations provide dissolution results for an
> embodiment of the patents in suit and a prior art patent other than Curtet.
> [Redacted.]  **This material information was withheld with intent to
> mislead the United States Patent and Trademark Office.  Accordingly,
> any patents that issued from these applications in which Reginault
> submitted a declaration, and subsequent applications in the chain
> thereof, are unenforceable for inequitable conduct.**  (Emphasis added).

105.   As of the filing of this Complaint, Ethypharm only has access to a redacted public

version of pleadings such as the Amended Answer in the Impax Litigation and, as a result,

further specific allegations from other lawsuits relating to Abbott's use of sham litigation against

Ethypharm's licensee are not currently available to Ethypharm.

106.   Notwithstanding the fact that certain information has been withheld, the public

record is clear that Abbott was on notice, on or before January 7, 2005, by means of the

statements in the Abbott/Reliant Litigation and the Impax Amended Answer, that the inventors

of the '405 and '881 patents had engaged in inequitable conduct before the USPTO.

107.   On information and belief, Abbott was also on notice, as a result of joint defense

discussions with its licensor, Fournier, that other litigants and potential litigants were making

similar allegations that the patents supporting TriCor, including the TriCor patents, were invalid

and were procured by inequitable conduct.   On information and belief, these joint defense

discussions took place both before and after the filing of Abbott's sham counterclaim on January 7, 2005. Joint defense discussions relating to inequitable conduct in the procurement of any patents relating to TriCor are not privileged due to the crime fraud exception.

108.   Another indication that Abbott did not have an objectively reasonable basis to bring an infringement counterclaim against Reliant was that Abbott did not even have the ability to test the Antara product to see if it infringed before filing its counterclaim on January 7, 2005. Therefore, upon the information available to Abbott at the time, there could be no reasonable basis to file an infringement counterclaim.

109.   For these reasons and others, as of the date that Abbott filed its patent infringement counterclaim in the Reliant suit, there was no objectively reasonable basis to believe that (1) Antara infringed any of the claims in the '405 and '881 patents; or (2) that the '405 and '881 patents were, in any event, valid. In fact, Abbott was on notice as of January 2005 that the TriCor patents had been procured by inequitable conduct before the USPTO. Notwithstanding this notice, Abbott filed a sham counterclaim alleging that Antara infringed upon the '405 and '801 patents.

110.   In addition to the notice of inequitable conduct provided by Reliant's Complaint and the Impax Amended Answer, Abbott was on notice of the inequitable conduct from an additional source by no later than January 25, 2005, when inequitable conduct was raised as an affirmative defense by Teva in the case of *Abbott Lab. v. Teva Pharm. U.S.A., Inc.*, No. 02-1512. Notwithstanding this, Abbott continued to maintain and pursue its sham counterclaim.

111.   Despite Abbott's filing of the counterclaim, and despite the Delaware Court not having issued a declaration of non-infringement, Reliant did launch Antara in February 2005, a clear indication that Abbott's counterclaim for infringement had no objective, reasonable basis.

112.   On information and belief, after the launch of Antara, and as part of its efforts to illegally defend its monopoly, Abbott's sales force spread rumors that Reliant would not be able to obtain sufficient supplies of Antara due to patent infringement issues.

113.   By means of its sham counterclaim, Abbott was able to further restrain Antara's sales prospects in the United States and otherwise cause injury to Ethypharm.

## COUNT 1
### (Violations of Sherman Act § 2)

114.   Ethypharm repeats and realleges paragraphs 1 through 113 as if fully set forth herein.

115.   Ethypharm seeks compensatory, treble and punitive damages based upon injury caused by Abbott's willful violations of the antitrust laws of the United States.   Abbott has illegally attempted to monopolize, and has illegally monopolized, a billion dollar market for products containing fenofibrate, and has substantially restrained Ethypharm's ability to supply a competing and superior product to this market.   In addition, Abbott has substantially restrained Ethypharm's ability to supply innovative fenofibrate formulations and combination products containing fenofibrate to this market.

116.   Abbott planned and executed a sustained strategy to monopolize and attempt to monopolize the market for products containing fenofibrate by interfering with Ethypharm's License Agreement with Reliant and by entering illegal and anticompetitive agreements with Ethypharm's exclusive licensee in the United States.

117.   For purposes of this Complaint, the relevant geographic market is the United States.   The relevant product market is products containing fenofibrate.

