# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ETHYPHARM S.A. FRANCE, ) | **REDACTED PUBLIC VERSION** |
| Plaintiff, ) | |
| v. ) | C.A. No. 08-126 (SLR) |
| ABBOTT LABORATORIES, ) | |
| Defendant. ) | |

## ABBOTT LABORATORIES'
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

BOUCHARD MARGULES &
  FRIEDLANDER, P.A.
David J. Margules (#2254)
222 Delaware Avenue
Wilmington, DE  19801
(302) 573-3500
dmargules@bmf-law.com


OF COUNSEL:

William F. Cavanaugh, Jr.
Thomas W. Pippert
Benjamin S. Litman
PATTERSON BELKNAP WEBB &
  TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710

*Attorneys for Abbott Laboratories*

Dated:  May 13, 2008
Redacted Filing Date:  May 20, 2008

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................ iv

Preliminary Statement .............................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 3

Ethypharm and Fournier License Fenofibrate Products ..................................... 3

Abbott, Reliant and Oscient Compete to Sell Fenofibrate Products ................... 4

Ethypharm Alleges Restraints on Competition in the Market for Selling Fenofibrate
Products ........................................................................................................... 4

Similar Allegations Are the Subject of Pending Actions ..................................... 5

Reliant and Oscient Have No Obligation to Develop "New Fenofibrate Products" or
"Combination Products" ................................................................................. 6

Reliant Filed a Declaratory-Judgment Action and Then Settled with Fournier and Abbott... 7

████████████████████████████████████████ .............. 10

Reliant Needed Ethypharm's Consent to Sell to Oscient ................................... 11

ARGUMENT .......................................................................................................... 11

I.  THE COURT SHOULD SCRUTINIZE THE CONCLUSORY ALLEGATIONS OF
ETHYPHARM'S COMPLAINT ON THIS MOTION TO DISMISS ........................... 11

II. ETHYPHARM DOES NOT HAVE ANTITRUST STANDING FOR
ANY OF ITS CLAIMS ...................................................................................... 13

A.  Antitrust Standing Is a Narrowing "Passageway" for Antitrust Plaintiffs ................... 13

B.  Antitrust Standing Requires an Antitrust Plaintiff to Pass Two Tests ........................ 14

C.  Ethypharm Cannot Establish Antitrust Injury ............................................................. 15

D.  Even If Ethypharm Has an Antitrust Injury,
It Still Does Not Have Antitrust Standing ................................................................... 18

1. Ethypharm's Injury, If Any, Was Not Caused by the Alleged Antitrust Violations ... 19

2. Ethypharm's Injury, If Any, Is Indirect and Incidental ............................................. 22

3. More Direct "Victims" of the Alleged Antitrust Violations Exist ............................ 23

E. Ethypharm Also Lacks Antitrust Standing to Seek Injunctive Relief .......................... 25

F. Dismissal of the Sherman Act Claims Should Lead to Dismissal of the Common-Law Restraint-of-Trade Claim ...................................................................................... 25

III. NONE OF THE REMAINING COMMON-LAW CLAIMS STATES A CLAIM FOR RELIEF ........................................................................................................................ 26

A. Abbott Did Not Have Knowledge of the Ethypharm-Reliant License .......................... 27

B. Reliant Did Not Breach the Ethypharm-Reliant License ............................................. 27

C. Ethypharm Has Not Alleged a Reasonable Probability of a Business Expectancy ...... 28

D. Abbott's Alleged Conduct Was Not the Proximate Cause of Ethypharm's Alleged Injuries ...................................................................................... 29

1. Unfair Competition and Tortious Interference with Prospective Economic Advantage ...................................................................................... 30

2. Tortious Interference with Contract ...................................................................... 32

CONCLUSION ................................................................................................................ 33

# TABLE OF AUTHORITIES

Page(s)

## CASES

Alberta Gas Chems. Ltd. v. E.I. Du Pont de Nemours and Co.,
  826 F.2d 1235 (3d Cir. 1987) ...............................................................14, 25

Am. Homepatient, Inc. v. Collier,
  No. Civ.A. 274-N,  2006 WL 1134170 (Del. Ch. Apr. 19, 2006) ................26, 27, 29

Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,
  459 U.S. 519 (1983) .........................................................................passim

Barton & Pittinos, Inc. v. SmithKline Beecham Corp.,
  118 F.3d 178 (3d Cir. 1997) ................................................................passim

Bell Atl. Corp. v. Twombly,
  — U.S. —, 127 S. Ct. 1955 (2007) .......................................................11, 12

Blue Shield of Va. v. McCready,
  457 U.S. 465 (1982) ...........................................................................12, 16

Broadcom Corp. v. Qualcomm Inc.,
  501 F.3d 297 (3d Cir. 2007) ................................................................16, 25

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,
  429 U.S. 477 (1977) ...........................................................................15, 19

Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.,
  454 F.2d 1292 (2d Cir. 1971) ................................................................... 17

Cargill, Inc. v. Budine,
  No. CV-F-07-349-LJO-SMS, 2007 WL 2506451 (E.D. Cal. Aug. 30, 2007) ........... 15

Cargill, Inc. v. Monfort of Colo., Inc.,
  479 U.S. 104 (1986) ...........................................................................18, 25

Chamison v. HealthTrust, Inc. - The Hosp. Co.,
  735 A.2d 912 (Del. Ch. 1999) ................................................................... 28

City of Pittsburgh v. West Penn Power Co.,
  147 F.3d 256 (3d Cir. 1998) .................................................................passim

Commerce Nat'l Ins. Servs. Inc. v. Buchler,
    No. Civ. 02-037-SLR, 2003 WL 22953225 (D. Del. Dec. 10, 2003), aff'd, 120
    F. App'x 414 (3d Cir. 2004).................................................................... 29

Cryovac Inc. v. Pechiney Plastic Packaging, Inc.,
    430 F. Supp. 2d 346 (D. Del. 2006) ........................................................ 27

DeBonaventura v. Nationwide Mut. Ins. Co.,
    428 A.2d 1151 (Del. 1981) ...................................................................... 30

In re Delmarva Sec. Litig.,
    794 F. Supp. 1293 (D. Del. 1992) ............................................................. 5

Dow Chem. Co. v. Exxon Corp.,
    30 F. Supp. 2d 673 (D. Del. 1998)........................................................... 19

Gregory Mktg. Corp. v. Wakefern Food Corp.,
    787 F.2d 92 (3d Cir. 1986) ...............................................................16, 18

Hammermill Paper Co. v. Palese,
    Civ. A. No. 7128, 1983 WL 19786 (Del. Ch. June 14, 1983) ................... 25

Harrison v. Paramount Pictures, Inc.,
    115 F. Supp. 312 (E.D. Pa. 1953), aff'd, 211 F.2d 405 (3d Cir. 1954) ...... 23

Integral Resources (PVT) Ltd. v. Istil Group, Inc.,
    No. 03-904 (GMS), 2004 WL 2758672 (D. Del. Dec. 2, 2004) , aff'd, 155 F.
    App'x 69 (3d Cir. 2005) ......................................................................... 27

Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.,
    Civ. A. No. 94C-03-189, 1995 WL 411319 (Del. Super. Ct. June 30, 1995) ............ 28

Lorah v. Tetra Tech, Inc.
    — F. Supp. 3d —, Civ. No. 06-538-SLR, 2008 WL 852659 (D. Del. Mar. 31,
    2008)...................................................................................................... 3

Lucent Info. Mgmt. v. Lucent Techs.,
    5 F. Supp. 2d 239 (D. Del. 1998), aff'd, 186 F.3d 311 (3d Cir. 1999)................28, 29

McCarthy v. Recordex Serv., Inc.,
    80 F.3d 842 (3d Cir. 1996) ...............................................................23, 29

Merck & Co. v. SmithKline Beecham Pharm. Co.,
    No. C.A. 15443-NC, 1999 WL 669354 (Del. Ch. Aug. 5, 1999), aff'd, 766
    A.2d 442 (Del. 2000)............................................................................. 30

Muti v. Schmidt, 96 F. App'x 69 (3d Cir. 2004)..................................................9

Nat'l Distillers and Chem. Corp. v. Dep't of Energy,
   Dkt. No. Civil 79-399, 1980 WL 1057 (D. Del. Oct. 23, 1980), aff'd, 662 F.2d
   754 (Em. App. 1981)......................................................................9

Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.,
   347 F.3d 935 (Fed. Cir. 2003) .........................................................7

Productive Inventions v. Trico Prods. Corp.,
   224 F.2d 678 (2d Cir. 1955) .........................................................22, 23

R.C. Dick Geothermal Corp. v. Thermogenics, Inc.,
   890 F.2d 139 (9th Cir. 1989) ........................................................16, 22

Sys. Operations, Inc. v. Scientific Games Dev. Corp.,
   555 F.2d 1131 (3d Cir. 1977) ........................................................26

Travelers Indem. Co. v. Lake,
   594 A.2d 38 (Del. 1991)................................................................27

U.S. Express Lines Ltd. v. Higgins,
   281 F.3d 383 (3d Cir. 2002) ...........................................................3

Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.,
   200 F.3d 795 (Fed. Cir. 1999) ........................................................7

In re Warfarin Sodium Antitrust Litig.,
   214 F.3d 395 (3d Cir. 2000) ..........................................................16

Wilmington Country Club v. Cowee,
   747 A.2d 1087 (Del. 2000)..........................................................30, 31

## STATUTES

15 U.S.C. § 26 .........................................................................25

15 U.S.C. § 1 ..........................................................................25

6 Del. Code § 2103 ....................................................................25

6 Del. Code § 2113 ....................................................................25

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................1, 3, 11

**MISCELLANEOUS**

2A Phillip E. Areeda et al., <u>Antitrust Law</u> (3d ed. 2007)......................................... <u>passim</u>

Abbott Laboratories ("Abbott") respectfully submits this opening brief in support of its motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims for relief pled by Ethypharm S.A. France ("Ethypharm"). Submitted with this memorandum is the Declaration of Sean M. Brennecke, Esq., dated May 13, 2008 ("Brennecke Decl.").

## Preliminary Statement

No doubt spurred by the publicity surrounding the antitrust litigation involving the fenofibrate drug TriCor® and Abbott, another putative plaintiff steps forward. This plaintiff lacks standing to bring the claims it asserts.

In 2001, Ethypharm, a small French company, licensed fenofibrate technology to Reliant Pharmaceuticals, Inc. ("Reliant"). In 2004, as Reliant prepared to launch its product in competition with Abbott's product, Reliant sued Laboratoires Fournier ("Fournier") and Abbott seeking a declaratory judgment that Reliant's product did not infringe five Fournier patents and that the patents were unenforceable because they were allegedly obtained by inequitable conduct.

████████████████████████████████████████████████████████
████████████████████████

Reliant launched its fenofibrate product (Antara) during the litigation in 2005, settled the litigation in 2006 and then sold its rights to Antara to Oscient Pharmaceuticals Corporation ("Oscient"). Ethypharm had the right to approve Reliant's sale to Oscient.

Ethypharm's complaint (the "Complaint") concedes the facts establishing Ethypharm's lack of standing to bring federal-antitrust claims and state-law restraint-of-trade claims based on Reliant's lawsuit and Reliant's settlement. Ethypharm licenses patent rights to companies that actually market and sell branded prescription fenofibrate drugs. The Complaint

alleges anticompetitive conduct in the market for marketing and selling fenofibrate drugs—but does not allege anticompetitive conduct in the separate and distinct market for licensing patent rights in which Ethypharm competes. Ethypharm alleges, among other things, that Abbott has increased Reliant's and Oscient's costs; prohibited Reliant and Oscient from developing certain products; and prohibited Reliant and Oscient from selling the rights to Antara to certain companies. Ethypharm's alleged injury is lost royalties on allegedly reduced sales by its licensees.

Under well-established antitrust caselaw, a licensor like Ethypharm has not suffered an antitrust injury flowing from the alleged conduct. Antitrust injury is essential to establishing antitrust standing. In addition, all of the other factors of an antitrust-standing analysis weigh against Ethypharm's standing. See Point "II" below.

The allegations and omissions in the Complaint also doom Ethypharm's common-law tort claims. Ethypharm does not allege that Abbott had knowledge of the Ethypharm-Reliant patent license with which Abbott allegedly interfered or that ████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████ In addition, Reliant's decision to sell its rights to Antara to Oscient (and Ethypharm's apparent consent to that sale) break any causal link between Abbott's alleged conduct and Ethypharm's alleged injuries. See Point "III" below.

The Court should therefore dismiss all of Ethypharm's claims for relief.

## STATEMENT OF FACTS[1]

**Ethypharm and Fournier License**
**Fenofibrate Products**

Fournier owns U.S. patent rights for the fenofibrate drug branded as TriCor®.

Complaint ¶ 2. Fournier licensed those patent rights to Abbott for Abbott's use in the United

States. See Complaint in Reliant v. Fournier (Brennecke Decl. Ex. A) ¶¶ 20-22. Ethypharm also

licenses patents relating to fenofibrate. Ethypharm alleges it is the "principal competitor of

Abbott's licensor (Fournier)" and competes with Fournier "in the licensing and sale of products

containing fenofibrate on the world stage." Complaint ¶¶ 4, 38. Ethypharm's "business model"

is to avoid direct involvement in the U.S. market, and it licenses companies like Reliant to

compete with Abbott. Id. ¶ 39. Ethypharm concedes it must license another company because it

---

[1]    The statement of facts is based on the allegations of Ethypharm's Complaint (D. I. 1), the contents of two documents referenced by the Complaint and the record in Reliant Pharmaceuticals, Inc. v. Abbott Laboratories and Laboratories Fournier S.A. (D. Del. C.A. No. 04-350 (KAJ)) ("Reliant v. Fournier"); State of Florida et al. v. Abbott Laboratories et al. (D. Del. C.A. No. 08-155 (SLR)) (the "States Attorneys General's TriCor Antitrust Action"); and, In re TriCor Direct Purchaser Antitrust Litigation (D. Del. C.A. No. 05-340 (KAJ)) and In re TriCor Indirect Purchaser Antitrust Litigation (D. Del. C.A. No. 05-360 (KAJ)) (together the "Private Plaintiffs' TriCor Antitrust Actions").

Documents that are "integral to or explicitly relied upon in the complaint"—as the Ethypharm-Reliant License is (see, e.g., Complaint ¶¶ 40-49, 154-64) and as the Fournier/Abbott-Reliant Settlement is (see, e.g., Complaint ¶¶ 9-16, 67-85, 118, 131, 143, 157, 169 & 179)—may be considered in deciding a Rule 12(b)(6) motion. See, e.g., Lorah v. Tetra Tech Inc., — F. Supp. 2d. —, —, Civ. No. 06-538-SLR, 2008 WL 852659, at *1 n.1 (D. Del. Mar. 31, 2008). Consideration of such documents does not convert the Rule 12(b)(6) motion into a motion for summary judgment. See id. ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (quoting U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002))).

does "not have the capacity to market, sell, or distribute pharmaceutical products in the United States." Id.

Years after Fournier had licensed Abbott for the U.S. market, Ethypharm licensed its fenofibrate technology to Reliant. Id. ¶ 5. Reliant began selling its fenofibrate product, Antara, in 2005. A copy of the license agreement (the "Ethypharm-Reliant License") is attached to the Brennecke Declaration as Exhibit B.[2] Ethypharm does not allege that Abbott had knowledge of the Ethypharm-Reliant License.

**Abbott, Reliant and Oscient**
**Compete to Sell Fenofibrate Products**

In 2006, Reliant sold its rights to Antara to Oscient. Id. ¶¶ 10-11. Reliant was, and Abbott and Oscient are, in the alleged market for marketing and selling products containing fenofibrate.[3] The competitors market their products to U.S.-based primary-care physicians and specialty physicians for prescriptions for their patients. Id. ¶ 41.

**Ethypharm Alleges Restraints on Competition**
**in the Market for Selling Fenofibrate Products**

All of the restraints alleged by Ethypharm relate to competitive activities in the U.S. market for marketing and selling products containing fenofibrate. The Complaint alleges that patent claims raised by Reliant led to a settlement agreement that injures U.S. consumers by delaying the development and sale of superior fenofibrate products and by maintaining higher prices for fenofibrate products. Id. ¶ 14. The Complaint also alleges that the patent claims and settlement agreement raised Reliant's costs of marketing and selling Antara. Id. ¶ 74.

