# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ETHYPHARM S.A. FRANCE,

                Plaintiff,

    v.

ABBOTT LABORATORIES,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 08-126 (SLR)

**HIGHLY CONFIDENTIAL –
FILED UNDER SEAL
PURSUANT TO COURT ORDER**

REDACTED PUBLIC VERSION

---

## ABBOTT LABORATORIES'
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

BOUCHARD MARGULES &
  FRIEDLANDER, P.A.
David J. Margules (#2254)
Sean M. Brennecke (#4686)
222 Delaware Avenue
Wilmington, DE 19801
(302) 573-3500
dmargules@bmf-law.com

OF COUNSEL:

William F. Cavanaugh, Jr.
Thomas W. Pippert
Benjamin S. Litman
PATTERSON BELKNAP WEBB &
  TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710

Attorneys for Abbott Laboratories

Dated: August 5, 2008

Redacted Filing Date: August 8, 2008

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iv

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

    Ethypharm and Fournier License Fenofibrate Technology .................................... 3

    Abbott, Reliant and Oscient Compete to Sell Fenofibrate Drugs........................... 4

    Ethypharm Alleges Restraints on Competition in the Market for Selling Fenofibrate Drugs.. 5

    Similar Allegations Are the Subject of Pending Actions ....................................... 5

    Reliant and Oscient Have No Obligation to Develop "New Fenofibrate Products" or
    "Combination Products" ....................................................................................... 6

    Reliant Filed a Declaratory-Judgment Action and Then Settled with Fournier and Abbott .... 7

    REDACTED ...................................................................................................... 10

    Reliant Needed Ethypharm's Consent to Sell to Oscient....................................... 11

STATUS OF THIS ACTION ..................................................................................... 12

ARGUMENT ............................................................................................................. 13

I.  THE COURT SHOULD SCRUTINIZE THE CONCLUSORY ALLEGATIONS OF
    ETHYPHARM'S AMENDED COMPLAINT ON THIS MOTION TO DISMISS ........... 13

II.  ETHYPHARM DOES NOT HAVE ANTITRUST STANDING FOR ANY OF ITS
    ANTITRUST CLAIMS.......................................................................................... 14

    A.  Antitrust Standing Is a Narrowing "Passageway" for Antitrust Plaintiffs......................... 15

    B.  Antitrust Standing Requires an Antitrust Plaintiff to Pass Two Tests.............................. 16

    C.  Ethypharm Cannot Establish Antitrust Injury.................................................................. 17

    D.  Even If Ethypharm Has an Antitrust Injury, It Still Does Not Have
    Antitrust Standing .............................................................................................. 21

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.   REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

1. Ethypharm's Injury, If Any, Was Not Caused by the Alleged
   Antitrust Violations.................................................................................. 22

2. Ethypharm's Injury, If Any, Is Indirect and Incidental ......................... 25

3. More Direct "Victims" of the Alleged Antitrust Violations Exist ........................ 27

E. Ethypharm Also Lacks Antitrust Standing to Seek Injunctive Relief.............................. 28

F. Dismissal of the Sherman Act Claims Should Lead to Dismissal of the Common-Law
   Restraint-of-Trade Claim ....................................................................... 29

III. NONE OF THE REMAINING COMMON-LAW CLAIMS STATES A CLAIM FOR
     RELIEF.................................................................................................. 29

A. Reliant Did Not Breach the Ethypharm-Reliant License.................................................. 31

B. Ethypharm Has Not Alleged a Reasonable Probability of a Business Expectancy .......... 32

C. Abbott's Alleged Conduct Was Not the Proximate Cause of Ethypharm's
   Alleged Injuries ...................................................................................... 33

1. Unfair Competition and Tortious Interference with Prospective
   Economic Advantage ........................................................................... 34

2. Tortious Interference with Contract........................................................ 35

CONCLUSION...................................................................................................... 37

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.   REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION

TABLE OF AUTHORITIES

CASES

Alberta Gas Chemicals Ltd. v. E.I. Du Pont de Nemours and Co.,
826 F.2d 1235 (3d Cir. 1987)..................................................................16, 28

America Homepatient, Inc. v. Collier,
C.A. No. 274-N, 2006 WL 1134170 (Del. Ch. Apr. 19, 2006) .............................29, 30, 32

Asahi Glass Co. Ltd. v. Pentech Pharmaceuticals, Inc.,
289 F. Supp. 2d 986 (N.D. Ill. 2003), appeal dismissed, 104 F. App'x 178 (Fed.
Cir. 2004) ......................................................................................................19

Associated General Contractors of California, Inc. v. California State Council of Carpenters,
459 U.S. 519 (1983) ................................................................. passim

Barton & Pittinos, Inc. v. SmithKline Beecham Corp.,
118 F.3d 178 (3d Cir. 1997) ................................................. passim

Bell Atlantic Corp. v. Twombly,
— U.S. —, 127 S. Ct. 1955 (2007)....................................................13, 14

Blue Shield of Virginia v. McCready,
457 U.S. 465 (1982)....................................................................14, 18

Broadcom Corp. v. Qualcomm Inc.,
501 F.3d 297 (3d Cir. 2007)..........................................................18, 28

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,
429 U.S. 477 (1977)..............................................................17, 21, 22

Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.,
454 F.2d 1292 (2d Cir. 1971)........................................................19, 20

Cargill, Inc. v. Budine,
No. CV-F-07-349-LJO-SMS, 2007 WL 2506451 (E.D. Cal. Aug. 30, 2007)...................17

Cargill, Inc. v. Monfort of Colorado, Inc.,
479 U.S. 104 (1986)........................................................................22, 28

Carpet Group International v. Oriental Rug Importers Association, Inc.,
227 F.3d 62 (3d Cir. 2000)............................................................19, 21

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION

Chamison v. HealthTrust, Inc.,
    735 A.2d 912 (Del. Ch. 1999), aff'd, 748 A.2d 407 (Del. 2000) .......................................31

City of Pittsburgh v. West Penn Power Co.,
    147 F.3d 256 (3d Cir. 1998)............................................................................. passim

Commerce National Insurance Services Inc. v. Buchler,
    No. Civ. 02-037-SLR, 2003 WL 22953225 (D. Del. Dec. 10, 2003), aff'd, 120 F.
    App'x 414 (3d Cir. 2004) ..............................................................................33

Cryovac Inc. v. Pechiney Plastic Packaging, Inc.,
    430 F. Supp. 2d 346 (D. Del. 2006)..................................................................30

DeBonaventura v. Nationwide Mutual Insurance Co.,
    428 A.2d 1151 (Del. 1981) ............................................................................33

In re Delmarva Sec. Litigation,
    794 F. Supp. 1293 (D. Del. 1992)......................................................................6

Dow Chemical Co. v. Exxon Corp.,
    30 F. Supp. 2d 673 (D. Del. 1998).....................................................................22

Gregory Marketing Corp. v. Wakefern Food Corp.,
    787 F.2d 92 (3d Cir. 1986)........................................................................18, 20

Hammermill Paper Co. v. Palese,
    C.A. No. 7128, 1983 WL 19786 (Del. Ch. June 14, 1983) ...............................29

Harrison v. Paramount Pictures, Inc.,
    115 F. Supp. 312 (E.D. Pa. 1953), aff'd, 211 F.2d 405 (3d Cir. 1954)...............26

Integral Resources (PVT) Ltd. v. Istil Group, Inc.,
    No. 03-904 (GMS), 2004 WL 2758672 (D. Del. Dec. 2, 2004), aff'd, 155 F.
    App'x 69 (3d Cir. 2005) ..............................................................................30

Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.,
    C.A. No. 94C-03-189, 1995 WL 411319 (Del. Super. Ct. June 30, 1995).........32

Lorah v. Tetra Tech Inc.,
    541 F. Supp. 2d 629 (D. Del. 2008).....................................................................3

Lucent Information Management v. Lucent Technologies,
    5 F. Supp. 2d 238 (D. Del. 1998), aff'd, 186 F.3d 311 (3d Cir. 1999)..............32

McCarthy v. Recordex Service, Inc.,
    80 F.3d 842 (3d Cir. 1996)........................................................................26, 33

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.    REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

Merck & Co. v. SmithKline Beecham Pharmaceuticals Co.,
    No. C.A. 15443-NC, 1999 WL 669354 (Del. Ch. Aug. 5, 1999), aff'd, 766 A.2d
    442 (Del. 2000) ..........................................................................................................33

Muti v. Schmidt,
    96 F. App'x 69 (3d Cir.), superseded on other grounds, 118 F. App'x 646 (3d Cir.
    2004) ........................................................................................................................10

National Distillers and Chemical Corp. v. Department of Energy,
    Dkt. No. Civil 79-399, 1980 WL 1057 (D. Del. Oct. 23, 1980), aff'd, 662 F.2d
    754 (Em. App. 1981) ...............................................................................................10

Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.,
    347 F.3d 935 (Fed. Cir. 2003)....................................................................................8

Productive Inventions v. Trico Products Corp.,
    224 F.2d 678 (2d Cir. 1955).....................................................................................26

R.C. Dick Geothermal Corp. v. Thermogenics, Inc.,
    890 F.2d 139 (9th Cir. 1989) .............................................................................18, 26

System Operations, Inc. v. Scientific Games Development Corp.,
    555 F.2d 1131 (3d Cir. 1977)...................................................................................30

