IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ETHYPHARM S.A. FRANCE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 08-126-SLR-MPT |
| | : | |
| ABBOTT LABORATORIES, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM ORDER REGARDING DISCOVERY MATTERS

### I.   INTRODUCTION

This is an antitrust case.  On March 3, 2008, Ethypharm S.A. France

("Ethypharm") filed this action against Abbott Laboratories ("Abbott").[1]  Both parties are

manufacturers of pharmaceutical drugs and compete in the development and

manufacture of fenofibrate products for marketing and sale in the United States.  Abbott

is alleged to have interfered with Ethypharm's licensee's marketing and selling of its

fenofibrate product in the United States.  Ethypharm asserts antitrust claims under

sections 1 and 2 of the Sherman Act as well as several common law claims and a claim

for sham litigation.  Currently before the court is Ethypharm's "Motion to Proceed on

Certain Discovery Matters Directly under the Federal Rules of Civil Procedure Rather

than under the Hague Convention."[2]

### II.   BACKGROUND

Ethypharm is a privately-held French pharmaceutical company that develops,

---

[1] D.I. 1.  On July 9, 2009, Ethypharm filed an amended complaint.  D.I. 26.
[2] D.I. 118.

formulates, and manufactures numerous drug products, including a brand name fenofibrate product called Antara.[3]  Because Ethypharm does not directly sell and distribute Antara in the United States, it entered into an exclusive license agreement with U.S. pharmaceutical company Reliant Pharmaceuticals, Inc. ("Reliant") to market and sell Antara in this country.[4]

Abbott is a U.S. pharmaceutical company that manufactures, markets, and sells its own brand name fenofibrate product, TriCor, in the United States.[5]  Laboratoires Fournier ("Fournier"), headquartered in France, licensed to Abbott the exclusive right to sell TriCor in the United States.[6]  Abbott acquired Fournier from Solvay Pharmaceuticals S.A. ("Solvay") in February 2010.[7]

In 2001, Ethypharm and Reliant entered into a Development, License and Supply Agreement, an exclusive license agreement.  Under that agreement, Reliant licenced Ethypharm's underlying patent and intellectual property rights and agreed to obtain FDA approval for Antara and market the drug in the U.S.[8]

In February 2004, as part of the regulatory process seeking FDA approval of Antara, Reliant provided notice of a regulatory filing and certification to Abbott.  Abbott's written response was "a thinly-veiled threat to bring suit."[9]  Reliant reacted to that threat by filing an action in this court on June 1, 2004, captioned *Reliant Pharmaceuticals, Inc.*

---

[3] D.I. 26 at ¶¶ 4, 6, 37, 53.
[4] *Id.* at ¶¶ 5, 6.
[5] *Id.* at ¶ 2.
[6] *Id.*
[7] Prior to its acquisition by Abbott, Fournier was an indirect subsidiary of Solvay.  D.I. 126 (Bonke Decl.) at ¶¶ 3-4.
[8] D.I. 26 at ¶¶ 5, 6.
[9] *Id.* at ¶ 99.

2

*v. Abbott Laboratories et al.*, Case No. 04-cv-00350-KAJ (the "*Reliant* litigation"), against Abbott and Fournier seeking a declaration of non-infringement and that the Fournier patents under which Abbott was manufacturing TriCor were unenforceable due to inequitable conduct.[10]  Abbott filed a counterclaim for patent infringement.[11]  In this action, Ethypharm alleges that the counterclaim was a sham to further restrain Antara's sales prospects in the U.S.[12]

Antara received FDA approval in late 2004 and Reliant began sales and distribution of the drug in early 2005.[13]  The *Reliant* litigation was settled in April 2006 by a series of agreements, including a "Settlement Term Sheet" (the "STS").[14]  The terms of the STS form the basis of Ethypharm's antitrust allegations in this action.[15] Under the STS, Reliant was permitted to sell Antara without risk of infringement.  In exchange, however, Reliant was not permitted to sell the U.S. rights to Antara to a specific list of pharmaceutical companies, was assessed a 7% royalty on Antara sales, and was restricted or delayed in its ability to extend the Antara product line by launching new fenofibrate formulations, including combination products, in this country.[16]

In mid-2006, Reliant sold its exclusive U.S. rights to the Antara product.[17] Because of restrictions in its agreements with Abbott, however, Reliant sold its rights to Oscient Pharmaceutical Company ("Oscient"), described in the amended complaint as

---

[10] *Id.*

[11] *Id.* at ¶ 115; D.I. 128 (Conrad Decl.), Ex. B (Civ. No. 04-cv-00350-KAJ, D.I. 45 (Joint Answer and Counterclaims)).

[12] D.I. 26 at ¶ 119.

[13] *Id.* at ¶¶ 7, 102.

[14] The *Reliant* litigation was dismissed by stipulation of the parties on April 19, 2006.  *See* Civ. No. 04-cv-00350-KAJ, D.I. 110.

[15] *See, e.g.*, D.I. 1 at ¶ 118.

[16] D.I. 26 at ¶¶ 10, 71.

[17] *Id.* at ¶ 11.

3

a small company with limited resources.[18]  Ethypharm states that Oscient subsequently

filed for bankruptcy.[19]

On September 28, 2009, Solvay announced that it had entered into an

agreement to be acquired by Abbott.[20]  That transaction (the "Solvay transaction")

closed on February 15, 2010.[21]  Ethypharm maintains that as a result of the acquisition

of Solvay and its subsidiaries, including Fournier, Abbott has sufficient legal control over

Fournier such that Ethypharm is entitled to certain discovery pursuant to the Federal

Rules of Civil Procedure, rather than having to pursue that information through the

procedures of the Hague Convention.

In this action, Ethypharm asserts antitrust claims under sections 1 and 2 of the

Sherman Act and common law claims.  Additionally, Ethypharm brings a claim of sham

litigation that relates to Abbott and Fournier's assertion of an infringement counterclaim

against Ethypharm's licensee in the *Reliant* litigation.  In connection with these claims,

Ethypharm asserts that Abbott, in concert with Fournier, engaged in inequitable conduct

with respect to certain TriCor-related patents.

According to Ethypharm, among Abbott's defenses in this case is the assertion

that the agreements between Abbott, Fournier, and Reliant represented the settlement

of legitimate patent infringement claims.[22]  In addition, Abbott asserts that Ethypharm

---

[18] D.I. 26 at ¶ 12.