118.    Abbott has engaged in an unlawful attempt to secure and maintain a monopoly in the market defined above.    Through its actions, most notably by:    (a) entering into and maintaining anticompetitive agreement(s) with Ethypharm's licensees (Reliant and Oscient) to restrict the ability of Ethypharm's licensees to transfer the Antara Rights; (b) entering an agreement to restrict the ability of Ethypharm's licensees to market new fenofibrate formulations and new combination products containing fenofibrate; (c) requiring Ethypharm's licensees to pay a 7% royalty on Antara sales; and (d) filing a sham counterclaim against Reliant, Abbott has severely limited Ethypharm's ability to compete against Abbott in the market comprised of products containing fenofibrate.

119.    Abbott has engaged in the unlawful and anticompetitive acts alleged above with the specific intent to:

(a)     foreclose, or attempt to foreclose, market entry and innovation by competitors, including Ethypharm, in the above-defined relevant market to the detriment of Ethypharm and consumers;

(b)     eliminate, or attempt to eliminate, competitors already entering or within the above-defined relevant market to the detriment of Ethypharm and consumers;

(c)     unlawfully raise prices and costs to consumers, and reduce consumer choice by preventing competitors from competing in, innovating, or entering the above-defined relevant market; and

(d)     unlawfully limit the development of product line extensions for the Antara product, including new fenofibrate formulations and combination products containing fenofibrate to the detriment of Ethypharm and consumers.

120.    Abbott's share of the above-defined relevant market is so dominant, and its power to exclude competition through wrongful acts, including interference with Ethypharm's License Agreement with Reliant (and Oscient), is so formidable, that there exists a dangerous probability

that Abbott already has achieved and/or will achieve monopoly power in the above-defined relevant market.

121.   Ethypharm has been damaged by the unlawful and anticompetitive actions of Abbott alleged herein by being prevented from, delayed, and hindered in effectively developing and marketing products containing fenofibrate, such as Antara, other fenofibrate formulations, and combination products containing fenofibrate despite Ethypharm's intention, ability, and preparation to develop and market Antara and such product line extensions.

122.   Ethypharm's injuries are the direct and proximate result of Abbott's unlawful and anticompetitive acts.

123.   Abbott's unlawful and anticompetitive actions have wrongfully suppressed competition in the above-defined relevant market.  This competitive injury to Ethypharm is remediable through relief available under the antitrust laws including damages, treble damages, attorney fees and injunctive relief.

124.   Ethypharm has suffered harm including, among other things, loss of profits and/or royalties from having been illegally excluded from the relevant market, loss of licensing profits because Abbott's threat of anticompetitive litigation has devalued Ethypharm's intellectual property, inability to recoup the costs associated with preparing to bring a competing product to the relevant market, harm to business reputation, and other expenses, including costs and attorneys' fees.

125.   Abbott's actions as alleged herein violate Section 2 of the Sherman Act (15 U.S.C. § 2), which prohibits monopolization and attempted monopolization of trade and commerce.

126.    Ethypharm is entitled to damages and injunctive relief pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) and Section 16 of the Sherman Act (15 U.S.C. § 26).

## COUNT 2
### (Violation of Sherman Act § 1)

127.    Ethypharm repeats and realleges paragraphs 1 through 126 as if fully set forth herein.

128.    Abbott entered into a contract, combination, or conspiracy in restraint of trade with Ethypharm's licensee, Reliant, and possibly others.

129.    Abbott and Ethypharm's licensee took affirmative acts in furtherance of its contract, combination, or conspiracy by entering into and maintaining unlawful agreements that produced adverse, anticompetitive effects within the United States fenofibrate market comprised of products containing fenofibrate.

130.    The objects of Abbott's contract, combination, or conspiracy with Ethypharm's licensee, namely the imposition of restrictions on Ethypharm's licensees that extended beyond any conceivable patent right held by Abbott, therefore stifling innovation and competition, were illegal.

131.    Abbott and Ethypharm's licensee have taken affirmative steps in furtherance of their contract, combination, or conspiracy, including:  (a) entering into and enforcing an anticompetitive agreement to restrict the ability of Ethypharm's licensees to transfer the Antara Rights; (b) entering into and enforcing an agreement to restrict the ability of Ethypharm's licensees to market new fenofibrate formulations and new combination products containing fenofibrate; and (c) entering into and enforcing an agreement requiring Ethypharm's licensees to pay a royalty to Abbott on Antara sales.