---

[2]    Exhibit B to the Brennecke Declaration is the version of the Ethypharm-Reliant License that is publicly available from the Web site of the SEC. The SEC version of that License was apparently redacted at Reliant's request when it was filed with the SEC. None of the redactions appears to be material to this motion to dismiss.

[3]    The active ingredient of TriCor® and Antara is fenofibrate. Complaint ¶¶ 25, 52. Antara is not a generic drug. Id. ¶ 51.

-4-

Ethypharm does not allege a restraint on competition in Fournier's and Ethypharm's market for licensing products containing fenofibrate.

**Similar Allegations Are the
Subject of Pending Actions**

Ethypharm's Complaint is premised on Reliant's allegations in <u>Reliant v. Fournier</u> about five Fournier patents, including alleged inequitable conduct. Complaint ¶¶ 93, 95 & 102. Ethypharm admits that two of Abbott's competitors in the sale of fenofibrate products (Teva Pharmaceuticals USA, Inc. and Impax Laboratories, Inc.) have brought suit against Abbott alleging the same inequitable conduct in connection with the same Fournier patents. <u>Id.</u> ¶¶ 21, 23, 63 & 103. Suits on those same five patents have also been brought by (a) the Attorneys General of twenty-six states in the States Attorneys General's TriCor Antitrust Action on behalf of the residents of those states, <u>see</u> First Amended Complaint in <u>State of Florida et al. v. Abbott Laboratories et al.</u> (D. Del. C.A. No. 08-155 (SLR)) (Brennecke Decl. Ex. C), and (b) the Direct Purchasers and Indirect Purchasers in the Private Plaintiffs' TriCor Antitrust Actions on behalf of TriCor® purchasers, TriCor® patients and consumers and others, <u>see</u> Direct Purchaser Class Plaintiffs' First Amended and Consolidated Class Action Complaint in <u>In re TriCor Director Purchaser Litigation</u> (D. Del. C.A. No. 05-340 (KAJ)) (Brennecke Decl. Ex. D) and End Payor Plaintiffs' Consolidated Class Action Complaint in <u>In re TriCor Indirect Purchaser Antitrust Litigation</u> (D. Del. C.A. No. 05-360 (KAJ)) (Brennecke Decl. Ex. E).[4] Just as Ethypharm alleges

---

[4]    The Court may take judicial notice of the record in <u>Reliant v. Fournier</u> and in the States Attorneys General's and the Private Plaintiffs' TriCor Antitrust Actions. <u>See, e.g., City of Pittsburgh v. West Penn Power Co.</u>, 147 F.3d 256, 259 (3d Cir. 1998). Judicial notice is also proper with regard to public regulatory filings, such as those made with the U.S. Securities and Exchange Commission ("SEC"). <u>See In re Delmarva Sec. Litig.</u>, 794 F. Supp. 1293, 1299 (D. Del. 1992) ("SEC filings fall within th[e] category of public records that can be judicially noticed."); <u>see also id.</u> (stating basic rule that "[t]his Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered").

in its Complaint, the plaintiffs in those Actions allege that Fournier and Abbott asserted one or more of the Fournier patents to prevent competition in the U.S. market for marketing and selling fenofibrate products.

**Reliant and Oscient Have No Obligation
to Develop "New Fenofibrate Products"
or "Combination Products"**

Ethypharm's Complaint repeatedly refers to Reliant's possible development of "new fenofibrate formulations." See, e.g., Complaint ¶¶ 9, 10, 44, 49, 62, 66, 69, 118, 131, 158, 166 & 169. Reliant had an option—but not an obligation—to develop more than one fenofibrate product. Section 2.1 of the Ethypharm-Reliant License expressly provides that "Reliant, at its option, may develop in collaboration with Ethypharm and conduct clinical trials in respect of other formulations and/or dosage forms of the Product." See Ethypharm-Reliant License (Brennecke Decl. Ex. B) at p. 14 (Section 2.1).[5]

Ethypharm's Complaint also refers to "combination products" containing fenofibrate and other drugs. See, e.g., Complaint ¶ 44. Reliant did not have full rights to develop combination products, much less a contractual obligation to do so. First, Ethypharm reserved for itself (or for another Ethypharm licensee) a right to develop certain combination products. See Ethypharm-Reliant License (Brennecke Decl. Ex. B) at pp. 18-19 (Section 3.1). Reliant had only a right of first refusal for combination products developed by Ethypharm. Id. at p. 19 (Section 3.2).

---

[5]     Reliant assigned the Ethypharm-Reliant License to Oscient, and Oscient is selling Antara today. Ethypharm does not allege that Oscient contracted with Ethypharm and assumed an obligation to develop an additional fenofibrate product.

Second, Ethypharm and Reliant expressly excused Reliant from any obligation to develop combination products: "Reliant shall have the right, but not the obligation, to develop and commercialize . . . a 'Combination Product.'" Id. at p. 37 (Section 6.10). And even if Reliant did undertake the development of a combination product and needed additional intellectual-property rights from Ethypharm, Reliant had to negotiate additional license terms with Ethypharm. Id.[6]

**Reliant Filed a Declaratory-Judgment Action and Then Settled with Fournier and Abbott**

Reliant coordinated its launch of Antara with the filing of a declaratory-judgment action against Fournier and Abbott alleging non-infringement of the five patents owned by Fournier and the invalidity and/or unenforceability of the patents. Complaint ¶¶ 93, 95 & 102. Fournier and Abbott counterclaimed for Reliant's infringement of two of the patents. Id. ¶ 109. The counterclaims were mandatory in light of Reliant's allegations.[7] Ethypharm asserts that the mandatory counterclaims were "sham" assertions of unenforceable patents. Complaint ¶¶ 15, 22, 92 & 186.

As alleged in the counterclaims, Fournier owns the two patents. See Joint Answer and Counterclaims in Reliant v. Fournier (Brennecke Decl. Ex. F) ¶ 88. Abbott joined the mandatory counterclaim in its capacity as Fournier's licensee. Id. ¶ 89.

---

[6]    Ethypharm does not allege that Oscient undertook any obligations with regard to "combination products" from which Reliant was expressly excused.

[7]    See Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc., 347 F.3d 935, 938 (Fed. Cir. 2003) (reiterating the "uniform national rule" that "a claim for a declaration of noninfringement makes a counterclaim for patent infringement compulsory"); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 801-02 (Fed. Cir. 1999) (collecting cases for the proposition that "every court that has discussed the issue has recognized that an infringement counterclaim is compulsory in an action for declaration of non-infringement").

Ethypharm concedes that Reliant's lawsuit and the mandatory counterclaims did not delay Reliant's launch of Antara in 2005. The FDA approved the sale of Antara while Reliant's lawsuit was pending, and Reliant "immediately proceeded to take steps to launch Antara, in spite of the fact that the Delaware Court had not ruled on the patent infringement issue." Complaint ¶¶ 96-97.

After discovery, Reliant settled its contested allegations of non-infringement, invalidity and enforceability by negotiating a settlement agreement (the "Fournier/Abbott-Reliant Settlement").[8] Under that Settlement, ███████████████████████

███████████████████████████████████████████   ███

███████████████████████████████████████

███████████████████████████████████████████████   _See_

Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex. G) at p. 7 (Section 1(q)) and p. 8 (Section 2). Ethypharm alleges that the Settlement is a conspiracy between Abbott and Reliant. Complaint ¶¶ 128-33.

████████████████████████████████████████

███████████████

1.    ██████████████████████████████

      █████████████ Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex. G) at p. 9 (Section 3(a)).

2.    ███████████████████████████████

      ███████████████████████████████

      ███████████████████████████████

      █████████████████████████████

---

[8]    The Fournier/Abbott-Reliant Settlement is referenced in Ethypharm's Complaint ¶¶ 9-16, 67-85, 118, 131, 143, 157, 169 & 179. A copy is attached to the Brennecke Declaration as Exhibit G.



_See_ _id._ at p. 16 (Section 8(e)).

3. _See_ _id._ at pp. 16-17 (Section 8(e)).

4. _See_ _id._ at p. 16 (Section 8(e)).

Contrary to the allegations of the Complaint, Fournier and Abbott did not place any restrictions of any kind on Reliant with regard to, among other things, the following:

1.  Reliant's development of new products, including new fenofibrate products within the scope of the Ethypharm-Reliant License;

2.  Reliant's development of combination products, including combination products within the scope of the Ethypharm-Reliant License; or

3. 