Travelers Indemnity Co. v. Lake,
    594 A.2d 38 (Del. 1991) ..........................................................................................30

U.S. Express Lines Ltd. v. Higgins,
    281 F.3d 383 (3d Cir. 2002)........................................................................................3

Vivid Technologies, Inc. v. America Science & Engineering, Inc.,
    200 F.3d 795 (Fed. Cir. 1999)....................................................................................8

Walgreen Co. v. AstraZeneca Pharmaceuticals L.P.,
    534 F. Supp. 2d 146 (D. D.C. 2008) ........................................................................13

In re Warfarin Sodium Antitrust Litigation,
    214 F.3d 395 (3d Cir. 2000)......................................................................................18

Wilmington Country Club v. Cowee,
    747 A.2d 1087 (Del. 2000) .................................................................................34, 35

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.    REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

## STATUTES

6 Del. Code § 2103 ...........................................................................................................29

6 Del. Code § 2113 ...........................................................................................................29

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 12, 13

Sherman Act, 15 U.S.C. § 1 ...........................................................................................29

Clayton Act, 15 U.S.C. § 26 ...............................................................................22, 28, 29

## MISCELLANEOUS

2A Phillip E. Areeda et al., Antitrust Law  (3d ed. 2007).................................................. passim

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.   REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

Abbott Laboratories ("Abbott") respectfully submits this opening brief in support of its motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims for relief pled by Ethypharm S.A. France ("Ethypharm") in its amended complaint.

In response to Abbott's motion to dismiss Ethypharm's initial complaint, Ethypharm amended its complaint in an attempt to add the facts necessary to support its claims. The amended complaint has the same defects as the initial complaint, and Abbott relies on the previously submitted Declaration of Sean M. Brennecke, Esq., dated May 13, 2008 ("Brennecke Decl.") and the exhibits thereto in support of Abbott's present motion.  (D.I. 15 through D.I. 20).

### Preliminary Statement

No doubt spurred by the publicity surrounding the antitrust litigation involving the fenofibrate drug TriCor® and Abbott, another putative plaintiff steps forward.  This plaintiff lacks standing to bring the claims it asserts.

This case involves alleged restraints on the ability of Reliant Pharmaceuticals, Inc. ("Reliant") and its successor Oscient Pharmaceuticals ("Oscient") to compete with Abbott for sales of fenofibrate drugs in the United States.  In 2001, Ethypharm, a small French company, licensed its fenofibrate technology to Reliant.  Reliant—not Ethypharm—was approved by the U. S. Food and Drug Administration (the "FDA") to market in the United States.

In 2004, as Reliant prepared to launch its fenofibrate drug (Antara) in competition with Abbott's TriCor®, Reliant sued Laboratoires Fournier ("Fournier") and Abbott seeking a declaratory judgment that Reliant's drug did not infringe five Fournier patents and that the patents were unenforceable because they were allegedly obtained by inequitable conduct. Reliant launched Antara during the litigation in 2005 and then settled the litigation with Fournier

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

and Abbott in 2006 | REDACTED                                          |

| |

       Reliant then sold its rights to Antara to Oscient in 2006.  As Reliant's licensor, Ethypharm had the right to approve Reliant's sale to Oscient.

       Ethypharm's amended complaint (the "Amended Complaint") (D.I. 26) concedes the facts establishing Ethypharm's lack of standing to bring federal-antitrust claims and state-law restraint-of-trade claims.  Ethypharm licenses patent rights and supplies product to the licensed company that actually markets and sells Antara.  The Amended Complaint alleges anticompetitive conduct in the market for marketing and selling fenofibrate drugs—but does not allege anticompetitive conduct in Ethypharm's separate and distinct market for licensing patent rights and supplying product.  Ethypharm alleges, among other things, that Abbott has increased Reliant's and Oscient's costs; prohibited Reliant and Oscient from developing certain products; 

| REDACTED                                                            | ; and

prohibited Reliant and Oscient from selling the rights to Antara to certain companies.  Ethypharm's alleged injuries—lost licensing royalties and lost sales of product to Reliant and Oscient—are derivative of the alleged injuries to Abbott's competitors.

       Under well-established antitrust caselaw, a licensor and supplier like Ethypharm simply has not suffered an "antitrust injury" flowing from Abbott's alleged conduct.  Antitrust injury is essential to establishing antitrust standing.  In addition, all of the other factors of an antitrust-standing analysis weigh against Ethypharm's standing.  See Point "II" below.

       The allegations and omissions in the Amended Complaint also doom Ethypharm's common-law tort claims.  Ethypharm does not allege that Abbott vetoed Reliant's sale of its license rights under the Fournier patents to a company larger than Oscient that, according to

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

| REDACTED PUBLIC VERSION |

Ethypharm, might have greater licensed-product sales than Oscient has (and consequently might have increased Ethypharm's royalties and other profits). Reliant's decision to sell to Oscient (and Ethypharm's apparent consent to that sale) break any causal link between Abbott's alleged conduct and Ethypharm's alleged injuries. <u>See</u> Point "III" below.

The Court should therefore dismiss all of Ethypharm's claims for relief.

## STATEMENT OF FACTS[1]

### Ethypharm and Fournier License
### Fenofibrate Technology

Fournier owns U.S. patent rights for the fenofibrate drug branded as TriCor®. Amended Complaint ¶ 2. Fournier licensed those patent rights to Abbott for Abbott's use in the United States. <u>See</u> Complaint in <u>Reliant v. Fournier</u> (Brennecke Decl. Ex. A) (D.I. 15 Ex. A) ¶¶ 20-22.

---

[1]    The statement of facts is based on (a) the allegations of Ethypharm's Amended Complaint (D.I. 26), (b) the contents of two documents referenced by the Amended Complaint and (c) the record in <u>Reliant Pharmaceuticals, Inc. v. Abbott Laboratories and Laboratories Fournier S.A.</u> (D. Del. C.A. No. 04-350 (KAJ)) ("<u>Reliant v. Fournier</u>"); <u>State of Florida et al. v. Abbott Laboratories et al.</u> (D. Del. C.A. No. 08-155 (SLR)) (the "States Attorneys General's TriCor Antitrust Action"); and <u>In re TriCor Direct Purchaser Antitrust Litigation</u> (D. Del. C.A. No. 05-340 (SLR)) and <u>In re TriCor Indirect Purchaser Antitrust Litigation</u> (D. Del. C.A. No. 05-360 (SLR)) (together the "Private Plaintiffs' TriCor Antitrust Actions").

Documents that are "integral to or explicitly relied upon in the complaint"—as the Ethypharm-Reliant License is (<u>see, e.g.</u>, Amended Complaint ¶¶ 42-47) and as the Fournier/Abbott-Reliant Settlement is (<u>see, e.g.</u>, Amended Complaint ¶¶ 76-81)—may be considered in deciding a Rule 12(b)(6) motion. <u>See, e.g.</u>, <u>Lorah v. Tetra Tech Inc.</u>, 541 F. Supp. 2d 629, 631 (D. Del. 2008). Consideration of such documents does not convert the Rule 12(b)(6) motion into a motion for summary judgment. <u>See id.</u> ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (quoting <u>U.S. Express Lines Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3d Cir. 2002))).

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

Ethypharm also licenses patents relating to fenofibrate. Ethypharm concedes that it has not sold or distributed drugs in the United States and that, instead, it sought a company that would take a license from Ethypharm, obtain regulatory approval in the United States and market in the United States. Amended Complaint ¶ 5. Ethypharm concedes that licensing was Ethypharm's only "business model" because "Ethypharm did not have the in-house capacity to market and distribute fenofibrate products in the United States." Id. ¶ 40-41.

Years after Fournier had licensed Abbott for the U.S. market, Ethypharm licensed its fenofibrate technology to Reliant. Id. ¶ 5. A copy of the license agreement (the "Ethypharm-Reliant License") is attached to the Brennecke Declaration as Exhibit B (D.I. 15 Ex. B).[2] Reliant began selling its fenofibrate drug (Antara) in 2005. Ethypharm also supplies fenofibrate product to its licensee under the License. Amended Complaint ¶¶ 5-6.

**Abbott, Reliant and Oscient**
**Compete to Sell Fenofibrate Drugs**

The FDA approved Reliant's New Drug Application for Antara in November 2004. Id. ¶ 52. In 2006, Reliant sold its rights to Antara to Oscient. Id. ¶¶ 11-12. Reliant was—and Abbott and Oscient are—in the alleged market for marketing and selling drugs containing fenofibrate.[3] The competitors market their drugs to U.S.-based primary-care physicians and specialty physicians for prescriptions for their patients. Id. ¶ 43.

---

[2]     Exhibit B to the Brennecke Declaration (D.I. 15 Ex. B) is the version of the Ethypharm-Reliant License that is publicly available from the web site of the U.S. Securities and Exchange Commission (the "SEC"). The SEC version of that License was apparently redacted at Reliant's request when it was filed with the SEC. None of the redactions appears to be material to this motion to dismiss.

[3]     The active ingredient of TriCor® and Antara is fenofibrate. Amended Complaint ¶¶ 26, 54. Antara is not a generic drug. Id. ¶ 53.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION                                    4

**Ethypharm Alleges Restraints on Competition
in the Market for Selling Fenofibrate Drugs**

All of the restraints alleged by Ethypharm relate to competitive activities of

Reliant and Oscient in the U.S. market for marketing and selling drugs containing fenofibrate.