[19] D.I. 119 at 4.

[20] *Id.*, Ex. D.

[21] D.I. 126 at ¶ 3 ("On or around February 15, 2010, Abbott Laboratories acquired all of the stock in Solvay Pharmaceuticals SA ('Solvay'), a Belgian company that was the direct or indirect parent to a number of subsidiary companies . . . .  In connection with that acquisition, Abbott Laboratories became the indirect parent of many of Solvay's subsidiaries.").

[22] *See* D.I. 42 ¶ 76; D.I. 95 at 17-18.

4

previously settled the claims raised in the Amended Complaint in the context of a 2005 settlement between Fournier and Ethypharm.[23]

## III.   POSITIONS OF THE PARTIES

Though its motion, Ethypharm seeks an order from this court requiring Abbott to: (1) produce a witness pursuant to Fed. R. Civ. P. 30(b)(6) prepared to testify with knowledge of both Abbott and certain of its wholly-owned subsidiaries and/or affiliates located overseas, including Fournier;[24] and (2) produce for deposition certain current employees of Abbott's foreign subsidiaries or affiliates, including Fournier, pursuant to Fed. R. Civ. P. 30.[25] "Under the Federal Rules of Civil Procedure [and Third Circuit] jurisprudence, district courts have broad discretion to manage discovery."[26]

Ethypharm frames the issue presented by its motion as "whether Abbott has 'control' over information in the possession of its wholly-owned foreign subsidiaries (including Fournier), such that Abbott is required to produce certain witnesses and Rule 30(b)(6) testimony pursuant to the Federal Rules of Civil Procedure."[27]  Ethypharm

---

[23] D.I. 42 at 22, Affirmative Defense No. 12.

[24] Ethypharm represents that the anticipated topics for a Rule 30(b)(6) deposition include the alleged anticompetitive agreements at issue in this case, the testing of certain fenofibrate technology in the context of the infringement litigation, the alleged inequitable conduct in connection with the TriCor patents, the alleged sham litigation, and the settlement agreement between Ethypharm and Fournier in 2005 that Abbott asserts as a defense to this litigation. Additionally, Ethypharm would seek information regarding the document destruction procedures, document collection efforts, and privilege logs of Abbott's subsidiary in light of Fournier's failure to provide any non-privileged documents from certain custodians. D.I. 119 at 16.

[25] In its opening brief, Ethypharm states that it seeks to depose Frederic Cren, a current Fournier employee, and that it may seek to depose other current employees of Abbott-affiliated entities, identifying Michel Hubert of Abbott Products SAS, Frederic Jacotot of Abbott Products Operations AG, and Susan Coles of Fournier. D.I. 119 at 19 n.4. In its reply brief, however, Ethypharm states that it "identified a single, current overseas employee that it wishes to depose–Frederic Cren" and reiterates that it "has not yet made a determination as to whether it needs to depose" those other three individuals. D.I. 129 at 9 & 9 n.4.

[26] *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995).

[27] D.I. 119 at 2.

answers its question in the affirmative by pointing to evidence purporting to confirm Abbott's legal control over Fournier. According to Ethypharm, because Abbott allegedly has the legal right to obtain the discoverable information at issue as a result of its acquisition of Fournier, Abbott has the requisite control of Fournier and must produce the information sought by Ethypharm under the Federal Rules of Civil Procedure, rather than requiring Ethypharm to seek that information pursuant to the Hague Convention.

Abbott contends the issue is not whether Ethypharm may take depositions under the Federal Rules of Civil Procedure or must take them under the Hague Convention. Instead, Abbott maintains that the issue is "whether either of the two procedures for compelling depositions that exist under the federal rules–a subpoena under Rule 45 or a notice under Rules 30(b) and 37(d)(1)(A)(i)–can be used here to compel the deposition of the individuals Ethypharm has identified."[28] Abbott answers its question in the negative. It contends that the foreign nationals at issue are not asserted to be subject to the subpoena power of United States courts, have not been served with deposition subpoenas, and are not asserted by Ethypharm to be officers, directors, or managing agents of any party to this action. Because Ethypharm does not set forth any other provision of the Federal Rules under which it contends that the depositions it seeks may be compelled, Abbott maintains that Ethypharm's motion should be denied.

## IV. DISCUSSION

Ethypharm argues that as a result of Abbott's acquisition of Fournier, Abbott has legal control over Fournier and, consequently, is required to provide the information

---

[28] D.I. 125 at 1.

sought by Ethypharm's motion pursuant to the Federal Rules of Civil Procedure.  In the Third Circuit, control is defined as the legal right to obtain discoverable information on demand.[29]  Based on the following facts, Ethypharm argues that Abbott meets that control requirement.

A.    Abbott's Control over Fournier

Ethypharm contends that certain representations by Abbott's counsel, Abbott's SEC filings, a press release and presentation by Solvay, and Abbott's post-acquisition control over Fournier's discovery in this case demonstrate Abbott's legal control over Fournier.

Ethypharm first cites representations by Abbott's counsel during a May 17, 2010 teleconference with the court that Fournier had been acquired by Abbott and was now a wholly-owned indirect subsidiary of Abbott.[30]  These representations were confirmed in the Declaration of Michele Bonke, submitted in conjunction with Abbott's opposition to Ethypharm's motion, detailing the chain of intermediate corporations through which Fournier is owned.[31]

---

[29] See Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue, 839 F.2d 131, 140 (3d Cir. 1988).

[30] D.I. 95 at 16:1-5 (Teleconference Tr., May 17, 2010) ("Fournier . . . is an indirect subsidiary in the sense that there are companies in between Abbott Labs and Fournier, but substantially what was Fournier Pharmaceuticals is now, through the chain of companies, owned by Abbott."); id. at 26:17-18 ("[I]t was Solvay that owned Fournier and that sold Fournier to Abbott."); id. at 27:21-25 ("There is a Solvay parent, a conglomerate and one arm of that, I think is the best way I understand it or could describe it came to Abbott, and that is the pharmaceutical arm with I think the most significant entity or entities being Fournier entities.").