30

132.   Abbott engaged in the unlawful and anticompetitive acts alleged above with the specific intent to:

   (a)   foreclose, or attempt to foreclose, market entry and innovation by competitors, including Ethypharm, into the above-defined relevant market to the detriment of Ethypharm and consumers;

   (b)   eliminate, or attempt to eliminate, competitors already entering or within the above-defined relevant market to the detriment of Ethypharm and consumers;

   (c)   unlawfully raise prices and costs to consumers, and reduce consumer choice by preventing competitors from competing in, innovating, or entering the above-defined relevant market; and

   (d)   unlawfully limit the development of product line extensions for the Antara product, including new fenofibrate formulations and combination products containing fenofibrate to the detriment of Ethypharm and consumers.

133.   Abbott's contract, combination, or conspiracy with Ethypharm's licensees has caused injury to, and unreasonably restrained competition in, the relevant market.

134.   Abbott's conduct occurred in, and has had a substantial effect on, interstate commerce.

135.   As a direct and proximate cause of Abbott's exclusionary and anticompetitive conduct, Ethypharm has been injured and has sustained damages.

136.   As a direct and proximate cause of Abbott's exclusionary and anticompetitive conduct, Ethypharm will continue to sustain predictable damages in the future.

137.   The injury to Ethypharm, and to consumers, constitutes antitrust injury.

138.   Abbott's actions as alleged herein violate Section 1 of the Sherman Act (15 U.S.C. § 1), which prohibits contracts, combinations, and conspiracies in restraint of trade.

139.   Ethypharm is entitled to damages and injunctive relief pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) and Section 16 of the Sherman Act (15 U.S.C. § 26).

## COUNT 3
### (Unfair Competition)

140.   Ethypharm repeats and realleges paragraphs 1 through 139 as if fully set forth herein.

141.   Ethypharm had a reasonable expectation that Reliant, by means of its corporate expertise, experience and resources, would be able to increase Antara's market share and extend the Antara product line, including by means of developing new fenofibrate formulations and combination products containing fenofibrate.

142.   In addition, Ethypharm had a reasonable expectation that if Reliant elected to assign its rights to Antara to another pharmaceutical company, it would do so to a company that had the corporate expertise and resources to increase Antara's market share and extend the Antara product line, including by means of developing new fenofibrate formulations and combination products containing fenofibrate.

143.   Abbott wrongfully interfered with Ethypharm's License Agreement with Reliant and future licensees by (i) bringing sham counterclaims against Reliant; (ii) imposing limitations on Reliant's ability to assign its license to pharmaceutical companies with the resources, capacity and expertise more effectively to market and promote Antara; (iii) requiring Ethypharm to pay a royalty to Abbott on Antara sales notwithstanding the fact that its patent was unenforceable, procured by inequitable conduct, and/or not infringed; and (iv) extending illegal restrictions on the development and marketing of new fenofibrate formulations and combination products containing fenofibrate.   To the extent the common law of unfair competition requires that Abbott's interference was intentional, Abbott's interference was intentional.

144.    Abbott's inequitable, unethical, and deceptive conduct hindered Antara's prospects as a competing drug to TriCor and otherwise interfered with free and full innovation and competition in the marketplace.

145.    Abbott thereby defeated Ethypharm's reasonable expectation of continuing to increase Antara's market share and extending Antara's product line.

146.    But for Abbott's interference, there was a reasonable probability that Ethypharm would have received the economic benefits resulting from an increased market share of Antara through increased sales of Antara and through the development and marketing of additional fenofibrate formulations and combination products containing fenofibrate.

147.    Abbott had no adequate justification to interfere with Ethypharm's relationship with Reliant.

148.    Abbott's conduct is against the public interest in having a competitive marketplace for products containing fenofibrate.

149.    Abbott's interference with Ethypharm's relationship with Reliant and with Ethypharm's reasonable prospective business relations has caused Ethypharm to suffer damages, including lost and diminished royalties, lost profits, and other damages.

150.    Abbott's actions constitute unfair competition under the common law.

151.    Upon information and belief, Abbott's acts of unfair competition will continue unless restrained by this Court.

152.    Ethypharm is entitled to compensatory damages, punitive damages, injunctive relief and such other relief as this cause of action allows.

## COUNT 4
### (Tortious Interference With Contract)

153.    Ethypharm repeats and reallages paragraphs 1 through 152 as if fully set forth herein.

154.    Ethypharm's License Agreement with Reliant was a valid contract during the period at issue in this lawsuit.

155.    Reliant's obligations under the License Agreement were governed by New Jersey law.

156.    Under New Jersey law, the License Agreement had as an essential term an implied covenant of good faith and fair dealing.

157.    Abbott intentionally and wrongfully interfered with the License Agreement by, among other things, entering anticompetitive agreement(s) with Reliant to (a) restrict the ability of Reliant or any future licensee of Ethypharm from transferring the Antara Rights to certain companies; (b) restrict the ability of Reliant or any future licensee of Ethypharm from entering the U.S. market with other fenofibrate formulations or new combination products containing fenofibrate; and (c) collect a royalty on Antara sales.