_Compare_ Complaint ¶¶ 12, 67, 73, 75, 77, 83 & 85.[9]



_See_ Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex.

---

[9]    The Court is not bound by the Complaint's erroneous descriptions of the contents of the Fournier/Abbott-Reliant Settlement. _See_ _Muti v. Schmidt_, 96 F. App'x 69, 74 n.2 (3d Cir. 2004) ("Nor will we accept conclusory allegations when contradicted by documents incorporated in the pleadings."); _see also_ _Nat'l Distillers and Chem. Corp. v. Dep't of Energy_, Dkt. No. Civil 79-399, 1980 WL 1057, at *1 (D. Del. Oct. 23, 1980) ("[I]n ruling on defendants' motion to dismiss, the Court . . . was not bound to accept either conclusions of law, or unwarranted factual inferences contradicted by written documents incorporated and referred to in the complaint."), _aff'd_, 662 F.2d 754 (Em. App. 1981).

G) at p. 7 (Section 1(o)).



See id. at p. 16 (Section 8).

Ethypharm repeatedly alleges that Reliant could not transfer its rights regarding Antara to a company with greater resources than Reliant and that could allegedly compete more effectively with Abbott than Ethypharm's chosen licensee (Reliant). See, e.g., Complaint ¶¶ 12, 67, 73, 77, 83 & 85.



1. see Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex. G) at p. 16 (Section 8(e)); and

2. See id.

After settling with Fournier and Abbott, Reliant decided to exit the crowded dyslipidemia market. In 2006, Reliant sold rights to the Antara product to Oscient. Complaint ¶¶ 10-11.

**Reliant Needed Ethypharm's**
**Consent to Sell to Oscient**

Under the Ethypharm-Reliant License, Reliant could not sell Ethypharm's intellectual property without Ethypharm's express written consent. See Ethypharm-Reliant License (Brennecke Decl. Ex. B) at p. 61 (Section 14.1(b)). Ethypharm does not allege that Reliant failed to seek Ethypharm's consent to sell to Oscient or that Ethypharm withheld its consent to that sale. Further, Ethypharm does not allege that it was unaware of Oscient's size or resources at the time Reliant sold to Oscient.

## ARGUMENT

I.  **THE COURT SHOULD SCRUTINIZE**
    **THE CONCLUSORY ALLEGATIONS**
    **OF ETHYPHARM'S COMPLAINT**
    **ON THIS MOTION TO DISMISS**

Ethypharm cannot avoid dismissal on this Rule 12(b)(6) motion by reciting the Complaint's conclusory allegations of "antitrust injury" and of other essential elements of its claims for relief. The Supreme Court ended that practice in antitrust cases in its last term. Bell Atl. Corp. v. Twombly, — U.S. —, —, 127 S. Ct. 1955, 1964-65 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (brackets, citations and quotation marks omitted).

Similarly, courts may not fill in the blanks for antitrust plaintiffs. A court on a motion to dismiss may not "assume that the [plaintiff] can prove facts that it has not alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983) (hereinafter "AGC").

-11-

Both the unique scope of antitrust lawsuits and the unique remedies available to successful antitrust plaintiffs require this scrutiny of a complaint at the motion-to-dismiss stage of the litigation. As the Twombly Court explained:

> [I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive. As we indicated over 20 years ago in [AGC, 459 U.S. 519, 528 n.17 (1983)], "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."

Twombly, 127 S. Ct. at 1966-67 (citation omitted); see also Blue Shield of Va. v. McCready, 457 U.S. 465, 477 (1982) (cautioning that the "potency of the remedy" under Section 4 of the Clayton Act for antitrust violations "implies the need for some care in its application").

Scrutiny of conclusory allegations is especially appropriate on the issue of antitrust standing. In City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998), the Third Circuit rejected an antitrust plaintiff's argument that the district court "should have taken the allegations of [antitrust standing in] its complaint at face value." Instead, the Third Circuit directed that

> our courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish manner.

Id.

The facts alleged by Ethypharm do not support Ethypharm's conclusory allegations of essential elements of its claims for relief.

## II.    ETHYPHARM DOES NOT HAVE ANTITRUST STANDING FOR ANY OF ITS CLAIMS

The Complaint should be dismissed because Ethypharm does not have antitrust standing to challenge the alleged conduct. In order to have antitrust standing, Ethypharm must have suffered at the very least an "antitrust injury." See, e.g., West Penn, 147 F.3d at 265; Barton & Pittinos, Inc. v. SmithKline Beecham Corp., 118 F.3d 178, 181-82 (3d Cir. 1997). It has not. See Point "C" below.

Even if the Court finds that Ethypharm has alleged sufficient facts to establish an antitrust injury, Ethypharm still lacks antitrust standing. Four additional antitrust-standing factors weigh against the Court's allowing Ethypharm to maintain an action involving alleged anticompetitive effects on fenofibrate consumers and purchasers and on Abbott's direct competitors, and allowing Ethypharm to try to recover damages derived from its licensees' speculative lost sales of existing products and unidentified future products. See Point "D" below.

### A.    Antitrust Standing Is a Narrowing "Passageway" for Antitrust Plaintiffs

The Third Circuit has synthesized the Supreme Court's antitrust-standing principles into an analysis of the following five factors:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

Barton & Pittinos, 118 F.3d at 181. The Third Circuit refers to these factors as the "AGC factors" in reference to the Supreme Court's decision in Associated General Contractors of

<u>California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519 (1983). The second factor ("antitrust injury") is a mandatory element for antitrust standing, but is not sufficient by itself. <u>West Penn</u>, 147 F.3d at 265.

The <u>AGC</u> analysis is an initial hurdle for every antitrust plaintiff. In the Third Circuit, "[t]he [<u>AGC</u>] test has been regularly and consistently applied as the passageway through which antitrust plaintiffs must advance" and the test "requir[es] a narrowing view" of standing to bring an antirust action. <u>Id.</u> at 264.

**B.    Antitrust Standing Requires an Antitrust Plaintiff to Pass Two Tests**

The Third Circuit has directed district courts to start their analysis with the second factor, also known as the "antitrust injury" requirement, because that analysis may be the only one a court needs to make:

> [A]ntitrust injury is a necessary but insufficient condition of antitrust standing, . . . [I]f antitrust injury is not found, further inquiry is unnecessary.

<u>West Penn</u>, 147 F.3d at 265 (citation, brackets and quotation marks omitted). As a result of this prioritizing of the <u>AGC</u> factors, an antitrust plaintiff must clear two separate hurdles before a court will allow it to maintain an action.

First, the plaintiff must establish that it suffered "antitrust injury." If it cannot, the court must hold that the plaintiff lacks standing and must dismiss the antitrust claims on that basis alone. <u>See, e.g.</u>, <u>Barton & Pittinos</u>, 118 F.3d at 181. Second, even if the plaintiff establishes antitrust injury, it must also satisfy the court that, on balance, the remaining <u>AGC</u> factors also support a conclusion that the plaintiff is a "proper party" to bring an antitrust action. <u>See, e.g.</u>, <u>id.</u>; <u>Alberta Gas Chems. Ltd. v. E.I. Du Pont de Nemours and Co.</u>, 826 F.2d 1235, 1240 (3d Cir. 1987) ("Once antitrust injury has been demonstrated . . . , standing analysis is employed

-14-

to search for the most effective plaintiff from among those who have suffered loss.") (citations omitted).

In an opinion by now-Justice Alito, the Third Circuit described this two-step test as analogous to the two-step analysis for Article III standing under the U.S. Constitution:

> [1] The antitrust injury requirement in the context of antitrust standing can thus be seen as analogous to the constitutional minimum required for standing to sue in federal court in general, and [2] the other <u>AGC</u> factors may be thought of as prudential limits on standing that are particularly necessary or appropriate in the antitrust context.

<u>Barton & Pittinos</u>, 118 F.3d at 182 n.4.

For the reasons set forth in Points "C" and "D" below, Ethypharm falls short at both steps of the test for antitrust standing.