The Amended Complaint alleges that declaratory-judgment patent claims raised by Reliant led to

a settlement agreement by Reliant that injures U.S. consumers by delaying the development and

sale of superior fenofibrate drugs and by maintaining higher prices for fenofibrate drugs. Id.

¶ 15. The Amended Complaint also alleges that the patent claims and settlement agreement

raised Reliant's costs of marketing and selling Antara. Id. ¶ 79.

Ethypharm does not allege a restraint on competition in Fournier's and

Ethypharm's market for licensing technology and supplying products containing fenofibrate.

**Similar Allegations Are the
Subject of Pending Actions**

Ethypharm's Amended Complaint is premised on Reliant's allegations in Reliant

v. Fournier about five Fournier patents, including alleged inequitable conduct. Id. ¶¶ 99, 101 &

108. Ethypharm admits that two of Abbott's other competitors in the sale of fenofibrate products

(Teva Pharmaceuticals USA, Inc. and Impax Laboratories, Inc.) have already brought suit

against Abbott alleging the same inequitable conduct in connection with the same Fournier

patents. Id. ¶¶ 22, 24, 65 & 109. Suits on those same five patents have also been brought by

(a) the Attorneys General of twenty-six states in the States Attorneys General's TriCor Antitrust

Action on behalf of the residents of those states, see First Amended Complaint in State of Florida

v. Abbott Laboratories (D. Del. C.A. No. 08-155 (SLR)) (Brennecke Decl. Ex. C) (D.I. 15 Ex.

C), and (b) the Direct Purchasers and Indirect Purchasers in the Private Plaintiffs' TriCor

Antitrust Actions on behalf of TriCor® purchasers, TriCor® patients and consumers and others,

see Direct Purchaser Class Plaintiffs' First Amended and Consolidated Class Action Complaint

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

in In re TriCor Director Purchaser Litigation (D. Del. C.A. No. 05-340 (SLR)) (Brennecke Decl. Ex. D) (D.I. 16) and End Payor Plaintiffs' Consolidated Class Action Complaint in In re TriCor Indirect Purchaser Antitrust Litigation (D. Del. C.A. No. 05-360 (SLR)) (Brennecke Decl. Ex. E) (D.I. 17).[4] Just as Ethypharm alleges in its Amended Complaint, the plaintiffs in those Actions allege that Fournier and Abbott asserted one or more of the Fournier patents to prevent competition in the U.S. market for marketing and selling fenofibrate products.

**Reliant and Oscient Have No Obligation**
**to Develop "New Fenofibrate Products"**
**or "Combination Products"**

Reliant develops pharmaceutical products, and it participated in the development of Antara with Ethypharm. See Ethypharm-Reliant License (Brennecke Decl. Ex. B) (D.I. 15 Ex. B) at p. 14 (Section 2.1) ("Ethypharm and Reliant shall develop the Product consistent with the terms of this Agreement . . . ."). With regard to fenofibrate formulations in addition to the "Product" defined by the License, Reliant had a right—but not an obligation—to develop additional fenofibrate products. Section 2.1 of the Ethypharm-Reliant License expressly provides that "Reliant, at its option, may develop in collaboration with Ethypharm and conduct clinical trials in respect of other formulations and/or dosage forms of the Product." Id. at p. 14 (Section 2.1). The Amended Complaint repeatedly refers to Reliant's ability to launch "new

---

[4]    The Court may take judicial notice of the record in Reliant v. Fournier and in the States Attorneys General's and the Private Plaintiffs' TriCor Antitrust Actions. See, e.g., City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). Judicial notice is also proper with regard to public regulatory filings, such as those made with the SEC. See In re Delmarva Sec. Litig., 794 F. Supp. 1293, 1299 (D. Del. 1992) ("SEC filings fall within th[e] category of public records that can be judicially noticed."); see also id. (stating the basic rule that "[t]his Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered").

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

fenofibrate formulations" as being restrained by Abbott's alleged conduct.  See, e.g., Amended

Complaint ¶ 10.[5]

Ethypharm's Amended Complaint also refers to "combination products"

containing fenofibrate and other drugs.  See, e.g., Amended Complaint ¶ 46.  The terms of the

Ethypharm-Reliant License, however, make clear that Reliant did not have full rights to develop

combination products, much less a contractual obligation to do so.  First, Ethypharm reserved for

itself (or for another Ethypharm licensee) a right to develop certain combination products.  See

Ethypharm-Reliant License (Brennecke Decl. Ex. B) (D.I. 15 Ex. B) at pp. 18-19 (Section 3.1).

Reliant had only a right of first refusal for combination products developed by Ethypharm.  Id. at

p. 19 (Section 3.2).

Second, Ethypharm and Reliant expressly excused Reliant from any obligation to

develop combination products:  "Reliant shall have the right, but not the obligation, to develop

and commercialize . . . a 'Combination Product.'"  Id. at p. 37 (Section 6.10).  And even if Reliant

did undertake the development of a combination product and needed additional intellectual-

property rights from Ethypharm, Reliant had to negotiate additional license terms with

Ethypharm.  Id.[6]

**Reliant Filed a Declaratory-Judgment**
**Action and Then Settled with Fournier**
**and Abbott**

Reliant coordinated its launch of Antara with the filing of a declaratory-judgment

action against Fournier and Abbott alleging non-infringement of the five patents owned by

_____

[5]       Reliant assigned the Ethypharm-Reliant License to Oscient, and Oscient is selling Antara
today.  Ethypharm does not allege that Oscient contracted with Ethypharm and assumed an
obligation to develop an additional fenofibrate product.

[6]       Ethypharm does not allege that Oscient undertook any obligations with regard to
"combination products" from which Reliant was expressly excused.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.   REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION                              7

Fournier and the invalidity and/or unenforceability of the patents. Amended Complaint ¶¶ 99, 101 & 108. Fournier and Abbott counterclaimed for Reliant's infringement of two of the patents. Id. ¶ 115. The counterclaims were mandatory in light of Reliant's allegations.[7] Ethypharm asserts that the mandatory counterclaims were "sham" assertions of unenforceable patents. Id. ¶¶ 16, 23, 98 & 194.

     As alleged in the counterclaims, Fournier owns the two patents. See Joint Answer and Counterclaims in Reliant v. Fournier (Brennecke Decl. Ex. F) (D.I. 18) ¶ 88. Abbott joined the mandatory counterclaims in its capacity as Fournier's licensee. Id. ¶ 89.

     Ethypharm concedes that Reliant's lawsuit and the mandatory counterclaims did not delay Reliant's launch of Antara in 2005. The FDA approved the sale of Antara while Reliant's lawsuit was pending, and Reliant "immediately proceeded to take steps to launch Antara, in spite of the fact that the Delaware Court had not ruled on the patent infringement issue." Amended Complaint ¶¶ 102-103.

     After discovery, Reliant settled its contested allegations of non-infringement, invalidity and enforceability by negotiating a settlement agreement (the "Fournier/Abbott-Reliant Settlement").[8] Under that Settlement, REDACTED

---

[7]    See Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc., 347 F.3d 935, 938 (Fed. Cir. 2003) (reiterating the "uniform national rule" that "a claim for a declaration of noninfringement makes a counterclaim for patent infringement compulsory"); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 801-02 (Fed. Cir. 1999) (collecting cases for the proposition that "every court that has discussed the issue has recognized that an infringement counterclaim is compulsory in an action for declaration of non-infringement").

[8]    The Fournier/Abbott-Reliant Settlement is referenced in Ethypharm's Amended Complaint ¶¶ 76-81. A copy is attached to the Brennecke Declaration as Exhibit G (D.I. 19).

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

8

REDACTED                                                                See

Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex. G) (D.I. 19) at p. 7 (Section 1(q)) and

p. 8 (Section 2).  Ethypharm alleges that the Settlement is an antitrust conspiracy between Abbott

and Reliant.  Amended Complaint ¶¶ 134-139.[9]

REDACTED

REDACTED

1.  REDACTED
    Fournier/Abbott-Reliant Settlement
    (Brennecke Decl. Ex. G) (D.I. 19) at p. 9 (Section 3(a)).

2.  REDACTED
    See id. at p. 16-17 (Section
    8(e)).

3.  REDACTED
    See id. at pp. 16-17 (Section
    8(e)).

4.  REDACTED
    See id. at p. 16-17 (Section 8(e)).

    Contrary to the allegations of the Amended Complaint, Fournier and Abbott did

not place any restrictions of any kind on Reliant with regard to, among other things, the

following:

---

[9]    Ethypharm alleges on information and belief that there are "anticompetitive agreements" in addition to the Fournier/Abbott-Reliant Settlement.  Amended Complaint ¶ 76.  No facts are alleged in support of a second agreement between Reliant and Fournier or between Reliant and Abbott.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

1.    Reliant's development of new products, including new fenofibrate
products within the scope of the Ethypharm-Reliant License;

2.    Reliant's development of combination products, including combination
products within the scope of the Ethypharm-Reliant License; or

3.    REDACTED

Compare Amended Complaint ¶¶ 13, 71, 78, 80, 83, 88 & 90.[10]

REDACTED

See Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex.

G) (D.I. 19) at p. 7 (Section 1(o)).

See id. at p. 16 (Section 8).