[31] D.I. 126 at ¶ 3 ("On or around February 15, 2010, Abbott Laboratories acquired all of the stock in Solvay Pharmaceuticals S.A. ('Solvay'), a Belgian company that was the direct or indirect parent to a number of subsidiary companies . . . .  In connection with that acquisition, Abbott Laboratories became the indirect parent of many of Solvay's subsidiaries."); id. at ¶ 4 ("Laboratories Fournier SA was one of the Solvay subsidiaries of which Abbott became the indirect parent as a result of the February 15, 2010 acquisition.  At the time of the acquisition, Laboratories Fournier SA was an indirect subsidiary of Solvay through the following chain of intermediate corporations: (a) Solvay was the direct parent of Sodufa BV, an entity organized under the laws of and with its principal place of business in the Netherlands; (b) Sodufa BV was the direct parent of Vivasol SNC, an entity organized under the laws of and with its

7

Next, Ethypharm points to Abbott's SEC filings as demonstrating its control over

certain Solvay entities, including Fournier, in Europe. Under "Business Acquisitions" on

Abbott's Form 10-Q for the quarterly period ended March 31, 2010, the company noted

its February 2010 acquisition of Solvay's pharmaceuticals business and that "Abbott

acquired control of this business on February 15, 2010 and the financial results of the

acquired operations are included in these financial statements beginning on that

date."[32] Ethypharm also states that the financial results of the entities acquired in the

Solvay transaction were included in Abbott's consolidated financial statements in that

filing. The provisions of the Stock and Asset Purchase Agreement (the "Purchase

Agreement"), filed as an exhibit to Abbott's Form 10-Q for the quarterly period ended

September 30, 2009, purportedly demonstrates the scope of the legal control that

Abbott holds over the entities acquired in the Solvay transaction. The Purchase

Agreement recites that Abbott acquired legal control over all of Fournier's intellectual

property, patents, and business information relating to TriCor products sold in the U.S.

as a result of the acquisition.[33]

Ethypharm also contends that Abbott's control over Fournier is shown by

Abbott's conduct with respect to Fournier's discovery after it acquired that company.

_____

principal place of business in France; (c) Vivasol SNC was the direct parent of Fournier Industrie et Sante, an entity organized under the laws of and with its principal place of business in France; and (d) Fournier Industrie et Sante was the direct parent of Fournier, an entity organized under the laws of and with its principal place of business in France.").

[32] D.I. 119, Ex. A (Abbott Laboratories, Quarterly Report (Form 10-Q), at 9 (May 4, 2010)).

[33] *See id.*, Ex. B (Abbott Laboratories, Quarterly Report (Form 10-Q), Ex. 2.1 at Ex. B (May 4, 2010)) (listing under "Acquired Assets," "all right, title and interest of the Asset Sellers in the Intellectual Property listed on Schedule 1.1(a) and any other Intellectual Property used or held for use primarily in the Business"); *id.*, Ex. B at 43 (reciting under Section 3.13, titled "Intellectual Property," that Abbott acquired "all Patents that are owned or co-owned by any of the Sold Companies," as well as "all Patents claiming global products or global projects that are licensed in or licensed out (both exclusively or non-exclusively) by any of the Sold Companies").

Prior to Abbott's acquisition of Fournier, Ethypharm served Fournier with a third-party subpoena for documents under Fed. R. Civ. P. 45. Fournier's then counsel, Arnold & Porter LLP ("Arnold & Porter"), accepted service of the subpoena on behalf of the company.[34] In December 2009, Arnold & Porter represented to Ethypharm that Fournier's document review was still in progress and that "Fournier will provide a letter with its production that clearly explains what was searched for, in whose files, and what its being produced."[35] Ethypharm states that Fournier's attorneys did not meet that obligation.

In a May 13, 2010 letter to the court, and during the May 17, 2010 teleconference with the court, it was reported that after Abbott's February 2010 acquisition of Fournier, Arnold & Porter ceased communication with Ethypharm and did not produce the documents under subpoena.[36] Ethypharm asserts that instead of Arnold & Porter producing Fournier's documents to Ethypharm, Arnold & Porter turned over potentially responsive documents to Abbott's attorneys, Arnold & Porter was terminated as Fournier's attorneys, and Abbott asserted legal control over Fournier's discovery obligation.[37] Ethypharm states that, subsequently, Abbott's attorneys

---

[34] *Id.*, Ex. F (E-mail from James Cooper, former counsel to Fournier, to Shawn Naunton, counsel to Ethypharm (Sept. 14, 2009, 11:14 AM)) (stating that Arnold & Porter had been authorized by Fournier to accept service of Ethypharm's subpoena).

[35] *Id.*, Ex. G (E-mail from Sonia Pfaffenroth, former counsel to Fournier, to Shawn Naunton, counsel to Ethypharm (Dec. 8, 2009, 10:17 AM)).

[36] D.I. 95 at 5:20-8:6; D.I. 119, Ex. H (letter from Gregory Williams, counsel to Ethypharm, to Magistrate Judge Mary Part Thynge, at 2-3 (May 13, 2010)).

[37] *See* D.I. 119, Ex. I (Letter from James Cooper, former counsel to Fournier, to Stuart Senator, counsel to Abbott (May 13, 2010)) ("Arnold & Porter completed its review for privilege and responsiveness of the documents collected from the [Fournier] files of Ms. Coles and Mr. Cren before the Abbott purchase of Fournier closed. . . . Arnold & Porter forwarded non-privileged, responsive documents from the files of Ms. Coles and Mr. Cren to Patterson Belknap [counsel of record for Abbott] when the sale of Fournier closed and Arnold & Porter was replaced as counsel."); *Id.*, Ex. J (Letter from Mark Conrad, counsel to Abbott, to Magistrate Judge Mary Pat Thynge, at 2 (May 14, 2010)) ("In the second half of February 2010,

9

exercised complete control over Fournier's document production, Fournier's remaining production issues, and Fournier's privilege determinations and any resulting privilege disputes. For instance, Ethypharm cites Abbott's May 14, 2010 letter to the court as demonstrating that Abbott–not Fournier–would control negotiations regarding additional document discovery from Fournier when Abbott wrote "on behalf of defendant Abbott Laboratories," that "[t]his letter sets forth the steps Fournier took, and Abbott continues to take, in their attempt to ensure a [Fournier] production that is fully satisfactory to the needs of this case."[38] Ethypharm states that counsel of record for Abbott negotiated and implemented the reconstruction of Fournier's backup tapes, the review of records from additional Fourier custodians, the use of additional search terms for review of Fournier documents, and Fournier privilege logs. According to Ethypharm, this demonstrates that Abbott not only controls Fournier for the purposes of discovery, but that Abbott has exercised its control over Fournier where doing so purportedly advanced Abbott's strategic interests.