158.    As a result of Abbott's inducement and interference, Reliant breached the covenant of good faith and fair dealing in its License Agreement with Ethypharm by agreeing, among other things, to enter into an anticompetitive agreement or agreements with Abbott to (a) restrict the ability of Reliant or any future licensee of Ethypharm from transferring the Antara rights to certain companies; (b) restrict the ability of Reliant or any future licensee of Ethypharm from entering the U.S. market with new fenofibrate formulations or new combination products containing fenofibrate; and (c) pay a royalty on Antara sales to Abbott.

159.    Abbott was not a party to the License Agreement between Ethypharm and Reliant.

160.    Abbott had no adequate justification for interfering with the License Agreement between Ethypharm and Reliant.

161.    Abbott interfered with the License Agreement with an intent to induce Reliant to breach the implied covenant of good faith and fair dealing, or, alternatively, with the knowledge that its action would interfere with Reliant's implied covenant of good faith and fair dealing.

162.    Abbott's conduct is outrageous and against the public interest, because Abbott acted with malice or with reckless indifference to the rights of others.

163.    Abbott's interference with the License Agreement has caused Ethypharm to suffer damages, including lost and diminished royalties, lost profits, and other damages.

164.    Ethypharm is entitled to actual and punitive damages and such other relief as this cause of action allows.

### COUNT 5
### (Tortious Interference With Prospective Economic Advantage)

165.    Ethypharm repeats and realleges paragraphs 1 through 164 as if fully set forth herein.

166.    Ethypharm had a reasonable expectation that Reliant, by means of its corporate expertise, experience and resources would be able to increase Antara's market share substantially and extend the Antara product line, including by means of developing and marketing new fenofibrate formulations and combination products containing fenofibrate.

167.    In addition, Ethypharm had a reasonable expectation that if Reliant elected to assign its rights to Antara to another pharmaceutical company, it would do so to a company that had the corporate expertise and resources to further increase sales of Antara and extend the

Antara product line, including by means of developing additional fenofibrate formulations and combination products containing fenofibrate.

168.    Abbott knew that Ethypharm had a reasonable expectation of economic advantage.

169.    Abbott intentionally and wrongfully interfered with Ethypharm's relationship with Reliant by inducing Reliant to agree to enter anticompetitive agreement(s) with Abbott in order to:  (a) restrict the ability of Reliant or any future licensee of Ethypharm from transferring the Antara rights to certain companies; (b) restrict the ability of Reliant or any future licensee of Ethypharm from entering the U.S. market with new fenofibrate formulations or new combination products containing fenofibrate; and (c) require payment of a royalty on Antara sales to Abbott.

170.    As a direct result of Abbott's intentional and wrongful interference, the Antara Rights were transferred to a company that did not have the resources, capacity, and expertise to substantially increase Antara's market share or to extend the Antara product line.

171.    But for Abbott's intentional and wrongful interference, there was a reasonable probability that Ethypharm would have received the economic benefits resulting from further and increased sales of Antara and sales of other fenofibrate products including new fenofibrate formulations and combination products combining fenofibrate.

172.    Abbott had no adequate justification to interfere with Ethypharm's relationship with Reliant.

173.    Abbott's conduct is outrageous and against the public interest, because Abbott acted with malice and/or with reckless indifference to the rights of others.

174.   Abbott's interference with Ethypharm's relationship with Reliant and with Ethypharm's reasonable prospective economic advantage has caused Ethypharm to suffer damages, including lost and diminished royalties, lost profits, and other damages.

175.   Ethypharm is entitled to actual and punitive damages and such other relief as this cause of action allows.

## COUNT 6
### (Common Law Restraint of Trade)

176.   Ethypharm repeats and realleges paragraphs 1 through 175 as if fully set forth herein.

177.   The restrictions on Reliant's, Oscient's, and any future licensee's ability to assign the Antara Rights, to develop different formulations of fenofibrate, to develop combination products containing fenofibrate, as well as the imposition of a royalty on Antara sales, constitute unreasonable restraints of trade.

178.   The restrictions imposed on Ethypharm's exclusive U.S. licensees do not protect any legitimate interest of Abbott.

179.   The restrictions imposed by Abbott's anticompetitive agreement(s) are contrary to the public interest in that these restrictions stifle and restrain innovation and competition for products containing fenofibrate. For these reasons, and other reasons set forth in this Complaint, these restrictions cause injury to the public.