### C.    Ethypharm Cannot Establish Antitrust Injury

Ethypharm's bald assertions of "antitrust injury" are precisely the kind of conclusory, legal-turned-factual allegations that this Court is not required to accept on Abbott's motion to dismiss. Ethypharm must establish antitrust injury by factual allegations. <u>See</u> <u>Cargill, Inc. v. Budine</u>, No. CV-F-07-349-LJO-SMS, 2007 WL 2506451, at *5 (E.D. Cal. Aug. 30, 2007) ("[The plaintiff] argues that it is only required to <u>plead</u> antitrust injury, without further establishing that it is [a] participant in the alleged relevant market. Such [an] argument ignores the longstanding antitrust standing requirement for antitrust plaintiffs.") (emphasis in original).

In <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 489 (1977), the Supreme Court defined "antitrust injury" as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." This definition reflects "the central interest [of the Sherman Act] in protecting the economic freedom of participants <u>in the relevant market</u>." <u>AGC</u>, 459 U.S. at 538 (emphasis added). The Third Circuit has conferred

-15-

standing on competitors and consumers and has been skeptical of plaintiffs who are neither. <u>See, e.g.</u>, <u>Barton & Pittinos</u>, 118 F.3d at 184 ("Because [the plaintiff] was thus not a competitor or a consumer in the market in which trade was allegedly restrained by the antitrust violations pled by [the plaintiff], we hold that [the plaintiff's] alleged injury is not 'antitrust injury', meaning injury 'of the type that the antitrust statute was intended to forestall.'" (quoting <u>AGC</u>, 459 U.S. at 540)); <u>see also</u> <u>Gregory Mktg. Corp. v. Wakefern Food Corp.</u>, 787 F.2d 92, 95 (3d Cir. 1986) (finding no antitrust injury because the plaintiff "is neither a consumer nor a competitor in the [relevant] market, and thus is not 'within that area of the economy . . . endangered by the breakdown of competitive conditions.'" (quoting <u>McCready,</u> 457 U.S. at 481)).[10]

   Ethypharm's case is not novel. Ethypharm falls within one of the categories of plaintiffs consistently denied standing. Alleged lost royalties by licensors, franchisors or landlords are not the concern of the antitrust laws that condemn restraints on competition in the downstream market in which the licensees, franchisees and tenants are the active participants. <u>See, e.g.</u>, <u>R.C. Dick Geothermal Corp. v. Thermogenics, Inc.</u>, 890 F.2d 139, 148 (9th Cir. 1989) (en banc) ("Mere injury as a landlord or lessor entitled to royalties would not by itself be the kind of injury to competition that the antitrust laws are designed to prevent."). The market in which licensors might have an antitrust injury and might be able to challenge an alleged restraint is the market for licensing: "While such suppliers [of intellectual or real property] have standing to challenge illegal restraints in <u>their</u> licensing or renting market, they generally lack standing to

---

[10]    The "inextricably intertwined" exception to the competitor-or-consumer approach has no relevance to Ethypharm's Complaint. <u>Compare</u> <u>In re Warfarin Sodium Antitrust Litig.</u>, 214 F.3d 395, 400-01 (3d Cir. 2000). The Third Circuit limits the exception to plaintiffs and defendants who are in the "same relevant market" (even though they are not direct competitors in that market). <u>Broadcom Corp. v. Qualcomm Inc.</u>, 501 F.3d 297, 320-321 (3d Cir. 2007). Ethypharm and Abbott are not "in" the same relevant market. On the facts alleged, Ethypharm is in the licensing market, and Abbott and Ethypharm's licensees are in the market for marketing and selling fenofibrate products.

challenge restraints in other markets, including that served by their licensees or tenants." 2A

Phillip E. Areeda et al., <u>Antitrust Law</u> ¶ 351(a) (3d ed. 2007) (hereinafter "Areeda") (emphasis in

original).

      Ethypharm is "in" the market for licensing fenofibrate products.  The factual

allegations of the Complaint, if taken as true, demonstrate that the alleged sham patent litigation

and the alleged conspiracy between Abbott and Reliant restrain the separate and distinct market

for marketing and selling fenofibrate products.  Complaint ¶¶ 14, 73-74.  That is not the market

in which Ethypharm competes.  <u>See</u> <u>id.</u> ¶ 5 ("Ethypharm does not directly sell and distribute its

fenofibrate product in the United States.").  That admission is fatal to all three of Ethypharm's

antitrust claims, as well as its common-law restraint-of-trade claim.

      It does not matter that Ethypharm casts Reliant as Abbott's co-conspirator.

Whether the licensee is an "innocent victim" or an alleged "co-conspirator," the licensor still

lacks antitrust standing.  In the context of a suit by a lessor, the Second Circuit held in <u>Calderone</u>

<u>Enterprises Corp. v. United Artists Theatre Circuit, Inc.,</u> 454 F.2d 1292, 1296 (2d Cir. 1971), that

the alleged involvement of the lessee in a conspiracy did not mean that the lessor had antitrust

standing and drew an analogy to patentees:

> Nor does the fact that plaintiff's lessee was allegedly a party to the
> conspiracy materially distinguish this case from those where
> standing has been denied to one having a similar relationship to an
> innocent competitor victimized by a conspiracy. . . . A plaintiff not
> a target of any antitrust violation does not become a target by
> virtue of the culpability of its lessee, patentee, franchisee, supplier,
> customer, or debtor.

<u>See also</u> Areeda ¶ 335(6) ("A percentage lease landlord should generally be denied standing

where its tenant is an alleged participant in the antitrust violation affecting the revenues of the

plaintiff's property."); <u>id.</u> ¶ 351a ("[M]ost landlords of this class have been denied standing, not

only when the exhibitor is a downstream victim but also when the exhibitor-lessee participated in the challenged antitrust violation.").[11]

Because Ethypharm's lost royalties on Reliant's allegedly restrained sales are not an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful," Ethypharm lacks antitrust standing. See West Penn, 147 F.3d at 265 ("If antitrust injury is not found, further inquiry is unnecessary."). The Court should therefore dismiss Ethypharm's three federal-antitrust claims—as well as its common-law claim for restraint of trade, see Point "F" below—on this ground alone.

>    **D.    Even If Ethypharm Has an Antitrust Injury, It Still Does Not Have Antitrust Standing**

Even if the Court were to conclude that Ethypharm pleads facts sufficient to establish an antitrust injury, Ethypharm would still lack antitrust standing under the second step of the Third Circuit's two-step test. Both steps must be satisfied by Ethypharm. See Barton & Pittinos, 118 F.3d at 182 ("Even a plaintiff who can show antitrust injury may lack antitrust standing, because the remaining AGC factors may weigh against allowing him or her to sue under the antitrust laws."); see also Cargill, Inc. v. Monfort of Colo., Inc., 479 U.S. 104, 110 n.5 (1986) (hereinafter "Cargill") ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing under § 4 [of the Clayton Act], because a party may have suffered antitrust injury but may not be a proper party under § 4 for other reasons.").

---

[11]    Principal among the reasons for denying standing to the licensor or landlord is that a more immediate mechanism already exists to safeguard the plaintiff's interests—namely, the contract (i.e., the license agreement or lease) between the parties. See id. ¶ 335(6) ("The landlord has an argument for standing, although its interest is best protected by the terms of the lease."); see also Gregory, 787 F.2d at 98 ("[W]e [are] []sympathetic to the plight of the [plaintiff]," but "New Jersey law provides a remedy for breach of contract, and we believe such an action, rather than a lawsuit under the Clayton Act, is the [plaintiff's] appropriate recourse.").

1.    **Ethypharm's Injury, If Any, Was Not Caused**
      **by the Alleged Antitrust Violations**

The first additional <u>AGC</u> factor concerns causation and intent to cause the alleged

harm. Notable for its absence in the Complaint is an allegation that Abbott knew Ethypharm had

licensed Reliant. No conclusory allegation of "intent" can overcome Ethypharm's failure to

allege the facts necessary to support such a conclusion.

In addition, there was no "direct effect" between the antitrust violations allegedly

committed by Abbott and Ethypharm's alleged injury. A "mere causal link" between the alleged

antitrust violation and the alleged antitrust injury will not suffice for antitrust-standing purposes

under <u>AGC</u>. There must be a "direct effect" between the two. <u>West Penn</u>, 147 F.3d at 268

(citing <u>Brunswick</u>, 429 U.S. at 489). The antitrust-standing test requires proof of both but-for

and proximate causation. <u>See</u> <u>Dow Chem. Co. v. Exxon Corp.</u>, 30 F. Supp. 2d 673, 695 (D. Del.