REDACTED

Ethypharm repeatedly alleges that Reliant could not transfer its rights regarding

Antara to a company with greater resources than Reliant and that could allegedly compete more

effectively with Abbott than Ethypharm's chosen licensee (Reliant).  See, e.g., Amended

---

[10]    The Court is not bound by the Amended Complaint's erroneous descriptions of the
contents of the Fournier/Abbott-Reliant Settlement.  See Muti v. Schmidt, 96 F. App'x 69, 74 n.2
(3d Cir.) ("Nor will we accept conclusory allegations when contradicted by documents
incorporated in the pleadings."), superseded on other grounds, 118 F. App'x 646 (3d Cir. 2004);
see also Nat'l Distillers and Chem. Corp. v. Dep't of Energy, Dkt. No. Civil 79-399, 1980 WL
1057, at *1 (D. Del. Oct. 23, 1980) ("[I]n ruling on defendants' motion to dismiss, the Court . . .
was not bound to accept either conclusions of law, or unwarranted factual inferences
contradicted by written documents incorporated and referred to in the complaint."), aff'd, 662
F.2d 754 (Em. App. 1981).

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION

Complaint ¶¶ 13, 71, 78, 83, 88 & 90.  REDACTED

1.
see Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex. G) (D.I. 19) at p. 16 (Section 8(e)); and

2.
See id.

After settling with Fournier and Abbott, Reliant decided to exit the crowded dyslipidemia market. In 2006, Reliant sold rights to the Antara product to Oscient. Amended Complaint ¶¶ 11-12. REDACTED

**Reliant Needed Ethypharm's**
**Consent to Sell to Oscient**

Under the Ethypharm-Reliant License, Reliant could not sell Ethypharm's intellectual property without Ethypharm's express written consent. See Ethypharm-Reliant License (Brennecke Decl. Ex. B) (D.I. 15 Ex. B) at p. 61 (Section 14.1(b)). Ethypharm does not allege that Reliant failed to seek Ethypharm's consent to sell to Oscient or that Ethypharm withheld its consent to that sale. Further, Ethypharm does not allege that it was unaware of Oscient's size or resources at the time Reliant sold the Ethypharm-Reliant License to Oscient.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

**STATUS OF THIS ACTION**

Ethypharm filed its initial complaint on March 3, 2008 (the "Complaint").

(D.I. 1). Abbott moved on May 13, 2008 to dismiss the complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure. (D.I. 12). In response to Abbott's motion, Ethypharm

amended its complaint.

Ethypharm's Amended Complaint omits the allegations of Ethypharm's March 3,

2008 complaint that Ethypharm has been "the principal competitor of Abbott's licensor

(Fournier)" and "[s]ince the mid-1980's, Ethypharm has been the principal competitor of Abbott's

licensor (Fournier) in the licensing and sale of products containing fenofibrate on the world

stage." Compare Complaint ¶¶ 4 and 38 with Amended Complaint ¶¶ 4 and 39. Ethypharm also

omitted its prior allegations that Reliant specializes in the "development" of prescription drug

products and that Ethypharm works "with its licensee" to extend the Antara product in the United

States. Compare Complaint ¶¶ 5, 41, 75 & 167 with Amended Complaint ¶¶ 5, 43, 80 & 174.

Similar omissions occur in the allegations concerning Oscient. Compare Complaint ¶¶ 84, 86 &

177 with Amended Complaint ¶¶ 89, 92 & 185.

Ethypharm's new allegations in the Amended Complaint include allegations that

Abbott "target[ed]" Ethypharm and that Ethypharm is the "direct victim" of Abbott's conduct.

Amended Complaint ¶¶ 8, 14 & 68.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

<u>**ARGUMENT**</u>

I.    **THE COURT SHOULD SCRUTINIZE**
      **THE CONCLUSORY ALLEGATIONS**
      **OF ETHYPHARM'S AMENDED COMPLAINT**
      <u>**ON THIS MOTION TO DISMISS**</u>

        Ethypharm cannot avoid dismissal on this Rule 12(b)(6) motion by reciting the

Amended Complaint's conclusory allegations of "antitrust injury" and of other essential elements

of its claims for relief. The Supreme Court ended that practice in antitrust cases at least by 2007.

<u>Bell Atl. Corp. v. Twombly,</u> — U.S. —, 127 S. Ct. 1955, 1964-65 (2007) ("While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

(brackets, citations and quotation marks omitted). Without supporting facts, allegations of an

"antitrust injury" are "no 'more than labels and conclusions, and a formulaic recitation. . . .'"

<u>Walgreen Co. v. AstraZeneca Pharms. L.P.,</u> 534 F. Supp. 2d 146, 153 (D. D.C. 2008) (quoting

<u>Twombly,</u> 127 S. Ct. at 1965).

        Similarly, courts may not fill in the blanks for antitrust plaintiffs. A court on a

motion to dismiss may not "assume that the [plaintiff] can prove facts that it has not alleged."

<u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,</u> 459 U.S. 519, 526

(1983) (hereinafter "<u>AGC</u>").

        Both the unique scope of antitrust lawsuits and the unique remedies available to

successful antitrust plaintiffs require this scrutiny of a complaint at the motion-to-dismiss stage

of the litigation. As the <u>Twombly</u> Court explained:

                [I]t is one thing to be cautious before dismissing an antitrust
                complaint in advance of discovery, but quite another to forget that

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION                    13

> proceeding to antitrust discovery can be expensive. As we
> indicated over 20 years ago in [AGC, 459 U.S. 519, 528 n.17
> (1983)], "a district court must retain the power to insist upon some
> specificity in pleading before allowing a potentially massive
> factual controversy to proceed."

Twombly, 127 S. Ct. at 1966-67 (citation omitted); see also Blue Shield of Va. v. McCready, 457

U.S. 465, 477 (1982) (cautioning that the "potency of the remedy" under Section 4 of the

Clayton Act for antitrust violations "implies the need for some care in its application").

Scrutiny of conclusory allegations is especially appropriate on the issue of

antitrust standing. In City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 (3d Cir.

1998), the Third Circuit rejected an antitrust plaintiff's argument that the district court "should

have taken the allegations of [antitrust standing in] its complaint at face value." Instead, the

Third Circuit directed that

> our courts have an obligation in matters before them to view the
> complaint as a whole and to base rulings not upon the presence of
> mere words but, rather, upon the presence of a factual situation
> which is or is not justiciable. We do draw on the allegations of the
> complaint, but in a realistic, rather than a slavish manner.

Id.

Here, the factual situation alleged by Ethypharm does not support Ethypharm's

conclusory allegations of essential elements of its claims for relief.

## II.    ETHYPHARM DOES NOT HAVE ANTITRUST STANDING FOR ANY OF ITS ANTITRUST CLAIMS

The Amended Complaint should be dismissed because Ethypharm does not have

antitrust standing to challenge the alleged conduct. In order to have antitrust standing,

Ethypharm must have suffered at the very least an "antitrust injury." See, e.g., West Penn, 147

F.3d at 265; Barton & Pittinos, Inc. v. SmithKline Beecham Corp., 118 F.3d 178, 181-82 (3d Cir.

1997). It has not suffered such an injury. See Point "C" below.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION

14

Even if the Court finds that Ethypharm has alleged sufficient facts to establish an antitrust injury, Ethypharm still lacks antitrust standing. Four additional antitrust-standing factors weigh against the Court's allowing Ethypharm to maintain an action involving alleged anticompetitive effects on fenofibrate consumers and purchasers and on Abbott's direct competitors, and allowing Ethypharm to try to recover damages derived from its licensees' speculative lost sales of existing Antara products and unidentified future products. <u>See</u> Point "D" below.

A.    **Antitrust Standing Is a Narrowing "Passageway" for Antitrust Plaintiffs**

The Third Circuit has synthesized the Supreme Court's antitrust-standing principles into an analysis of the following five factors:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

<u>Barton & Pittinos</u>, 118 F.3d at 181. The Third Circuit refers to these factors as the "<u>AGC</u> factors" in reference to the Supreme Court's decision in <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519 (1983). The second factor ("antitrust injury") is a mandatory element for antitrust standing, but is not sufficient by itself. <u>West Penn</u>, 147 F.3d at 265.

The <u>AGC</u> analysis is an initial hurdle for every antitrust plaintiff. In the Third Circuit, "[t]he [<u>AGC</u>] test has been regularly and consistently applied as the passageway through

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION                    15

which antitrust plaintiffs must advance," and the test "requir[es] a narrowing view" of standing to

bring an antitrust action.  Id. at 264.

**B.    Antitrust Standing Requires an Antitrust Plaintiff to Pass Two Tests**

The Third Circuit has directed district courts to start their analysis of antitrust

standing with the second factor, also known as the "antitrust injury" requirement, because that

analysis may be the only one a court needs to make:

> [A]ntitrust injury is a necessary but insufficient condition of
> antitrust standing, . . . [I]f antitrust injury is not found, further
> inquiry is unnecessary.

West Penn, 147 F.3d at 265 (brackets, citation and quotation marks omitted).  As a result of this

prioritizing of the AGC factors, an antitrust plaintiff must clear two separate hurdles before a

court will allow it to maintain an action.

First, the plaintiff must establish that it suffered "antitrust injury."  If it cannot, the

court must hold that the plaintiff lacks standing and must dismiss the antitrust claims on that

basis alone.  See, e.g., Barton & Pittinos, 118 F.3d at 181.  Second, even if the plaintiff

establishes antitrust injury, it must also satisfy the court that, on balance, the remaining AGC

factors also support a conclusion that the plaintiff is a "proper party" to bring an antitrust action.