Ethypharm additionally contends that Fournier employees are employees of Abbott as a result of the Solvay transaction. In support of that contention, Ethypharm points to a September 28, 2009 Solvay presentation, entitled "Strategic refocus, Pharmaceuticals divestment" which stated that "[a]ll Pharmaceuticals Sector employees

---

before Arnold & Porter had finished its review and production of these Fournier documents, substantially all of Fournier's business was acquired by Abbott. Arnold & Porter then turned over to Abbott's counsel documents of the four key custodians that Fournier had identified as likely to possess material responsive to the subpoena.").

[38] *Id.*, Ex. J. Ethypharm also points to the statement of Abbott's counsel during the May 17 teleconference that "[a]gain, if there is something that [Ethypharm] think[s] is insufficient, lets invite Ethypharm and Abbott's counsel to sit down and talk about that in the context of the documents and show us what there is" as demonstrating Abbott's control over Fournier and its responses to Ethypharm's subpoena. D.I. 95 at 20:10-13.

will be transferred to Abbott in accordance with applicable legislation"[39] and Solvay's

press release of that same date that reported "the transaction provides for the transfer

of all employees of the pharmaceutical business [to Abbott] with their current

employment conditions . . . ."[40]  Ethypharm also maintains that a recent report that

Abbott intends to eliminate 3,000 jobs, primarily by terminating European employees,

as part of a restructuring plan following the Solvay transaction offers additional

confirmation of Abbott's legal control over the employees of its wholly-owned foreign

subsidiaries.[41]

      Ethypharm argues these facts demonstrate Abbott's legal control of Fournier

(including its employees) and that Ethypharm is, therefore, entitled to discovery under

Federal Rules of Civil Procedure 30 and 30(b)(6).

## B.    Ethypharm's Request to Depose Current Fournier Employees

      Ethypharm maintains that litigating corporate parents are deemed to control the

current employees of their subsidiaries and affiliates for deposition purposes.  It argues

that where the litigating corporate parent is based in the U.S. and its wholly-owned

subsidiary is not, the parent's control of the subsidiary's employees renders such

witnesses subject to deposition in the U.S. under the Federal Rules of Civil Procedure,

and obviates the necessity of seeking discovery of these witnesses under the protocols

---

[39] D.I. 119, Ex. C (Solvay Group, *Strategic refocus, Pharmaceuticals divestment*, 8 (Sept. 28, 2009), http://www.solvaypress.com/static/wma/pdf/l/6/5/0/6/20090928_Presentation.pdf).

[40] *Id.*, Ex. D (Press Release, Solvay Group, *Solvay Opts for Strategic Refocus of Activities, Decision to sell Pharmaceuticals Sector to Abbott* (Sept. 28, 2009), http://www.solvaypress.com/static/wma/pdf/l/6/5/0/5/20090928_EN.pdf).

[41] *Id.*, Ex. E (Ben Rooney, *Abbott to cut 3,000 jobs*, CNNMoney.com (Sept. 21, 2009, 5:38 PM), http://money.cnn.com/2010/09/21/news/companies/Abbott_job_cuts/?section=money_latest) (reporting that "Abbott Laboratories said . . . that it will eliminate 3,000 jobs as part of a restructuring plan following its acquisition of Solvay Pharmaceuticals" and that "the job cuts . . . will  be centered in Europe and will primarily impact Solvay employees").

of the Hague Convention.[42]  As noted above, Ethypharm specifically seeks to depose

Frederick Cren.

In the specific section of its opening brief asserting the right to depose Cren,

Ethypharm cites only two cases, neither of which support its position.  First, it cites

*Aerocrine AB v. Apieron, Inc.*[43] as "ordering U.S. deposition of certain foreign witnesses

where the litigating party had the right to obtain their cooperation."[44]  In *Aerocrine*, the

court compelled the deposition of two foreign witnesses to occur in the United States.

Those two individuals, however, "executed an assignment agreement with Aerocrine

regarding [a particular] patent that included the following obligations: 'to testify in any

judicial or administrative proceeding and generally to do everything possible to aid

[Aerocrine] to obtain and enforce said letters Patent in the United States when

requested to do so by [Aerocrine].'"[45]  In granting the motion to compel, the court

reasoned that those individuals:

> are parties to an assignment agreement that *specifically contemplated the
> provision of testimony* for purposes of enforcing the patent rights that were the
> subject of the assignment agreement; it also *specifically references enforcement
> in the United States. . . .*  The inventors' assignment agreements were made
> directly with the current patent-holder, and specifically obligated the inventors to
> testify in any legal proceeding regarding their patents.[46]

Ethypharm has not alleged a contract with Cren, or any other potential deponents, that

similarly bind the witnesses identified in its briefing.

---

[42] D.I. 119 at 18-19.

[43] 267 F.R.D. 105 (D. Del. 2010).

[44] D.I. 119 at 18; *see also id.* at 13 (citing *Aerocrine* in its general discussion of the standard of
"control" as "requiring [a] litigant to produce two foreign non-party inventors for deposition in the U.S. in
light of the litigant's legal right to control their presence").

[45] *Aerocrine*, 267 F.R.D. at 111.

[46] *Id.* at 111-12 (emphasis added).

Ethypharm also quotes the statement from *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.* that "[p]ursuant to Rule 45(a)(1)(C), the test for the production of information sought by a subpoena is whether the information is 'in the possession, custody or control' of the person on whom the subpoena is served"[47] as support for its position. In that case, plaintiff served a subpoena seeking certain documents and deposition testimony from a non-party to the action.[48] There, the court considered whether a non-party domestic subsidiary was required to obtain documents from its non-party foreign parent corporation.[49] It did not discuss a party's ability to depose a foreign employee of a non-party subsidiary of a party to the case.

In its general discussion of the issue of "control," and that issue's importance to its motion, Ethypharm asserts that:

> Regardless of the discovery vehicle used–whether it is a request to produce documents under Fed. R. Civ. P. 34, a request to respond to interrogatories under Fed. R. Civ. P. 33, a request to produce a corporate designee to testify under Fed. R. Civ. P. 30(b)(6) or a request for witness testimony under Fed. R. Civ. P. 30–a party to a lawsuit is required to produce discoverable information within the party's "possession, custody or control."[50]

Ethypharm cites *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*[51] as support for that assertion. That case, however, does *not* provide support for the assertion that "a request for witness testimony *under Fed. R. Civ. P. 30*" must be

---

[47] 233 F.R.D. 143, 145 (D. Del. 2005).