180.   These restrictions impose a real and actual hardship on Ethypharm.

181.   These restrictions are not ancillary to an otherwise valid contract.

182.   Even if the agreement(s) between Abbott and Ethypharm's licensees are otherwise valid, the restrictions contained therein unreasonably restrain trade and constitute a

restraint greater than needed to protect Abbott's legitimate interests.  Moreover, Abbott's need

for protection is outweighed by the hardship to Ethypharm and the injury caused to the public.

183.    Ethypharm is entitled to a declaration that the contract between Abbott and

Reliant is unenforceable and to any other relief that this cause of action allows.

**COUNT 7**
**(Sham Litigation in Violation of 15 U.S.C. § 1)**

184.    Ethypharm repeats and realleges paragraphs 1 through 183 as if fully set forth

herein.

185.    Abbott filed a counterclaim in the case of *Reliant Pharm., Inc. v. Abbott Lab.*,

C.A. No. 04-350, alleging that Antara infringed upon the '405 and '881 patents.

186.    Abbott did not have a reasonable basis to anticipate success on the merits of its

counterclaim, because Antara did not infringe upon the '405 and '881 patents, and/or because the

'405 and '881 patents were unenforceable due to inequitable conduct.

187.    There was, in fact, no reasonable basis upon which to bring the counterclaim; the

counterclaim was objectively baseless.

188.    Abbott's counterclaim was a calculated and intentional attempt by Abbott to

interfere directly with Ethypharm's business relationship with Reliant, and to impede and

suppress Ethypharm's ability to compete effectively with Abbott in the fenofibrate market

through sales of Antara and the marketing of additional products including new formulations of

fenofibrate and combination products containing fenofibrate to the detriment of Ethypharm and

consumers.

189.    On information and belief, Abbott intended to, and did, use its baseless

counterclaim as leverage to increase its bargaining position with Reliant.  On information and

belief, this counterclaim was one basis, among others, used by Abbott to induce Reliant

38

wrongfully to enter into one or more restrictive agreements pertaining to Antara and the Antara Rights.

190.   On information and belief Abbott intended to, and did, use it baseless counterclaim in order to promulgate rumors through its sales force that Reliant would not be able to obtain sufficient supplies of Antara due to patent infringement issues and/or otherwise to introduce uncertainty into the marketplace regarding Antara.

191.   Abbott's actions have unreasonably restrained trade in the relevant market.

192.   Abbott's conduct has occurred in, and is having a substantial effect on, interstate commerce.

193.   Abbott's conduct has injured and will continue to injure competition in the form of, among other things, reduced customer choice for fenofibrate products.

194.   As a direct and proximate result of Abbott's conduct, Ethypharm has been injured and has sustained damages.

195.   As a direct and proximate result of Abbott's conduct, Ethypharm will continue to sustain predictable damages in the future.

196.   The injury to Ethypharm constitutes antitrust injury.

197.   Ethypharm is entitled to damages and injunctive relief under Sections 2 and 16 of the Sherman Act, 15 U.S.C. §§ 2 and 26 and Section 4 of the Clayton Act, 15 U.S.C. § 15.

## JURY DEMAND

198.   Plaintiff demands trial by jury.

## RELIEF SOUGHT

WHEREFORE, Plaintiff demands judgment against Abbott as follows:

(a)     A determination that the acts alleged herein constitute unlawful monopolization and restraint of trade in violation of Sections 1 and 2 of the Sherman Act;

(b)     An award of treble damages against Abbott and all other relief available for violations of the federal antitrust laws;

(c)     An award against Abbott for prejudgment interest;

(d)     An award for the costs of this suit, including reasonable attorneys' fees as provided by law;

(e)     Punitive damages;

(f)     An injunction restraining Abbott from enforcing any illegal agreements it has entered with Reliant and/or Oscient;

(g)     A declaration that Abbott's agreement(s) with Reliant and/or Oscient are unenforceable; and

(h)     Such other and further relief as the Court may deem appropriate.

Respectfully submitted,

FOX ROTHSCHILD LLP

_____
Gregory B. Williams, Esq. (I.D. No. 4195)
Citizens Bank Center
919 North Market Street, Suite 1300
Wilmington, DE 19801
Tel:  (302) 622-4211
Fax:  (302) 656-8920
Email:  gwilliams@foxrothschild.com

OF COUNSEL:

Dwight P. Bostwick, Esq.
Bruce R. Grace, Esq.
Baach Robinson & Lewis PLLC
1201 F Street, NW, Suite 500
Washington, DC 20004
Tel: (202) 833-8900
Fax: (202) 466-5738

Dated:  March 3, 2008