1998) (Robinson, J.) (noting, in a RICO action to which "antitrust standing principles apply

equally," that the causation and directness-of-injury factors of <u>AGC</u> "require [the plaintiff] to

demonstrate that the alleged violation was not only the 'but for' cause of plaintiff's injury but also

the proximate cause").

Ethypharm's allegations that the mandatory counterclaims against Reliant and the

subsequent settlement agreement with Reliant directly caused Ethypharm an antitrust injury

hinge on at least three assumptions: (1) but for patent-infringement counterclaims by Abbott,

Reliant would not have entered into the Fournier/Abbott-Reliant Settlement; (2) but for the terms

of the Settlement, Reliant would have developed new fenofibrate products and combination

products and/or would have sold the rights to Antara to a company larger than Oscient; and (3)

one or more of those assumptions, if true, would have produced greater sales of Antara.

None of these assumptions is supported by the facts alleged. With regard to the first, Ethypharm does not allege that Fournier would not have brought the same counterclaims without Abbott's participation. It cannot be disputed that Fournier owned the patents. See Joint Answer and Counterclaims in Reliant v. Fournier (Brennecke Decl. Ex. F) ¶ 88. With regard to the second, Ethypharm has not alleged that Reliant had plans to develop new products or combination products; that Reliant sought to sell the rights to Antara to a large company; or that a large company would have purchased those rights.[12] With regard to the third, no facts are alleged in support of greater sales of Antara by Reliant or greater sales of Antara by an acquirer other than Oscient.[13]

Ethypharm cannot ask the Court to assume that Reliant would have developed new products or combination products. Reliant had no contractual obligation to develop such products, see pp. 6-7 above, and it would be speculative to assume that Reliant would develop such products and then have greater sales of Antara.

Ethypharm also cannot ask the Court simply to assume that Reliant could have sold the rights to Antara to a company larger than Oscient; to assume further that, if there were such a company, ████████████████████████████████████████████████████████████

---

[12]    Ethypharm alleges that "[m]ore than one pharmaceutical company fitting [the large company] profile initially expressed interest in exploring the purchase of the Antara Rights," but Ethypharm alleges no more than an expression of interest. Complaint ¶ 82.

[13]    Despite Ethypharm's implication that Oscient would be unable to maintain or increase Antara's market share, Antara is thriving under Oscient's stewardship. See News Release Issued by Oscient Pharmaceuticals Corporation on April 16, 2008, filed as Exhibit 99.1 to Form 8-K with the U.S. Securities and Exchange Commission on April 16, 2008 (Brennecke Decl. Ex. H) (reporting that two-thirds of Oscient's expected $18.5-million first-quarter revenue in 2008 derives from sales of Antara, and that "Antara prescriptions increased more than 30% in the first quarter of 2008 compared to the first quarter of 2007 and weekly prescriptions continued to grow to record highs").

████████ and, finally, to assume that there would have been greater sales of Antara.

Ethypharm alleges that the Fournier/Abbott-Reliant Settlement "[p]rohibited" Reliant from selling the rights to Antara to one of the pharmaceutical companies specifically identified in the Settlement. Complaint ¶ 83 ("Prohibited by its illegal agreement(s) with Abbott, Reliant was unable to consider the sale of the Antara Rights to companies that could more effectively have marketed Antara through, among other things, the employment of a large sales force and the pursuit of combination products or other fenofibrate formulations.")[14] ████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████ See Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex. G) at 16 (Section 8(ii)(e)(A)).

████████████████████████████████████████████

████████████████████████████████████████ Reliant chose Oscient, and Ethypharm does not allege that Abbott played any role in that decision. Moreover, Ethypharm does not allege that it failed to give its consent to Reliant's sale to Oscient. See West Penn, 147 F.3d at 268 (concluding that the "interposition of the . . . actions of the parties—both defendants and plaintiff—interferes with the chain of causation" necessary for antitrust standing); see also Areeda ¶ 351b2 ("It is always difficult to disentangle the impact of an antitrust from other market forces affecting a [more direct] victim's fortunes, including the victim's own choices.") (emphasis added).

---

[14]     See also Complaint ¶ 85 ("But for Abbott's restrictive, anticompetitive agreement(s) with Reliant, Reliant would have been able to sell the Antara Rights to a pharmaceutical company with substantially greater ability and resources than Oscient to promote Antara and market new fenofibrate products including combination products.").

Both the "intent" and "causal connection" elements of the second AGC factor weigh against Ethypharm's antitrust standing. Abbott's counterclaims are not the "but for" cause of Ethypharm's alleged injuries, because Fournier could have asserted the same counterclaims without Abbott. The Fournier/Abbott-Reliant Settlement is not the "but for" cause of Ethypharm's alleged injuries, because those injuries are based on speculation about new products, combination products and assignment of Reliant's rights to a large company. In addition, the "direct effect" of Abbott's alleged conduct on Ethypharm's alleged injuries is interrupted by Ethypharm's allegation that Reliant decided to sell and by Ethypharm's failure to allege that Ethypharm opposed the sale to Oscient and that Reliant proceeded in breach of the Ethypharm-Reliant License.

### 2. Ethypharm's Injury, If Any, Is Indirect and Incidental

The third AGC factor requires the Court to evaluate "the directness of the injury" in order to avoid speculative claims. Barton & Pittinos, 118 F.3d at 181. For more than fifty years, courts have answered in the negative the question: "Is a patentee [i.e., Ethypharm] who has granted to another [i.e., Reliant] an exclusive license for the term of the patent, upon a royalty basis, a 'person . . . injured in his business or property' (within the meaning of Section 4 of the Clayton Act) so as to enable him to recover treble damages for loss of royalties on sales that might have been made by its licensee save for the antitrust violations of defendant [i.e., Abbott]?" Productive Inventions v. Trico Prods. Corp., 224 F.2d 678, 679 (2d Cir. 1955); see also R.C. Dick Geothermal, 890 F.2d at 146 ("What we can say is that after [AGC] a landlord or receiver of royalties does not establish antitrust standing by showing its receipts are down and it is in the area where an antitrust violation produced this result."). The rationale for the negative answer is that the licensor's loss of royalties is an "incidental" harm, and "[t]hose harmed only

-22-

incidentally by antitrust violations have no standing to sue for treble damages." <u>Productive Inventions</u>, 224 F.2d at 679. The facts of this case are materially indistinguishable from <u>Productive Inventions</u> and other licensor-standing cases.[15]

The Court in <u>Productive Inventions</u> relied principally on a decision that emphasized the distinction between a "right" to and a "hope" for increased royalties. <u>Id.</u> at 679-80 (summarizing district court's "reasoned opinion," which was adopted in full by the Third Circuit, in <u>Harrison v. Paramount Pictures, Inc.</u>, 115 F. Supp. 312 (E.D. Pa. 1953), <u>aff'd</u>, 211 F.2d 405 (3d Cir. 1954)). Because licensors, franchisors and landlords have only a hope, not a right, to increased royalties, any financial loss they suffer is necessarily "only incidental to the acts complained of" and therefore not cognizable under the antitrust laws. <u>Productive Inventions</u>, 224 F.2d at 680 (adopting the holding in <u>Harrison</u>).

The same analysis applies here. Reliant had no obligation with regard to new products and combination products and had no obligation to sell the rights to Antara to a large company. Ethypharm could only hope that Reliant, whether by its own efforts or by those of another pharmaceutical company to which Reliant would sell Reliant's rights, would increase sales. Ethypharm had no right to increased royalties.

### 3. More Direct "Victims" of the Alleged Antitrust Violations Exist

The fourth and fifth <u>AGC</u> factors require a court to consider "the existence of more direct victims of the alleged antitrust violations" and, relatedly, "the potential for duplicative recovery or complex apportionment of damages." <u>Barton & Pittinos</u>, 118 F.3d at

---

[15]     As Areeda explains, the earlier tests that pre-dated <u>AGC</u> "are based on the same factors emphasized by [<u>AGC</u>]." Areeda ¶ 335d; <u>see also</u> <u>McCarthy v. Recordex Serv., Inc.</u>, 80 F.3d 842, 850 (3d Cir. 1996) ("The AGC five-factor framework was an attempt by the Court to synthesize and clarify the confusing collection of the then-extant antitrust-standing rules.").