See, e.g., id.; Alberta Gas Chems. Ltd. v. E.I. Du Pont de Nemours and Co., 826 F.2d 1235, 1240

(3d Cir. 1987) ("Once antitrust injury has been demonstrated . . . , standing analysis is employed

to search for the most effective plaintiff from among those who have suffered loss.") (citations

omitted).

In an opinion by now-Justice Alito, the Third Circuit described this two-step test

as analogous to the two-step analysis for Article III standing under the U.S. Constitution:

> [1] The antitrust injury requirement in the context of antitrust
> standing can thus be seen as analogous to the constitutional

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

minimum required for standing to sue in federal court in general, and [2] the other <u>AGC</u> factors may be thought of as prudential limits on standing that are particularly necessary or appropriate in the antitrust context.

<u>Barton & Pittinos</u>, 118 F.3d at 182 n.4.

For the reasons set forth in Points "C" and "D" below, Ethypharm falls short at both steps of the test for antitrust standing.

### C.    Ethypharm Cannot Establish Antitrust Injury

Ethypharm's bald assertions of "antitrust injury" are precisely the kind of conclusory, legal-turned-factual allegations that this Court is not required to accept on Abbott's motion to dismiss. Ethypharm must establish antitrust injury by factual allegations. <u>See</u> <u>Cargill, Inc. v. Budine</u>, No. CV-F-07-349-LJO-SMS, 2007 WL 2506451, at *5 (E.D. Cal. Aug. 30, 2007) ("[The claimant] argues that it is only required to <u>plead</u> antitrust injury, without further establishing that it is [a] participant in the alleged relevant market. Such [an] argument ignores the longstanding antitrust standing requirement for antitrust plaintiffs.") (emphasis in original).

In <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 489 (1977), the Supreme Court defined "antitrust injury" as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." This definition reflects "the central interest [of the Sherman Act] in protecting the economic freedom of participants <u>in the relevant market</u>." <u>AGC</u>, 459 U.S. at 538 (emphasis added). The Third Circuit has conferred standing on competitors and consumers and has been skeptical of plaintiffs who are neither. <u>See, e.g.</u>, <u>Barton & Pittinos</u>, 118 F.3d at 184 ("Because [the plaintiff] was thus not a competitor or a consumer in the market in which trade was allegedly restrained by the antitrust violations pled by [the plaintiff], we hold that [the plaintiff's] alleged injury is not 'antitrust injury', meaning injury 'of the type that the antitrust statute was intended to forestall.'" (quoting <u>AGC</u>, 459 U.S. at 540));

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

see also Gregory Mktg. Corp. v. Wakefern Food Corp., 787 F.2d 92, 95 (3d Cir. 1986) (finding

no antitrust injury because the plaintiff "is neither a consumer nor a competitor in the [relevant]

market, and thus is not 'within that area of the economy . . . endangered by the breakdown of

competitive conditions.'" (quoting McCready, 457 U.S. at 481)).[11]

   Ethypharm's case is not novel. Ethypharm falls within two of the categories of

plaintiffs consistently denied standing. Alleged lost royalties by licensors, franchisors or

landlords are not the concern of the antitrust laws that condemn restraints on competition in the

downstream market in which the licensees, franchisees and tenants are the active participants.

See, e.g., R.C. Dick Geothermal Corp. v. Thermogenics, Inc., 890 F.2d 139, 148 (9th Cir. 1989)

(en banc) ("Mere injury as a landlord or lessor entitled to royalties would not by itself be the kind

of injury to competition that the antitrust laws are designed to prevent."). The market in which

licensors might have an antitrust injury and might be able to challenge an alleged restraint is the

market for licensing: "While such suppliers [of intellectual or real property] have standing to

challenge illegal restraints in their licensing or renting market, they generally lack standing to

challenge restraints in other markets, including that served by their licensees or tenants." 2A

Phillip E. Areeda et al., Antitrust Law ¶ 351(a) (3d ed. 2007) (hereinafter "Areeda") (emphasis in

original).

   Suppliers of materials and products like Ethypharm should also be denied

standing under the Third Circuit's analysis of antitrust injury. A supplier of products to an

---

[11]  The "inextricably intertwined" exception to the competitor-or-consumer approach has no
relevance to Ethypharm's Amended Complaint. Compare In re Warfarin Sodium Antitrust Litig.,
214 F.3d 395, 400-01 (3d Cir. 2000). The Third Circuit limits the exception to plaintiffs and
defendants who are in the "same relevant market" (even though they are not direct competitors in
that market). Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 320-321 (3d Cir. 2007).
Ethypharm and Abbott are not "in" the same relevant market. On the facts alleged, Ethypharm is
in the licensing and product supply market, and Abbott and Ethypharm's licensees are in the
market for marketing and selling fenofibrate drugs in the United States.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION    18

allegedly injured customer is as remote from the customer's market as a supplier of intellectual property. See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 78 (3d Cir. 2000) (contrasting the facts of that case, where antitrust injury did exist, with "the case if the defendants' actions had put a rug manufacturer out of business, and someone who supplied materials to that manufacturer sued under the antitrust laws"). Allegations similar to Ethypharm's have been rejected by Judge Posner (sitting by designation in an antitrust action based on the settlement of a patent litigation). See Asahi Glass Co. Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986, 990 (N.D. Ill. 2003), appeal dismissed, 104 F. App'x 178 (Fed. Cir. 2004) (after competing marketers of prescription drugs had settled their patent litigation, the supplier of one of the marketers lacked antitrust standing to challenge the patent settlement agreement as an unlawful market division that reduced the supplier's sales to the supplier's marketer).

Ethypharm is "in" the market for licensing technology and supplying fenofibrate products. The factual allegations of the Amended Complaint, if taken as true, demonstrate that the alleged sham patent litigation and the alleged conspiracy between Abbott and Reliant restrain the separate and distinct market for marketing and selling fenofibrate drugs in the United States. Amended Complaint ¶¶ 15, 78-79. That is not the market in which Ethypharm competes. See id. ¶ 5 ("[Ethypharm] does not directly sell and distribute [its fenofibrate] product in this country."). That admission is fatal to all three of Ethypharm's antitrust claims, as well as its common-law restraint-of-trade claim.

It does not matter that Ethypharm casts Reliant as Abbott's co-conspirator. Whether the licensee is an "innocent victim" or an alleged "co-conspirator," the licensor still lacks antitrust standing. In the context of a suit by a lessor, the Second Circuit in Calderone

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

19

Enterprises Corp. v. United Artists Theatre Circuit, Inc., 454 F.2d 1292, 1296 (2d Cir. 1971), held that the alleged involvement of the lessee in a conspiracy did not mean that the lessor had antitrust standing and drew an analogy to patentees:

> Nor does the fact that the plaintiff's lessee was allegedly a party to the conspiracy materially distinguish this case from those where standing has been denied to one having a similar relationship to an innocent competitor victimized by a conspiracy. . . . A plaintiff not a target of any antitrust violation does not become a target by virtue of the culpability of its lessee, patentee, franchisee, supplier, customer, or debtor.

See also Areeda ¶ 335(6) ("A percentage lease landlord should generally be denied standing where its tenant is an alleged participant in the antitrust violation affecting the revenues of the plaintiff's property."); id. ¶ 351a ("[M]ost landlords of this class have been denied standing, not only when the exhibitor is a downstream victim but also when the exhibitor-lessee participated in the challenged antitrust violation.").[12]

Ethypharm's new allegations in the Amended Complaint that Ethypharm is the "target[ed]" and "direct victim" of Abbott's alleged conduct and is Abbott's "primary competitive threat" (Amended Complaint ¶¶ 8, 14, 68-69 & 71) do not add up to an "antitrust injury" for Ethypharm. Such allegations might be meaningful only if Ethypharm were in "direct competition" with Abbott, as defined by the Third Circuit. Ethypharm is not in that position.

For example, the plaintiff rug brokers and defendant rug wholesalers/importers in Carpet Group International were not in the identical business. The only reason the rug brokers

---

[12]     Principal among the reasons for denying standing to the licensor or landlord is that a more immediate mechanism already exists to safeguard the plaintiff's interests—namely, the contract (i.e., the license agreement or lease) between the parties. See id. ¶ 335h(6) ("The landlord has an argument for standing, although its interest is best protected by the terms of the lease."); see also Gregory, 787 F.2d at 98 ("[W]e [are] []sympathetic to the plight of the [plaintiff]," but "New Jersey law provides a remedy for breach of contract, and we believe such an action, rather than a lawsuit under the Clayton Act, is the [plaintiff's] appropriate recourse.").

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION                    20

had an antitrust injury flowing from the conduct of the rug importers/wholesalers was because the brokers organized trade shows that offered "an alternative avenue of distribution to that offered by the wholesaler/importers" and the brokers "competed directly with the traditional middlemen—the rug importer/wholesalers." Carpet Group Int'l, 227 F.3d at 77-78. The Third Circuit contrasted the "cross-elasticity of demand between the [rug brokers'] offering and the [wholesalers/importers'] offering" and a suit by a plaintiff (like Ethypharm) who "supplie[s] materials" to a manufacturer put out of business by an antitrust defendant. Id. at 76, 78. Ethypharm is a licensor and product supplier. There is no cross-elasticity of demand between its intellectual property and product sales to its licensee and Abbott's drug sales of TriCor® to wholesalers and retailers.