[48] *Id.* at 144.

[49] *Id.* (framing the issue as "whether a non-party, domestic subsidiary corporation is obligated to obtain documents from its foreign parent corporation in response to a subpoena served on the non-party subsidiary in the United States"); *see also id.* at 146 (noting Rule 45's recitation of "designated books, documents or tangible things in the possession, custody or control" of the person being served and discussing "control" with respect to production of documents).

[50] D.I. 119 at 12.

[51] No. 01 CIV. 3016(AGS)(HB), 2002 WL 1835439 (S.D.N.Y. Aug. 8, 2002).

13

complied with when a foreign witness, employed by a non-party subsidiary of the party

to the action, is purportedly under the control of the party.  In *Twentieth Century Fox*,

the plaintiff sought an order permitting an additional deposition beyond the limit

imposed by the court or directing production of a 30(b)(6) witness properly prepared to

testify concerning certain documents.[52]  The court framed the issue as "whether an

entity receiving *a notice of deposition pursuant to Rule 30(b)(6)* is obligated to produce

a witness prepared with the knowledge of both the entity that received the subpoena

and its subsidiaries or affiliates."[53]  The court concluded that:

> the scope of the entity's obligation in responding to a *30(b)(6) notice* is
> identical to its scope in responding to *interrogatories served pursuant to
> Rule 33* or *a document request served pursuant to Rule 34*, namely, it
> must produce a witness prepared to testify with the knowledge of the
> subsidiaries and affiliates if the subsidiaries and affiliates are within its
> control.[54]

The court explicitly stated that "a witness appearing pursuant to a Rule 30(b)(6)

notice has *a unique status and testifies as the entity, not as an individual.* 'A deposition

pursuant to Rule 30(b)(6) is *substantially different from a witness's deposition as an

individual.*'"[55]  A 30(b)(6) witness is "'speaking for the corporation,' and this testimony

must be distinguished from that of a '*mere corporate employee*' whose deposition is not

considered that of the corporation and *whose presence must be obtained by

subpoena.*"[56]  Thus, *Twentieth Century Fox* does not support Ethypharm's request for

testimony pursuant to Fed. R. Civ. P. 30 with regard to Cren, or the other potential

---

[52] *Id.* at *1.

[53] *Id.* at *2 (emphasis added).

[54] *Id.* (emphasis added).

[55] *Id.* (emphasis added) (quoting *Sabre v. First Dominion Capital,* LLC, 01 Civ. 2145(BSJ) (HBP),
2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001)).

[56] *Id.* (emphasis added) (quoting *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C. 1996)).

14

witnesses listed in Ethypharm's briefing.

The statement in *Twentieth Century Fox* that a corporate employee's "presence must be obtained by subpoena" supports Abbott's analysis of the issue. Abbott argues that although Fed. R. Civ. P. 30(a)(1) permits litigants to take the deposition of any person or entity, the federal rules do not authorize the court to compel any such deposition. Rather, Rule 30(a)(1) recites that "attendance may be compelled by subpoena under Rule 45." Rule 45(b)(2) provides for service of a subpoena in the United States. Rule 45(b)(3) provides for service in a foreign country if the subpoena is "directed to a United States national or resident who is in a foreign country."[57] Abbott avers that there is no provision for service of a United States deposition subpoena on a foreign national in a foreign country.

Abbott contends that the only other relevant provision for compelling a deposition is Rule 37(d)(1)(A)(i). Rule 37(d) is titled "Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection." Under this rule, the court may impose sanctions if "a party or a party's officer, director, or managing agent" does not appear for a deposition "after being served with proper notice."[58]

Abbott argues that none of those rules apply here as none of the foreign nationals at issue is contended to be subject to service of a subpoena or have been served with a subpoena to appear for deposition; none is a party to this litigation; and

---

[57] *See also* 28 U.S.C. § 1783 ("A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of *a national or resident of the United States who is in a foreign country* . . . .") (emphasis added).

[58] Fed. R. Civ. P. 37(d)(1)(A)(i).

none is an officer, director, or managing agent of Abbott. The court agrees with Abbott

that there is no textual basis in the federal rules for Ethypharm's argument that the

"control" test is applicable to the court's consideration regarding its request to depose

individual witnesses pursuant to Fed. R. Civ. P. 30.

The court does not agree with Ethypharm's suggestion that as a result of the

Solvay transaction the employees of the acquired entities became employees of Abbott.

To the extent Ethypharm makes that argument,[59] it is based on a mere presentation

and a press release by Solvay noted previously herein.[60] The Abbott press release

announcing certain employee terminations that Ethypharm cites, however, states that

the reductions "will primarily impact *Solvay employees*."[61] Moreover, declarations

submitted by Abbott with its opposition brief aver that after the Solvay transaction, the

"separate corporate status of [the acquired entities] . . . was unaffected . . . and

continue[] to operate as corporate entit[ies] distinct from Abbott Laboratories."[62] Each

of the individuals named as potential deponents by Ethypharm is employed by one of

those separate corporate entities.[63] Because the court is not convinced that the

individuals named by Ethypharm are *Abbott* employees, the court need not consider

Ethypharm's contention that Cren is a "managing agent" of Abbott.[64]

Ethypharm cites one case in which a federal court compelled the depositions of

---

[59] *See, e.g.*, D.I. 129 at 2 ("[T]he current and former Fournier employees that Ethypharm seeks to depose are now also *Abbott* employees.") (emphasis in original).

[60] D.I. 119, Ex. C, D.

[61] *Id.*, Ex. E (emphasis added).

[62] D.I. 126 at ¶¶ 6-7.

[63] D.I. 127 at ¶ 2.