-23-

181.  As the <u>AGC</u> Court made clear, "[t]he existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general."  459 U.S. at 542.  That analysis explains why plaintiffs like Ethypharm are consistently denied antitrust standing.  <u>See</u> Areeda ¶ 351b2 ("Standing for the licensor or landlord would, of course, multiply the number of suits.  The greater number of suits can lessen the opportunities for settlement and prevent the primarily affected person from controlling the course of the litigation as well as burdening the defendant.").

Assuming there has been unlawful conduct by Abbott, there are more direct "victims" of the allegedly anticompetitive activity.  Purchasers of TriCor® and others have sued Abbott and Fournier challenging their patent litigations as antitrust violations.  <u>See</u> complaint in the States Attorneys General's TriCor Antitrust Action (Brennecke Decl. Ex. C), and complaints in the Private Plaintiffs' TriCor Antitrust Actions (Brennecke Decl. Exs. D and E).  Abbott's customers, direct purchasers and competitors are not hesitant to challenge Fournier's and Abbott's conduct in the market for marketing and selling fenofibrate products.

                    *        *        *

The Court should therefore find that Ethypharm does not have antitrust standing (even if it finds that Ethypharm has an antitrust injury).  All of the remaining factors of the narrowing passageway of <u>AGC</u> weigh against Ethypharm.

**E.    Ethypharm Also Lacks Antitrust Standing to
          Seek Injunctive Relief**

Ethypharm also lacks antitrust standing to seek injunctive relief under § 16 of the

Clayton Act, 15 U.S.C. § 26.[16] Ethypharm's request for injunctive relief does not lessen its

burden of establishing "directly harmful effects" to it that are "closely related to the violation."

Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 321-22 (3d Cir. 2007) (quoting Alberta Gas

Chems., 826 F.2d at 1240). The alleged injury must still be an "antitrust injury." Cargill, 479

U.S. at 110 n.5 (confirming that "under both § 16 and § 4 [of the Clayton Act] the plaintiff must

still allege an injury of the type the antitrust laws were designed to prevent"). For all of the

reasons set forth in Points "C" and "D" above, Ethypharm cannot demonstrate a direct injury that

is closely related to the alleged restraints in the market for marketing and selling fenofibrate

products.

**F.    Dismissal of the Sherman Act Claims Should
          Lead to Dismissal of the Common-Law
          Restraint-of-Trade Claim**

Ethypharm's lack of antitrust standing requires dismissal of not only its three

federal-antitrust claims ("Counts" 1, 2 and 7), but also its common-law claim for restraint of

trade ("Count" 6). Under Delaware law, restraint of trade is a statutorily codified cause of action

that, by its own terms, must be "construed in harmony with ruling judicial interpretations of

comparable federal antitrust statutes." See 6 Del. Code § 2113; see also Hammermill Paper Co.

v. Palese, Civ. A. No. 7128, 1983 WL 19786, at *4 (Del. Ch. June 14, 1983) (noting that the

language of Delaware's restraint-of-trade statute, 6 Del. Code § 2103, and the language of the

Sherman Act, 15 U.S.C. § 1, are "virtually identical," and that "it was the Delaware Legislature's

---

[16]    Ethypharm mistakenly refers to 15 U.S.C. § 26 as "Section 16 of the Sherman Act."
Complaint ¶¶ 126, 139 & 197.

intention to adopt not only the language but the judicial interpretation and application of the

Sherman Act"). Applying the "ruling judicial interpretations" on Section 4 antitrust standing

means that Ethypharm also lacks standing to pursue its common-law claim for restraint of trade

under Delaware law.

## III. NONE OF THE REMAINING COMMON-LAW CLAIMS STATES A CLAIM FOR RELIEF

Ethypharm's three remaining common-law claims also fail to state claims for

relief for numerous reasons.[17] The common-law claims for relief present variations on a single

theme. Under Delaware law, unfair competition requires proof "that the plaintiff has a

reasonable expectancy of entering a valid business relationship, with which the defendant

wrongfully interferes and, thereby, defeats the plaintiff's legitimate expectancy and causes him

harm." Am. Homepatient, Inc. v. Collier, No. Civ.A. 274-N, 2006 WL 1134170, at *4 (Del. Ch.

Apr. 19, 2006). Tortious interference with prospective economic advantage requires proof of "(i)

the existence of a reasonable probability of a business expectancy; (ii) the interferer's knowledge

of the expectancy; (iii) intentional interference that induces or causes termination of the business

expectancy; and (iv) damages." Id. at *5. Tortious interference with contract requires proof of

"(i) the existence of a valid contract; (ii) the interferer's knowledge of the contract; (iii)

intentional interference that induces or causes a breach of the contract; and (iv) damages." Id. at

*4.[18]

---

[17]    Ethypharm alleges unfair competition, tortious interference with contract and tortious interference with prospective economic advantage ("Counts" 3, 4 and 5 of the Complaint, respectively).

[18]    The Third Circuit has made clear that "a federal district court adjudicating a state law issue must apply the law of the forum state, including the state's choice-of-law rules." Sys. Operations, Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131, 1136 (3d Cir. 1977). This principle holds true for both diversity-jurisdiction and federal-question/pendent-jurisdiction cases. Id. "Delaware courts apply the 'most significant relationship test' of the Second

In light of the similarity in the proof that is required, Delaware courts often evaluate these claims together. See, e.g., id. Nothing in Ethypharm's Complaint requires a different approach in this case. Indeed, Ethypharm's allegations in support of two of these claims—the unfair-competition and tortious-interference-with-prospective-economic-advantage claims—are virtually identical. Compare Complaint ¶¶ 140-52 with ¶¶ 165-75.

### A.   Abbott Did Not Have Knowledge of the Ethypharm-Reliant License

Ethypharm does not allege that Abbott had knowledge of the Ethypharm-Reliant License at any time. This omission is fatal to Ethypharm's tortious-interference-with-contract claim, because the second element of that claim under governing Delaware law is "the interferer's knowledge of the contract." See Am. Homepatient, 2006 WL 1134170, at *4.

### B.   Reliant Did Not Breach the Ethypharm-Reliant License

The terms of the Ethypharm-Reliant License and the Fournier/Abbott-Reliant Settlement contradict the allegation that Reliant breached its implied covenant of good faith and fair dealing to Ethypharm by entering into the Fournier/Abbott-Reliant Settlement.

Reliant had no duties with regard to selling its business or with regard to new products and combination products. The Ethypharm-Reliant License explicitly states that

---

Restatement of Conflicts." Integral Res. (PVT) Ltd. v. Istil Group, Inc., No. 03-904 (GMS), 2004 WL 2758672, at *2 (D. Del. Dec. 2, 2004) (citing Travelers Indem. Co. v. Lake, 594 A.2d 38, 47 (Del. 1991)), aff'd, 155 F. App'x 69 (3d Cir. 2005). Under this test, Delaware law governs Ethypharm's state-law claims because, among other things, the allegedly unlawful compulsory counterclaims against Reliant and the allegedly unlawful settlement of Reliant's litigation concern the declaratory-judgment action that Reliant commenced against Fournier and Abbott in Delaware.

In any event, the Court need not decide the choice-of-law question because "the law of tortious interference with contract and tortious interference with prospective contractual relations is essentially the same" in most states. Cryovac Inc. v. Pechiney Plastic Packaging, Inc., 430 F. Supp. 2d 346, 357 n.11 (D. Del. 2006).

"RELIANT shall have the right, but not the obligation," to market and develop Antara in combination with other drugs. Ethypharm-Reliant License (Brennecke Decl. Ex. B) at p. 37 (Section 6.10) ("Development of Combination Products"). In light of this explicit non-obligation, Reliant cannot be said to have breached the implied covenant of good faith and fair dealing with regard to combination products. See, e.g., Chamison v. HealthTrust, Inc. – The Hosp. Co., 735 A.2d 912, 921 (Del. Ch. 1999) ("The implied covenant cannot contravene the parties' express agreement and cannot be used to forge a new agreement beyond the scope of the written contract.").

      The same is true with regard to new fenofibrate products. Reliant had an "option" to develop new products—not an obligation. See Ethypharm-Reliant License (Brennecke Decl. Ex. B) at p. 14 (Section 2.1). ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ See Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex. G) at p. 7 (Section 1(o)).