Because Ethypharm's lost royalties and lost product sales in connection with alleged restraints on Reliant and Oscient are not an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful," Brunswick, 429 U.S. at 489, Ethypharm lacks antitrust standing. See West Penn, 147 F.3d at 265 ("If antitrust injury is not found, further inquiry is unnecessary."). The Court should therefore dismiss Ethypharm's three federal-antitrust claims—as well as its common-law claim for restraint of trade, see Point "F" below—on this ground alone.

**D.    Even If Ethypharm Has an Antitrust Injury, It Still Does Not Have Antitrust Standing**

Even if the Court were to conclude that Ethypharm pleads facts sufficient to establish an antitrust injury, Ethypharm would still lack antitrust standing under the second step of the Third Circuit's two-step test. Both steps must be satisfied by Ethypharm. See Barton & Pittinos, 118 F.3d at 182 ("Even a plaintiff who can show antitrust injury may lack antitrust standing, because the remaining AGC factors may weigh against allowing him or her to sue

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.    REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

under the antitrust laws."); see also Cargill, Inc. v. Monfort of Colo., Inc., 479 U.S. 104, 110 n.5

(1986) (hereinafter "Cargill") ("A showing of antitrust injury is necessary, but not always

sufficient, to establish standing under § 4 [of the Clayton Act], because a party may have

suffered antitrust injury but may not be a proper party under § 4 for other reasons.").

**1.    Ethypharm's Injury, If Any, Was Not Caused
by the Alleged Antitrust Violations**

The first additional AGC factor concerns causation and intent to cause the alleged

harm. A conclusory allegation of "intent" to harm Ethypharm cannot negate the restraints

actually alleged. In this case, there is no allegation that Reliant agreed to reduce its purchases

from Ethypharm or agreed to reduce its sales of Antara. Indeed, the alleged restraint (the

Fournier/Abbott-Reliant Settlement Agreement) [REDACTED]

[REDACTED]

In addition, there was no "direct effect" between the antitrust violations allegedly

committed by Abbott and Ethypharm's alleged injury. A "mere causal link" between the alleged

antitrust violation and the alleged antitrust injury will not suffice for antitrust-standing purposes

under AGC. There must be a "direct effect" between the two. West Penn, 147 F.3d at 268

(citing Brunswick, 429 U.S. at 489). The antitrust-standing test requires proof of both but-for

and proximate causation. See Dow Chem. Co. v. Exxon Corp., 30 F. Supp. 2d 673, 695 (D. Del.

1998) (Robinson, J.) (noting, in a RICO action to which "antitrust standing principles apply

equally," that the causation and directness-of-injury factors of AGC "require [the plaintiff] to

demonstrate that the alleged violation was not only the 'but for' cause of plaintiff's injury but also

the proximate cause").

Ethypharm's allegations that the mandatory counterclaims against Reliant and the

subsequent settlement agreement with Reliant directly caused Ethypharm an antitrust injury

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.   REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION

hinge on at least three assumptions: (1) but for patent-infringement counterclaims by Abbott, Reliant would not have entered into the Fournier/Abbott-Reliant Settlement; (2) but for the terms of the Settlement, Reliant would have marketed new fenofibrate products and combination products and/or would have sold the rights to Antara to a company larger than Oscient; and (3) one or both of those assumptions, if true, would have produced greater sales of Antara.

None of these assumptions is supported by the facts alleged. With regard to the first assumption, Ethypharm does not allege that Fournier would not have brought the same counterclaims without Abbott's participation. It cannot be disputed that Fournier owned the patents. See Joint Answer and Counterclaims in <u>Reliant v. Fournier</u> (Brennecke Decl. Ex. F) (D.I. 18) ¶ 88. With regard to the second assumption, Ethypharm has not alleged that Reliant had plans to market new products or combination products; that Reliant sought to sell the rights to Antara to a large company; or that a large company would have purchased those rights.[13] With regard to the third assumption, no facts are alleged in support of greater sales of Antara by Reliant or greater sales of Antara by some acquirer other than Oscient.[14]

Ethypharm cannot ask the Court to assume that Reliant would have marketed new products or combination products. Reliant had no contractual obligation to develop such

---

[13]    Ethypharm alleges that REDACTED
but Ethypharm alleges no more than an expression of interest. Amended Complaint ¶ 87.

[14]    Despite Ethypharm's implication that Oscient would be unable to maintain or increase Antara's market share, Oscient believes Antara is thriving under Oscient's stewardship. See News Release Issued by Oscient Pharmaceuticals Corporation on April 16, 2008, filed as Exhibit 99.1 to Form 8-K with the U.S. Securities and Exchange Commission on April 16, 2008 (Brennecke Decl. Ex. H) (D.I. 20) at p. 1 (reporting that two-thirds of Oscient's expected $18.5-million first-quarter revenue in 2008 derives from sales of Antara, and that "Antara prescriptions increased more than 30% in the first quarter of 2008 compared to the first quarter of 2007 and weekly prescriptions continued to grow to record highs").

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

products with Ethypharm, see pp. 6-7 above, and it would be speculative to assume that Reliant would market such products and then have greater sales of Antara.

Ethypharm also cannot ask the Court simply to assume that Reliant could have reached an agreement to sell the rights to Antara to a company larger than Oscient; to assume further that, if there were such a company, [REDACTED]

[                                                                ]

[                    ] and, finally, to assume that there would have been greater sales of Antara.

Ethypharm erroneously alleges that the Fournier/Abbott-Reliant Settlement "[p]rohibited and/or restrained" Reliant from selling the rights to Antara to one of the pharmaceutical companies specifically identified in the Settlement. Amended Complaint ¶ 88 ("Prohibited and/or restrained by its illegal agreements with Abbott, Reliant was unable to consider the sale of the Antara Rights to companies that could more effectively have marketed Antara through, among other things, the employment of a large sales force, investment capital, and the pursuit of combination products or other fenofibrate formulations.").[15] [REDACTED]

[                                                                ]

[                    ] See Fournier/Abbott-Reliant Settlement (Brennecke Decl. Ex. G) (D.I. 19) at 16 (Section 8(ii)(e)(A)).

---

[15]    See also Amended Complaint ¶ 90 ("But for Abbott's restrictive, anticompetitive agreements with Reliant, Reliant would have been able to sell the Antara Rights to a pharmaceutical company with substantially greater ability and resources than Oscient to promote Antara and market new fenofibrate products including combination products being developed by Ethypharm.").

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION

REDACTED

Reliant chose Oscient, and Ethypharm does not allege that Abbott played any role in that decision. Moreover, Ethypharm does not allege that it failed to consent to Reliant's sale to Oscient. See West Penn, 147 F.3d at 268 (concluding that the "interposition of the . . . actions of the parties—both defendants and plaintiff—interferes with the chain of causation" necessary for antitrust standing); see also Areeda ¶ 351b2 ("It is always difficult to disentangle the impact of an antitrust [violation] from other market forces affecting a victim's fortunes, including the victim's own choices.") (emphasis added).

As the omissions and allegations of the Amended Complaint make clear, both the "intent" and "causal connection" elements of the second AGC factor weigh against Ethypharm's antitrust standing. Abbott's counterclaims are not the "but for" cause of Ethypharm's alleged injuries, because Fournier could have asserted the same counterclaims without Abbott. The Fournier/Abbott-Reliant Settlement is not the "but for" cause of Ethypharm's alleged injuries, because those injuries are based on speculation about new products, combination products and assignment of Reliant's rights to a large company. In addition, the "direct effect" of Abbott's alleged conduct on Ethypharm's alleged injuries is interrupted (a) by Ethypharm's allegation that Reliant decided to sell and (b) by Ethypharm's failure to allege that Ethypharm opposed the sale to Oscient and that Reliant proceeded in breach of the Ethypharm-Reliant License.

**2.    Ethypharm's Injury, If Any, Is Indirect and Incidental**

The third AGC factor requires the Court to evaluate "the directness of the injury" in order to avoid speculative claims. Barton & Pittinos, 118 F.3d at 181. For more than fifty years, courts have answered in the negative the question: "Is a patentee [i.e., Ethypharm] who

has granted to another [i.e., Reliant] an exclusive license for the term of the patent, upon a royalty basis, a 'person . . . injured in his business or property' (within the meaning of Section 4 of the Clayton Act) so as to enable him to recover treble damages for loss of royalties on sales that might have been made by its licensee save for the antitrust violations of defendant [i.e., Abbott]?" Productive Inventions v. Trico Prods. Corp., 224 F.2d 678, 679 (2d Cir. 1955); see also R.C. Dick Geothermal, 890 F.2d at 146 ("What we can say is that after [AGC] a landlord or receiver of royalties does not establish antitrust standing by showing its receipts are down and it is in the area where an antitrust violation produced this result."). The rationale for the negative answer is that the licensor's loss of royalties is an "incidental" harm, and "[t]hose harmed only incidentally by antitrust violations have no standing to sue for treble damages." Productive Inventions, 224 F.2d at 679. The facts of this case are materially indistinguishable from Productive Inventions and other licensor-standing cases and supplier-standing cases.[16]

The Court in Productive Inventions relied principally on a decision that emphasized the distinction between a "right" to and a "hope" for increased royalties. Id. at 679-80 (summarizing district court's "reasoned opinion," which was adopted in full by the Third Circuit, in Harrison v. Paramount Pictures, Inc., 115 F. Supp. 312 (E.D. Pa. 1953), aff'd, 211 F.2d 405 (3d Cir. 1954)). Because licensors, franchisors and landlords have only a hope, not a right, to increased royalties, any financial loss they suffer is necessarily "only incidental to the acts complained of" and therefore not cognizable under the antitrust laws. Productive Inventions, 224 F.2d at 680 (adopting the holding in Harrison).