[64] Cren was the only individual about whom Ethypharm enunciated a "managing agent" argument, the specifics of which were first made in its reply brief. *See* D.I. 118 at 8-10.

foreign nationals employed by a foreign affiliate of a party to the litigation, *Alcan International Ltd. v. S.A. Day Manufacturing Co., Inc.*[65] There, the defendant sought deposition testimony of two individuals and document production from an overseas subsidiary of the opposing party.[66] Ethypharm draws the court's attention to the *Alcan* court's statement that:

> the ordinary discovery provisions of the Federal Rules of Civil Procedure, rather than the more complicated procedures of the Hague Convention, generally apply to the discovery of information in the custody or control of a party's foreign affiliate . . . . This is true whether the information or witness is located in a foreign country, or whether the corporate entity from whom the discovery is sought is itself a party to the case.[67]

The court ultimately granted defendant's motion.[68]

Other courts have been unpersuaded by *Alcan*. In *Murata Manufacturing Co. v. Bel Fuse, Inc.*, the court stated that *Alcan* focused "on the fact [that the individual] had direct knowledge about the subject matter at issue. But that is plainly not the test."[69] In *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.* the court noted, citing *Alcan*, that:

> [S]ome courts have required corporations to produce employees of a party's foreign corporate affiliate for deposition. However, as authority for doing so, these courts have expanded the doctrine that corporations may be deemed to have 'custody' or 'control' over documents in the

---

[65] 176 F.R.D. 75 (W.D.N.Y. 1996). Ethypharm cites *Alcan* in its general discussion of control in its opening brief (not in the specific section arguing that it is entitled to a Fed. R. Civ. P. 30 deposition of certain individuals witnesses) and in the section of its reply brief arguing in favor of noticing a Rule 30(b)(6) deposition.

[66] *Id.* at 77-78.

[67] *Id.* at 78 (citations omitted).

[68] *Id.* at 79. Deposition testimony was not compelled for one of the individuals as he was no longer employed by the foreign entity and, therefore, beyond its control. *Id.* at 79 n.2. With regard to the individual whose deposition was ordered, the court merely stated that he could be "relied upon to give deposition testimony respecting the matters involved in the litigation." *Id.* at 79 (emphasis and quotation marks omitted).

[69] 242 F.R.D. 470, 477 (N.D. Ill. 2007) (citing *Alcan*, 176 F.R.D. at 79).

possession of a foreign affiliate for purposes of Rule 34(a)(1) of the
Federal Rules of Civil Procedure.  This Court declines to adopt such an
approach.[70]

Although not citing *Alcan*, the court in *In re Ski Train Fire of November 11, 2000*

*Kaprun Austria* also declined to order the deposition of individuals from a non-party

subsidiary of a litigant.[71]  There, the plaintiffs sought depositions as fact witnesses of

certain employees of the subsidiary based on the argument that they were under

control of the litigant.  The court rejected that request, stating that:

> Unlike the language of Rule 34, Rule 30 of the Federal Rules of Civil
> Procedure does not require a party to litigation to produce persons for
> deposition who are merely alleged to be in the party's control.  Rather, a
> party or any other person can be noticed for deposition, and subpoenaed
> if necessary.  If the person sought for deposition is not within the
> subpoena power of a United States court, then procedures according to
> international treaty must be followed.[72]

The court stated that "[t]here is simply no authority for the proposition that a corporate

party must produce for deposition fact witnesses who are not employed by, and do not

speak for, that party."[73]

This court likewise declines to order the requested depositions, and therefore

denies Ethypharm's motion to compel Fed. R. Civ. P. 30 depositions of Cren, and the

other individuals named in Ethypharm's motion.

## C.    Ethypharm's Request to Depose a Rule 30(b)(6) Witness

Rule 30(b)(6) permits a party to name a corporation or other organization as a

deponent.  The party seeking an organization's testimony "must describe with

---

[70] 2009 U.S. Dist. LEXIS 43435, at *4 n.1 (citing *Alcan*, 176 F.R.D. at 78).
[71] No. MDL 1428(SAS)THK, 2006 WL 1328259 (S.D.N.Y. May 16, 2006).
[72] *Id.* at *9.
[73] 2006 WL 1328259, at *9.

18

reasonable particularity the matters for examination," but the organization is only

required to "testify about information known or reasonably available to the

organization."[74] "The determination of whether information is known or reasonably

available to a corporation requires a fact-specific analysis."[75] The 1970 Advisory

Committee Notes accompanying the introduction of Rule 30(b)(6) recite that the rule

would:

> reduce the difficulties now encountered in determining, prior to the taking
> of a deposition, whether a particular employee or agent is a "managing
> agent." It will curb the "bandying" by which officers or managing agents of
> a corporation are deposed in turn but each disclaims knowledge of facts
> that are clearly known to persons in the organization and thereby to it.
> The provision should also assist organizations which find that an
> unnecessarily large number of their officers and agents are being
> deposed by a party uncertain of who in the organization has knowledge.
> Some courts have held that under the existing rules a corporation should
> not be burdened with choosing which person is to appear for it. This
> burden is not essentially different from that of answering interrogatories
> under Rule 33, and is in any case lighter than that of an examining party
> ignorant of who in the corporation has knowledge.[76]

One court noted that "[t]his comment evinces an intent to shift certain burdens to the

entity that is in a better position to obtain useful information."[77] With respect to Rule

30(b)(6) discovery, "[w]here a company fails to provide sufficient evidence why it would

not have access to the basic information of its affiliate(s), that information is presumed

to be known or reasonably available to the corporation."[78]

---

[74] Fed. R. Civ. P. 30(b)(6).

[75] *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 239 (D. Md. 2010).

[76] Advisory Committee Notes to the 1970 Amendments to Rule 30, subdivision b(6) (citations omitted).

[77] *S.C. Johnson & Son, Inc. v. Dial Corp.*, No. 08 C 4696, 2008 WL 4223659, at *2 (N.D. Ill. Sept. 10, 2008).

[78] *Coryn Group II*, 265 F.R.D. at 239 (citing *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 509 (D.S.D. 2009)).

Abbott makes much of the fact that this lawsuit concerns events that pre-date its February 2010 acquisition of Solvay, and its indirect subsidiary, Fournier. It notes that each of the subjects that Ethypharm would cover in a Rule 30(b)(6) deposition pertain only to events that transpired when Abbott had no ownership interest in Fournier or any other Solvay subsidiary. Those facts are not in dispute. Fournier is, however, now a wholly-owned indirect subsidiary of Abbott and Abbott has not meaningfully contested the evidence set forth by Ethypharm as demonstrating its control over Fournier.[79] Moreover, Abbott has not provided any "evidence why it should not have access to the basic information of its affiliate(s)" since the close of the Solvay transaction.