      There is also no requirement in the Ethypharm-Reliant License as to the type of company to which Reliant could sell its rights to Antara. Ethypharm cannot allege that Reliant was required to sell to a company "larger" than Oscient.

### C.    Ethypharm Has Not Alleged a Reasonable Probability of a Business Expectancy

      Both the unfair-competition claim and the tortious-interference-with-prospective-economic-advantage claim require a "reasonable" expectation or probability of a business relationship. A "plaintiff must be able to cite 'actual or potential contracts.'" Lucent Info. Mgmt. v. Lucent Techs., 5 F. Supp. 2d 239, 243 (D. Del. 1998) (quoting Kirkwood Kin Corp. v. Dunkin' Donuts, Inc., Civ. A. No. 94C-03-189, 1995 WL 411319, at *9 (Del. Super. Ct. June 30, 1995)),

aff'd, 186 F.3d 311 (3d Cir. 1999).  Ethypharm cannot establish a reasonable expectation or

probability on the alleged facts.

There is no allegation of contract discussions between Reliant and any of the

companies that Ethypharm prefers over Oscient.  There is only a vague allegation of expressions

of interest.  See Complaint ¶ 82.  A broad claim about a plaintiff's potential expectations is

insufficient.  Lucent, 5 F. Supp. 2d at 243.

Ethypharm also cannot supply the "knowledge of the expectancy" element of a

tortious-interference-with-prospective-economic-advantage claim.  Am. Homepatient, 2006 WL

1134170, at *5.  In the absence of an allegation that Abbott had knowledge of the Ethypharm-

Reliant License, there is no factual allegation to support the conclusory assertion that Abbott had

knowledge of Ethypharm's expectation that Reliant would allegedly increase Antara's market

share or knowledge of Ethypharm's expectation that Reliant would sell to a large company that

would allegedly increase Antara's market share.

### D.   Abbott's Alleged Conduct Was Not the Proximate Cause of Ethypharm's Alleged Injuries

All three of Ethypharm's state-law claims also fail for one of the same reasons

that Ethypharm lacks antitrust standing—the absence of causation.[19]  Central to each of

Ethypharm's claims is allegedly wrongful conduct that is the proximate—or "but for"—cause of

the injuries allegedly suffered.  See, e.g., Commerce Nat'l Ins. Servs. Inc. v. Buchler, No. Civ.

02-037-SLR, 2003 WL 22953225, at *5 (D. Del. Dec. 10, 2003) (granting defendant's motion for

summary judgment on a tortious-interference-with-prospective-economic-advantage claim under

---

[19]     The Third Circuit has noted that the causation inquiry under AGC is "akin to the
determination of 'proximate cause' in the negligence context."  McCarthy, 80 F.3d at 851 n.14.
Abbott's causation arguments set forth in Point "II.D" above are equally applicable to
Ethypharm's common-law claims.

Delaware law because "plaintiff has failed to identify any prospective business relations that, but for defendants' conduct, would have become clients"), aff'd, 120 F. App'x 414 (3d Cir. 2004); Merck & Co. v. SmithKline Beecham Pharm. Co., No. C.A. 15443-NC, 1999 WL 669354, at *45-46 (Del. Ch. Aug. 5, 1999) ("To establish tortious interference with either an existing contract or prospective contractual relation, a party must demonstrate . . . an intentional act that is a significant factor in causing a breach of that contract or termination of that prospective contractual relationship . . . i.e., the proximate cause of the claimed damage."), aff'd, 766 A.2d 442 (Del. 2000); DeBonaventura v. Nationwide Mut. Ins. Co., 428 A.2d 1151, 1153 (Del. 1981) (listing "proximate cause" as the third of four elements of cause of action for tortious interference with prospective economic advantage).

Delaware's Supreme Court has adopted "a traditional 'but for' definition of proximate cause"—namely, that "[p]roximate cause exists if a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." Wilmington Country Club v. Cowee, 747 A.2d 1087, 1097 (Del. 2000). In light of this definition, Ethypharm does not allege facts sufficient to establish that Abbott's actions proximately defeated Ethypharm's expectations or proximately caused Reliant to breach the Ethypharm-Reliant License.

> **1.    Unfair Competition and Tortious Interference with Prospective Economic Advantage**

With regard to Ethypharm's virtually identical claims for unfair competition and tortious interference with prospective economic advantage, Abbott did not cause Ethypharm's business expectations to be defeated. Those two alleged expectations are (1) "that Reliant, by means of its corporate expertise, experience and resources, would be able to increase Antara's market share and extend the Antara product line, including by means of developing new

fenofibrate formulations and combination products containing fenofibrate," Complaint ¶ 141; see also id. ¶ 166, and (2) "that if Reliant elected to assign its rights to Antara to another pharmaceutical company, it would do so to a company that had the corporate expertise and resources to increase Antara's market share and extend the Antara product line, including by means of developing new fenofibrate formulations and combination products containing fenofibrate." Complaint ¶ 142; see also id. ¶ 167.

Reliant defeated Ethypharm's first alleged expectation by deciding to sell the rights to Antara. There is no allegation that Abbott played any role in Reliant's decision. ███ ████████████████████████████████████████████████████████ Reliant's independent decision not to retain the rights—and therefore not to use "its corporate expertise, experience and resources" to increase Antara's market share—is an "efficient intervening cause" that breaks any "natural and continuous sequence" that might have linked Abbott to the harm allegedly suffered by Ethypharm. See Cowee, 747 A.2d at 1097 (discussing the proximate-cause analysis in the analogous context of negligence).

Reliant also defeated Ethypharm's second alleged expectation by choosing to sell to Oscient. Once Reliant made its independent decision to sell, Abbott did not prevent a sale to any company of Reliant's choosing. ████████████████████████████████████ ███████████████████████████████████████████████████████████

Ethypharm's own conduct also played a chain-breaking role. Ethypharm apparently consented to the sale by Reliant to Oscient. The Ethypharm-Reliant License requires Ethypharm's consent. Ethypharm-Reliant License (Brennecke Decl. Ex. B) at p. 61 (Section 14.1(b)); see also Complaint ¶ 79 ("[A] top official of Reliant told a top official of Ethypharm that Reliant was contemplating the sale of the Antara Rights to another pharmaceutical

-31-

company."). There is no allegation that Reliant proceeded over Ethypharm's objection to the sale.

     2.    **Tortious Interference with Contract**

     Ethypharm alleges that Reliant breached the implied covenant of good faith and fair dealing of the Ethypharm-Reliant License by entering into the Fournier/Abbott-Reliant Settlement. Complaint ¶¶ 158, 161. No other breaches of the Ethypharm-Reliant License are alleged in the Complaint.

     No factual allegation supports the conclusory allegation that Abbott caused or induced a breach of the Ethypharm-Reliant License. The Fournier/Abbott-Reliant Settlement flows from Reliant's commencement of suit against Fournier and Abbott and Reliant's decision to settle its suit. Reliant settled compulsory counterclaims that Ethypharm alleges were "sham" allegations of infringement by Reliant and "sham" assertions of unenforceable patents. Complaint ¶¶ 15, 22, 92 & 186. But after factual discovery, Reliant chose to settle the allegations. Any breach of the Ethypharm-Reliant License was caused by Reliant's decision to settle—not by the assertions of the counterclaims.

                         *           *           *

     None of Ethypharm's common-law claims satisfies Delaware's causation requirement. The tortious-interference-with-contract claim fails to allege Abbott's knowledge of the Ethypharm-Reliant License and fails to allege facts to establish Reliant's breach of the License. The unfair-competition and tortious-interference-with-prospective-economic-advantage claims do not allege a reasonable expectancy by Ethypharm or Abbott's knowledge of the alleged expectancy. All of the claims should be dismissed.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss Ethypharm's Complaint in its entirety.

Dated: May 13, 2008

BOUCHARD MARGULES &
  FRIEDLANDER, P.A.


_/s/ David J. Margules_____
David J. Margules (#2254)
222 Delaware Avenue
Wilmington, DE  19801
(302) 573-3500
dmargules@bmf-law.com


OF COUNSEL:

William F. Cavanaugh, Jr.
Thomas W. Pippert
Benjamin S. Litman
PATTERSON BELKNAP WEBB &
  TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710

_Attorneys for Abbott Laboratories_