---

[16]    As Areeda explains, the earlier tests that pre-dated AGC "are based on the same factors emphasized by [AGC]." Areeda ¶ 335d; see also McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 850 (3d Cir. 1996) ("The AGC five-factor framework was an attempt by the Court to synthesize and clarify the confusing collection of the then-extant antitrust-standing rules.").

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION                    26

The same analysis applies here to royalties and supply sales. Reliant had no obligation with regard to new products and combination products and had no obligation to sell the rights to Antara to a large company. Ethypharm could only hope that Reliant, whether by its own efforts or by those of another pharmaceutical company to which Reliant would sell Reliant's rights, would increase Antara sales and purchases of supplies. Ethypharm had no right to increased royalties and no right to increased product sales to its licensee.

### 3. More Direct "Victims" of the Alleged Antitrust Violations Exist

The fourth and fifth AGC factors require a court to consider "the existence of more direct victims of the alleged antitrust violations" and, relatedly, "the potential for duplicative recovery or complex apportionment of damages." Barton & Pittinos, 118 F.3d at 181. As the AGC Court made clear, "[t]he existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general." 459 U.S. at 542. That analysis explains why plaintiffs like Ethypharm are consistently denied antitrust standing. See Areeda ¶ 351b2 ("Standing for the licensor or landlord would, of course, multiply the number of suits. The greater number of suits can lessen the opportunities for settlement and prevent the primarily affected person from controlling the course of the litigation as well as burdening the defendant.").

Assuming there has been unlawful conduct by Abbott, there are more direct "victims" of the allegedly anticompetitive activity. Ethypharm alleges an injury to U.S. consumers. Amended Complaint ¶ 15. Purchasers of TriCor® and others have sued Abbott and Fournier challenging their patent litigations as antitrust violations. See complaint in the States Attorneys General's TriCor Antitrust Action (Brennecke Decl. Ex. C) (D.I. 15 Ex. C), and

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

complaints in the Private Plaintiffs' TriCor Antitrust Actions (Brennecke Decl. Exs. D and E)

(D.I. 16 and D.I. 17). Abbott's customers, direct purchasers and competitors are not hesitant to

challenge Fournier's and Abbott's conduct in the market for marketing and selling fenofibrate

products.

*      *      *

The Court should therefore find that Ethypharm does not have antitrust standing

(even if it finds that Ethypharm has an antitrust injury). All of the remaining factors of the

narrowing passageway of AGC weigh against Ethypharm.

### E.    Ethypharm Also Lacks Antitrust Standing to Seek Injunctive Relief

Ethypharm also lacks antitrust standing to seek injunctive relief under Section 16

of the Clayton Act, 15 U.S.C. § 26.[17] Ethypharm's request for injunctive relief does not lessen its

burden of establishing "directly harmful effects" to it that are "closely related to the violation."

Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 321-22 (3d Cir. 2007) (quoting Alberta Gas

Chems., 826 F.2d at 1240). The alleged injury must still be an "antitrust injury." Cargill, 479

U.S. at 111 (confirming that "under both § 16 and § 4 [of the Clayton Act] the plaintiff must still

allege an injury of the type the antitrust laws were designed to prevent"). For all of the reasons

set forth in Points "C" and "D" above, Ethypharm cannot demonstrate a direct injury that is

closely related to the alleged restraints in the market for marketing and selling fenofibrate

products.

---

[17]     Ethypharm mistakenly refers to 15 U.S.C. § 26 as "Section 16 of the Sherman Act."
Amended Complaint ¶¶ 132, 145 & 205.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.   REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION

F.    **Dismissal of the Sherman Act Claims Should Lead to Dismissal of the Common-Law Restraint-of-Trade Claim**

Ethypharm's lack of antitrust standing requires dismissal of not only its three

federal-antitrust claims ("Counts" 1, 2 and 7), but also its common-law claim for restraint of

trade ("Count" 6). Under Delaware law, restraint of trade is a statutorily codified cause of action

that, by its own terms, must be "construed in harmony with ruling judicial interpretations of

comparable federal antitrust statutes." See 6 Del. § 2113; see also Hammermill Paper Co. v.

Palese, C.A. No. 7128, 1983 WL 19786, at *4 (Del. Ch. June 14, 1983) (noting that the language

of Delaware's restraint-of-trade statute, 6 Del. Code § 2103, and the language of the Sherman

Act, 15 U.S.C. § 1, are "virtually identical," and that "it was the Delaware Legislature's intention

to adopt not only the language but the judicial interpretation and application of the Sherman

Act"). Applying the "ruling judicial interpretations" on Section 4 antitrust standing means that

Ethypharm also lacks standing to pursue its common-law claim for restraint of trade under

Delaware law.

III.    **NONE OF THE REMAINING COMMON-LAW CLAIMS STATES A CLAIM FOR RELIEF**

Ethypharm's three remaining common-law claims also fail to state claims for

relief for numerous reasons.[18] The common-law claims for relief present variations on a single

theme. Under Delaware law, unfair competition requires proof "that the plaintiff has a

reasonable expectancy of entering a valid business relationship, with which the defendant

wrongfully interferes and, thereby, defeats the plaintiff's legitimate expectancy and causes him

harm." Am. Homepatient, Inc. v. Collier, C.A. No. 274-N, 2006 WL 1134170, at *4 (Del. Ch.

---

[18]    Ethypharm alleges unfair competition, tortious interference with contract and tortious interference with prospective economic advantage ("Counts" 3, 4 and 5 of the Amended Complaint, respectively).

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

Apr. 19, 2006). Tortious interference with prospective economic advantage requires proof of "(i) the existence of a reasonable probability of a business expectancy; (ii) the interferer's knowledge of the expectancy; (iii) intentional interference that induces or causes termination of the business expectancy; and (iv) damages." Id. at *5. Tortious interference with contract requires proof of "(i) the existence of a valid contract; (ii) the interferer's knowledge of the contract; (iii) intentional interference that induces or causes a breach of the contract; and (iv) damages." Id. at *4.[19]

In light of the similarity in the proof that is required, Delaware courts often evaluate these claims together. See, e.g., id. Nothing in Ethypharm's Amended Complaint requires a different approach in this case. Indeed, Ethypharm's allegations in support of two of these claims—the unfair-competition and tortious-interference-with-prospective-economic-advantage claims—are virtually identical. Compare Amended Complaint ¶¶ 146-158 with ¶¶ 172-183.

---

[19]    The Third Circuit has made clear that "a federal district court adjudicating a state law issue must apply the law of the forum state, including the state's choice-of-law rules." Sys. Operations, Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131, 1136 (3d Cir. 1977). This principle holds true for both diversity-jurisdiction and federal-question/pendent-jurisdiction cases. Id. "Delaware courts apply the 'most significant relationship test' of the Second Restatement of Conflicts." Integral Res. (PVT) Ltd. v. Istil Group, Inc., No. 03-904 (GMS), 2004 WL 2758672, at *2 (D. Del. Dec. 2, 2004) (citing Travelers Indem. Co. v. Lake, 594 A.2d 38, 47 (Del. 1991)), aff'd, 155 F. App'x 69 (3d Cir. 2005). Under this test, Delaware law governs Ethypharm's state-law claims because, among other things, the allegedly unlawful compulsory counterclaims against Reliant and the allegedly unlawful settlement of Reliant's litigation concern the declaratory-judgment action that Reliant commenced against Fournier and Abbott in Delaware.

In any event, the Court need not decide the choice-of-law question because "the law of tortious interference with contract and tortious interference with prospective contractual relations is essentially the same" in most states. Cryovac Inc. v. Pechiney Plastic Packaging, Inc., 430 F. Supp. 2d 346, 357 n.11 (D. Del. 2006).

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

A.    **Reliant Did Not Breach the
      Ethypharm-Reliant License**

The terms of the Ethypharm-Reliant License and the Fournier/Abbott-Reliant

Settlement contradict the allegation that Reliant breached its implied covenant of good faith and

fair dealing to Ethypharm by entering into the Fournier/Abbott-Reliant Settlement.

Reliant had no duties with regard to selling its business or with regard to new

products and combination products. The Ethypharm-Reliant License explicitly states that

"Reliant shall have the right, but not the obligation," to market and develop Antara in

combination with other drugs. Ethypharm-Reliant License (Brennecke Decl. Ex. B) (D.I. 15 Ex.

B) at p. 37 (Section 6.10) ("Development of Combination Products"). In light of this explicit

non-obligation, Reliant cannot be said to have breached the implied covenant of good faith and

fair dealing with regard to combination products. See, e.g., Chamison v. HealthTrust, Inc., 735

A.2d 912, 921 (Del. Ch. 1999) ("The implied covenant cannot contravene the parties' express

agreement and cannot be used to forge a new agreement beyond the scope of the written

contract."), aff'd, 748 A.2d 407 (Del. 2000).