Abbott argues that "Ethypharm is free to depose *Defendant Abbott Laboratories* . . . under Rule 30(b)(6)" but should not be able to compel "the testimony of foreign nationals whose depositions cannot be obtained under the federal rules."[80] Through its motion, however, Ethypharm *is* seeking to depose *Defendant Abbott Laboratories* under Rule 30(b)(6). Through that discovery vehicle, it seeks a witness prepared to testify with knowledge of both Abbott and certain of its wholly-owned subsidiaries and/or affiliates located overseas, including Fournier. The issue presented by this aspect of

---

[79] In its opposition brief, Abbott represents that, at some point after the acquisition, "Fournier engaged certain of the undersigned counsel to represent it in conjunction with the completion of its compliance with the document subpoena. As counsel repeatedly made clear, the representation of Fournier was only 'in conjunction with any further response to [Ethypharm's document] subpoena' and completion of Fournier's responding to the document subpoena was 'the sole respect in which we represent Fournier who is not a party to this action.'" D.I. 125 at 6 (alteration in original) (quoting D.I. 128, Ex. C). Abbot responds that Fournier's engagement of "one of Abbott's counsel of record to represent it in conjunction with Fournier's document production . . . does not change the fact that Abbott has asserted control over Fournier document production in this case. While it may be true that both Fournier and Abbott have retained one of Abbott's law firms, it was Abbott's other counsel that received the documents transferred from Fournier, and Abbott attorneys represented to this Court in May 2010 that *Abbott* was in control of Fournier's document discovery efforts." D.I. 129 at 3 n.1 (emphasis in original).

[80] D.I. 125 at 2 (emphasis in original).

Ethypharm's motion is the duty of a corporate parent to produce a Rule 30(b)(6) witness to testify regarding the knowledge of its subsidiary.

In support of its motion to notice a Rule 30(b)(6) witness, Ethypharm again relies on *Twentieth Century Fox*. Although that case did not support Ethypharm's argument to depose certain individual's pursuant to Fed. R. Civ. P. 30, its reasoning is more compelling when considering Ethypharm's Rule 30(b)(6) request. To wit, the court's statement that the scope of the entity's obligation in responding to a 30(b)(6) notice, to interrogatories served pursuant to Rule 33, or to document requests served pursuant to Rule 34 is the same. The entity "must produce a witness prepared to testify with the knowledge of the subsidiaries and affiliates if the subsidiaries and affiliates are within its control."[81]

In its analysis, the court stated that a Rule 30(b)(6) designee presents the corporation's, rather than his personal, "position" on a topic and, in addition to testifying about facts within the corporation's knowledge, testifies about the corporation's subjective beliefs and opinions, and its interpretation of documents and events.[82] Not having authority directly addressing the "question of whether a corporation receiving a Rule 30(b)(6) notice is obligated to prepare its witness with both the entity's own knowledge and the knowledge of its subsidiaries and affiliates," the court compared "the scope of a producing party's duty to respond to interrogatories or document requests [to] provide guidance."[83]

---

[81] *Twentieth Century Fox*, 2002 WL 1835439, at *2 (emphasis added).
[82] *Id.* at *3.
[83] *Id.*

21

With regard to a corporation responding to interrogatories, it "must provide not only the information contained in its own files and possessed by its own employees, it must provide all information under its control."[84]  Therefore, when a parent is responding to interrogatories, "'it is no defense to claim that the information is within the possession of a wholly owned subsidiary, because such a corporation is owned and controlled by such interrogee.'"[85]  The court found that the "same principle applies to requests for documents pursuant to Rule 34" which "requires a party to produce documents in its 'possession, custody or control . . . .'"[86]  "'Numerous courts have concluded that a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with that subsidiary.'"[87]

As a result of its comparison of the discovery obligations under those rules, the court concluded that:

> [T]he same principle that is applied to interrogatories and document requests should also be applied to determine the scope of a party's obligation in responding to a Rule 30(b)(6) notice of deposition. There is no logical reason why the sources researched by a party in responding to a discovery request should be dependent on the particular discovery vehicle used; in all cases, the responding party should be obligated to produce the information under its control. Application of this principle to Rule 30(b)(6) discovery is not only consistent with the judicial interpretations of the other discovery provisions of the Federal Rules of Civil Procedure, it is also consistent with the purpose of discovery—"[to] make a trial less of a game of blind man's buff and more a fair contest

---

[84] *Id.*

[85] *Id.* (quoting *Westinghouse Credit Corp. v. Mountain States Mining & Milling Co.*, 37 F.R.D. 348, 349 (D. Col. 1965)).

[86] *Id.* at *4 (quoting Fed. R. Civ. P. 34(a)).

[87] *Id.* (quoting *Dietrich v. Bauer*, 95 Civ. 7051(RWS), 2001 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000)).

with the basic issues and facts disclosed to the fullest practicable extent"[88]

The court concluded that because the evidence demonstrated that the parent company controlled the subsidiary in question, the parent was required to provide a witness with knowledge of the subsidiary to testify concerning the documents at issue.[89]

In opposition to Ethypharm's request to notice a Rule 30(b)(6) deposition, Abbott primarily relies upon *In re Ski Train Fire*,[90] where the court declined to follow *Twentieth Century Fox*. There, the plaintiffs noticed a Rule 30(b)(6) deposition of a litigant on certain topics. The court stated that it was clear that the employees most knowledgeable on those topics were employees of the litigant's non-party subsidiary.[91] Notably, the court stated that there was no evidence that the parent litigant was involved in the topics sought to be explored in the Rule 30(b)(6) deposition.[92] The court

---

[88] *Id.* (alteration in original) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)).

[89] *Id.* at *5. Abbott discounts *Twentieth Century Fox*. It points to the Advisory Committee's Notes statement that Rule 30(b)(6) would "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization," Advisory Committee Notes to the 1970 Amendments to Rule 30, subdivision b(6), and argues that *Twentieth Century Fox* is a classic "bandying" case and that this case does not present a similar situation. Regardless of the differing factual setting between that case and the case at bar, the court finds the conclusion of the *Twentieth Century Fox* case concerning the discovery obligations of rules discussed therein to be persuasive. In a footnote, Abbott also makes the statement that "Fournier documents have been produced, so Ethypharm already has the knowledge of Fournier to the extent that it is contained in the documents." D.I. 125 at 15 n.3. If Abbott is arguing that production of Fournier documents is sufficient to obviate the need for a Rule 30(b)(6) deposition, such argument is without merit. *See, e.g., In re Vitamins Antitrust Litig.*, 217 F.R.D. 229, 233 (D.D.C. 2002) (The court rejected the argument that because a company had already produced documents relating to an issue "'known or reasonably known to' [the company] . . . 'requiring [the company] to provide an additional 30(b)(6) witness at all, at this late stage in the litigation, would serve no useful purpose.'" The court stated that the defendant "seems to rely on what might be called the substitution theory of discovery-that a defendant can respond as it sees fit rather than as requested by the plaintiffs. The argument has no merit. Plaintiffs, under Rule 30(b)(6), are entitled to an educated witness who can testify as to facts that are known or reasonably available [to the defendants] about the [issue].").