The same is true with regard to new fenofibrate products. Reliant had an "option"

to develop new products—not an obligation. See Ethypharm-Reliant License (Brennecke Decl.

Ex. B) (D.I. 15 Ex. B) at p. 14 (Section 2.1). REDACTED

See Fournier/Abbott-Reliant

Settlement (Brennecke Decl. Ex. G) (D.I. 19) at p. 7 (Section 1(o)).

There is also no requirement in the Ethypharm-Reliant License as to the type of

company to which Reliant could sell its rights to Antara. Ethypharm cannot allege that Reliant

was required to sell to a company "larger" than Oscient.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

**B.    Ethypharm Has Not Alleged a Reasonable**
**Probability of a Business Expectancy**

Both the unfair-competition claim and the tortious-interference-with-prospective-

economic-advantage claim require a "reasonable" expectation or probability of a business

relationship.  A "plaintiff must be able to cite 'actual or potential contracts.'"  Lucent Info. Mgmt.

v. Lucent Techs., 5 F. Supp. 2d 238, 243 (D. Del. 1998) (quoting Kirkwood Kin Corp. v. Dunkin'

Donuts, Inc., C.A. No. 94C-03-189, 1995 WL 411319, at *9 (Del. Super. Ct. June 30, 1995)),

aff'd, 186 F.3d 311 (3d Cir. 1999).  Ethypharm cannot establish a reasonable expectation or

probability on the alleged facts.

There is no allegation of contract discussions between Reliant and any of the

companies that Ethypharm prefers over Oscient.  There is only a vague allegation of expressions

of interest.  See Amended Complaint ¶ 87.  A broad claim about a plaintiff's potential

expectations is insufficient.  Lucent, 5 F. Supp. 2d at 243.

Ethypharm also cannot supply the "knowledge of the expectancy" element of a

tortious-interference-with-prospective-economic-advantage claim.  Am. Homepatient, 2006 WL

1134170, at *5.  There is no factual allegation to support a conclusory assertion that Abbott had

knowledge of Ethypharm's expectation that Reliant would allegedly increase Antara's market

share or had knowledge of Ethypharm's expectation that Reliant would sell to a large company

that would allegedly increase Antara's market share.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.   REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

**C.     Abbott's Alleged Conduct Was Not the
         Proximate Cause of Ethypharm's Alleged
         Injuries**

All three of Ethypharm's state-law claims also fail for one of the same reasons

that Ethypharm lacks antitrust standing—the absence of causation.[20]  Central to each of

Ethypharm's claims is allegedly wrongful conduct that is the proximate—or "but for"—cause of

the injuries allegedly suffered.  See, e.g., Commerce Nat'l Ins. Servs. Inc. v. Buchler, No. Civ.

02-037-SLR, 2003 WL 22953225, at *5 (D. Del. Dec. 10, 2003) (granting defendant's motion for

summary judgment on a tortious-interference-with-prospective-economic-advantage claim under

Delaware law because "plaintiff has failed to identify any prospective business relations that, but

for defendants' conduct, would have become clients"), aff'd, 120 F. App'x 414 (3d Cir. 2004);

Merck & Co. v. SmithKline Beecham Pharms. Co., No. C.A. 15443-NC, 1999 WL 669354, at

*45-46 (Del. Ch. Aug. 5, 1999) ("To establish tortious interference with either an existing

contract or prospective contractual relation, a party must demonstrate . . . an intentional act that

is a significant factor in causing a breach of that contract or termination of that prospective

contractual relationship . . . i.e., the proximate cause of the claimed damage."), aff'd, 766 A.2d

442 (Del. 2000); DeBonaventura v. Nationwide Mut. Ins. Co., 428 A.2d 1151, 1153 (Del. 1981)

(listing "proximate cause" as the third of four elements of a cause of action for tortious

interference with prospective economic advantage).

Delaware's Supreme Court has adopted "a traditional 'but for' definition of

proximate cause"—namely, that "[p]roximate cause exists if a natural and continuous sequence,

unbroken by any efficient intervening cause, produces the injury and without which the result

---

[20]     The Third Circuit has noted that the causation inquiry under AGC is "akin to the
determination of 'proximate cause' in the negligence context." McCarthy, 80 F.3d at 851 n.13.
Abbott's causation arguments set forth in Point "II.D" above are equally applicable to
Ethypharm's common-law claims.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.   REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

33

would not have occurred." <u>Wilmington Country Club v. Cowee</u>, 747 A.2d 1087, 1097 (Del.

2000). In light of this definition, Ethypharm does not allege facts sufficient to establish that

Abbott's actions proximately defeated Ethypharm's expectations or proximately caused Reliant to

breach the Ethypharm-Reliant License.

> 1.    **Unfair Competition and Tortious**
> **Interference with Prospective**
> **Economic Advantage**

With regard to Ethypharm's virtually identical claims for unfair competition and

tortious interference with prospective economic advantage, Abbott did not cause Ethypharm's

business expectations to be defeated. Those two alleged expectations are (1) "that Reliant, by

means of its corporate expertise, experience and resources, would be able to increase Antara's

market share and extend the Antara product line, including by means of marketing new

fenofibrate formulations and combination products containing fenofibrate developed by

Ethypharm," Amended Complaint ¶ 147; <u>see also</u> <u>id.</u> ¶ 173, and (2) "that if Reliant elected to

assign its rights to Antara to another pharmaceutical company, it would do so to a company that

had the corporate expertise and resources to increase Antara's market share and finance the

extension of the Antara product line, including by means of marketing new fenofibrate

formulations and combination products containing fenofibrate developed by Ethypharm." <u>Id.</u>

¶ 148; <u>see also</u> <u>id.</u> ¶ 174.

Reliant defeated Ethypharm's first alleged expectation by deciding to sell the

rights to Antara. There is no allegation that Abbott played any role in Reliant's decision.

Reliant's independent decision not to retain the rights—and therefore not to use "its corporate

expertise, experience and resources" to increase Antara's market share—is an "efficient

intervening cause" that breaks any "natural and continuous sequence" that might have linked

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.    REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION      34

Abbott to the harm allegedly suffered by Ethypharm. See Cowee, 747 A.2d at 1097 (discussing

the proximate-cause analysis in the analogous context of negligence).

Reliant also defeated Ethypharm's second alleged expectation by choosing to sell

to Oscient. Once Reliant made its independent decision to sell, Abbott did not prevent a sale to

any company of Reliant's choosing. REDACTED

Ethypharm's own conduct also played a chain-breaking role. Ethypharm

apparently consented to the sale by Reliant to Oscient. The Ethypharm-Reliant License requires

Ethypharm's consent. Ethypharm-Reliant License (Brennecke Decl. Ex. B) (D.I. 15 Ex. B) at p.

61 (Section 14.1(b)); see also Amended Complaint ¶ 84 ("[A] top official of Reliant told a top

official of Ethypharm that Reliant was contemplating the sale of the Antara Rights to another

pharmaceutical company."). There is no allegation that Reliant proceeded over Ethypharm's

objection to the "contemplat[ed]" sale.

### 2.    Tortious Interference with Contract

Ethypharm alleges that Reliant breached the implied covenant of good faith and

fair dealing of the Ethypharm-Reliant License by entering into the Fournier/Abbott-Reliant

Settlement. Amended Complaint ¶¶ 164, 168. No other breaches of the Ethypharm-Reliant

License are alleged in the Complaint.

No factual allegation supports the conclusory allegation that Abbott caused or

induced a breach of the Ethypharm-Reliant License. The Fournier/Abbott-Reliant Settlement

flows from Reliant's commencement of suit against Fournier and Abbott and Reliant's decision to

settle Reliant's suit. Reliant settled compulsory counterclaims that Ethypharm alleges were

"sham" allegations of infringement by Reliant and "sham" assertions of unenforceable patents.

Amended Complaint ¶¶ 16, 23, 98 & 99. But after factual discovery, Reliant chose to settle the

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION

allegations.  Any breach of the Ethypharm-Reliant License was caused by Reliant's decision to settle—not by the assertions of the counterclaims.

*          *          *

None of Ethypharm's common-law claims satisfies Delaware's causation requirement.  The tortious-interference-with-contract claim fails to allege facts to establish Reliant's breach of the Ethypharm-Reliant License.  The unfair-competition and tortious-interference-with-prospective-economic-advantage claims do not allege a reasonable expectancy by Ethypharm or a factual basis to support a conclusory assertion of Abbott's knowledge of the alleged expectancy.  All of the claims should be dismissed.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.   REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.
REDACTED PUBLIC VERSION

## CONCLUSION

For all the foregoing reasons, the Court should dismiss Ethypharm's Amended

Complaint in its entirety.

Dated: August 5, 2008

Redacted Filing Date: August 8, 2008

BOUCHARD MARGULES &
  FRIEDLANDER, P.A.

/s/ David J. Margules
David J. Margules (#2254)
Sean M. Brennecke (#4686)
222 Delaware Avenue
Wilmington, DE 19801
(302) 573-3500
dmargules@bmf-law.com

OF COUNSEL:

William F. Cavanaugh, Jr.
Thomas W. Pippert
Benjamin S. Litman
PATTERSON BELKNAP WEBB &
  TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
*Attorneys for Abbott Laboratories*

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

REDACTED PUBLIC VERSION