[90] No. MDL 1428(SAS)THK, 2006 WL 1328259 (S.D.N.Y. May 16, 2006).

[91] *Id.* at *9. That subsidiary had previously been dismissed as a defendant in the case because of insufficient jurisdictional contacts with the district in which the suit was brought. *Id.* at *1.

[92] *Id.* at *9.

23

concluded that, "*on the facts of this case*, the Court will not adopt the holding in

*Twentieth Century Fox*."[93] The court reasoned that:

> All the knowledge of [the subsidiary] is not "reasonably available" to [the
> parent]. It is one thing to require a corporate parent to produce
> documents in the possession of its foreign subsidiary, when, as a practical
> matter, it is able to secure those documents. It is simply not comparable
> to require a corporate parent to acquire all the knowledge of a subsidiary
> *on matters in which the parent was not involved*, and to testify to those
> matters in a manner which binds the parent, a separate legal entity.[94]

The court did not detail why, or if, it disagreed with the reasoning of the

*Twentieth Century Fox* court–particularly with regard to the corporate control

determining the scope of interrogatory responses. It did note that the parent

corporation was not involved in the Rule 30(b)(6) topics and declined to authorize such

deposition "on matters in which the parent was not involved." Here, to the contrary,

Abbott was involved in the matters about which Ethypharm seeks information, for

example the *Reliant* litigation settlement agreements and the infringement counterclaim

in that action (the alleged sham litigation). Ethypharm notes it is "Fournier's

involvement with Abbott in the alleged misconduct that is central to this case . . . ."[95]

Indeed, Abbott affirmatively states that "[t]his litigation arises from the settlement of a

previous lawsuit filed in this Court," the *Reliant* litigation, in which "Reliant named Abbott

and Fournier as defendants."[96] The court, therefore, is not persuaded by Abbott's

reliance on *In re Ski Train* in its opposition to Ethypharm's motion on this issue.

Ethypharm also cites *S.C. Johnson & Son, Inc. v. Dial Corp.*[97] There, the

---

[93] *Id.* (emphasis added).
[94] *Id.* (emphasis added).
[95] D.I. 119 at 2.
[96] D.I. 125 at 3.
[97] No. 08 C 4696, 2008 WL 4223649 (N.D. Ill. Sept. 10, 2008).

24

plaintiffs filed a patent infringement suit and subpoenaed a third party to produce a witness to testify at a Rule 30(b)(6) deposition.[98]  The subpoenaed third party owned a subsidiary that had a contract with the defendant for the products at issue.[99]  The plaintiffs sought to investigate that contractual relationship through a Rule 30(b)(6) deposition.[100]  The parent sought to quash the subpoena, arguing that its subsidiary was a separate legal entity over which it did not exercise direct, day-to-day control, and noting that their were eight degrees of ownership separation between it and the subsidiary.[101]  In response to the motion to quash, the plaintiffs noted that the subsidiary in question was, ultimately, wholly owned by the parent, that the subsidiary's profits were included on the parent's SEC filings, that the parent had produced documents from the subsidiary in this case, and that the parent's counsel admitted that it would likely be able to exert sufficient control over its subsidiary to produce one or more witnesses if necessary.[102]  Responding to the argument, also made in *Ski Train Fire*, that the parent should not have to acquire all the knowledge of its subsidiary regarding events in which the parent and its employees did not participate, the court noted that "this argument seems to assume that [the parent] must designate one of its own employees or officers as a witness.  The Rule imposes no such requirement.  Indeed, it expressly contemplates the designation of 'other persons who consent to testify on [the entity's] behalf.'"[103]

---

[98] *Id.* at *1.
[99] *Id.*
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.* at *2 (alteration in original) (quoting Fed. R. Civ. P. 30(b)(6)).

As in *S.C. Johnson & Son*, Abbott wholly owns Fournier, Abbott incorporates Fournier's financial results in its consolidated disclosures with the SEC, and Abbott's counsel of record has been involved in Fournier's document production in this case. Moreover, as noted above, unlike the parent company in *S.C. Johnson & Son*, Abbott was involved in the matters about which Ethypharm seeks information. These facts, as well as those recited above, demonstrate Abbott's ability to exert legal control over discoverable information held by Fournier.[104] Consequently, the court grants Ethypharm's motion to notice a Rule 30(b)(6) deposition.

## V. CONCLUSION

For the reasons stated above, it is ORDERED ADJUDGED and DECREED that Ethypharm's motion (D.I. 118) is **GRANTED in part** and **DENIED in part**.

1)  Ethypharm's motion to take depositions of certain current employees of Abbott's foreign subsidiaries or affiliate, including Fournier, pursuant to Fed. R. Civ. P. 30 is **DENIED**.

2)  Ethypharm's motion that Abbott produce a witness pursuant to Fed. R. Civ. P. 30(b)(6) prepared to testify with knowledge of both Abbott and Fournier is **GRANTED**.

---

[104] The court notes that Abbott did not respond to Ethypharm's citation of *S.C. Johnson & Son* and its related argument based thereon. *Cf. Murphy v. Kmart Corp.*, 255 F.R.D. 497, 508-09 (The court stated that the facts before it were different than those in *S.C. Johnson & Son*, *Twentieth Century Fox*, and *In re Ski Train* in that the plaintiff sought a Rule 30(b)(6) deposition wherein the defendant was "to designate witnesses to speak about its parent corporation . . . and sister corporation . . . both non-parties to [the] suit." The court noted that "although it is often the case that discovery disputes center around the parent corporation acquiring information in the custody of its subsidiaries, this does not preclude a subsidiary from gaining control over information in the possession of its parent." The court stated that "the issue is whether [the subsidiary litigant] has sufficient control over or access to [its parent and sister corporations] to be charged with the knowledge of these entities," and determined it did. Finally, the court noted that "[the subsidiary litigant] need not designate one of its own employees to provide testimony regarding these other entities, but rather could designate any person or persons most familiar with the designated topics.").

November 15, 2010
Wilmington, Delaware

UNITED STATES MAGISTRATE JUDGE